# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP and TRUMP
ORGANIZATION LLC,

*Plaintiffs*,

v.

LETITIA JAMES, in her official capacity
as Attorney General for the State of New
York,

*Defendant*.

Case No. 1:21-cv-1352 (BKS)(CFH)

## MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS

LETITIA JAMES
   *Attorney General*
   *State of New York*
28 Liberty Street
New York, NY  10005

*Attorney for Defendant Letitia James, in her
official capacity*

Andrew S. Amer,
 Special Counsel
Colleen K. Faherty,
 Assistant Attorney General
Kevin Wallace,
 Senior Enforcement Counsel

*of Counsel*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................................1

BACKGROUND ............................................................................................................................3

STANDARD OF REVIEW ............................................................................................................8

ARGUMENT ...............................................................................................................................10

      I.    THE COURT SHOULD ABSTAIN FROM HEARING THIS ACTION
             BASED ON THE ONGOING NY PROCEEDING ...............................................10

          A.    The Court Should Dismiss This Action Under *Younger* ....................................10

          B.    The Court Should Dismiss This Action Under *Colorado River* .........................17

          C.    The Court Should Dismiss This Action Under *Wilton* .......................................21

      II.   PLAINTIFFS' CLAIMS ARE BARRED BY *ROOKER-FELDMAN* ..........................21

      III.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM ...................................23

          A.    Plaintiffs' Claims Are Barred By *Res Judicata* ................................................23

          B.    Plaintiffs Fail To Allege Facts That Plausibly Infer OAG's Investigation Is
               Without Legal Basis ............................................................................................26

               1)  Plaintiffs Fail to State a First Amendment Claim .................................27

               2)  Plaintiffs Fail to State a Fourth Amendment Claim ..............................28

               3)  Plaintiffs Fail to State a Due Process Claim .........................................29

               4)  Plaintiffs Fail to State a Claim for Abuse of Process .............................30

CONCLUSION .............................................................................................................................30

TABLE OF AUTHORITIES

## Cases

*Alpert's Newspaper Delivery, Inc. v. The New York Times Co.,* 876 F.2d 266 (2d Cir. 1989) ......................24

*American Dental Coop., Inc. v. Attorney-General*, 127 A.D.2d 274 (1st Dep't 1987) .............................. 3, 26

*American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84 (2d Cir. 1988) ..................................... 17, 19

*Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327 (1988) ........................................................... 16, 26

*Arbitron v. Cuomo, No. 08-cv-8497*, 2008 WL 4735227 (S.D.N.Y. Oct. 27, 2008) ...................................17

*Arizona v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545 (1983) ...............................................19

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985)...........................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................9

*Backpage.com, LLC v. Hawley*, No. 4:17-cv-1951, 2017 WL 5726868 (E.D. Mo. Nov. 28, 2017)... 12, 13

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................9

*Blue v. Koren*, 72 F.3d 1075 (2d Cir. 1995) .....................................................................29

*Buechel v. Bain*, 97 N.Y.2d 295 (2001)..........................................................................24

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) .................................................................26

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)...................................................9

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir.1995) .......................................24

*Chertock v. Cuomo*, No. 07-cv-0077, 2007 WL 9710990 (E.D.N.Y. Nov. 19, 2007)...............................14

*Colorado River* ...............................................................................................17

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) .................................. 17, 19

*Condon v. Inter-Religious Found. for Cmty. Org., Inc.*, 18 Misc. 3d 874 (Sup. Ct., N.Y. Cty.), *aff'd,*
    51 A.D.3d 465, 856 N.Y.S.2d 620 (2008) ...................................................................15

*Conopco, Inc. v. Roll Int'l*, 231 F.3d 82 (2d Cir. 2000) ......................................................23

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) .............................................................. 10, 16

*Cuomo v. Dreamland Amusements, Inc.*, No. 08-civ-6321, 2008 WL 4369270 (S.D.N.Y. Sept. 22,
    2008).................................................................................................. 13, 14

*Curiano v. Suozzi*, 63 N.Y.2d 113 (1984) ................................................................................30

*Curley v. Village of Suffern*, 268 F.3d 65 (2d Cir. 2001) ........................................................20

*Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir.2001) .........................................................27

*Davidson v. Garry*, 956 F. Supp. 265 (E.D.N.Y. 1996) ..........................................................22

*De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989)....................................................17, 18, 19

*Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) .................................................8

*Dep't of Homeland Security v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020) ...................8

*Diamond "D" Constr. Corp. v. McGowan*, 142 F. Supp. 2d 377 (W.D.N.Y. 2001), *vacated*, 282 F.3d 191 (2d Cir. 2002)............................................................................................................16

*Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002) .........................10, 16, 17

*Disability Rights of New York v. New York*, 916 F.3d 129 (2d Cir. 2019)....................................10

*Dittmer v. County of Suffolk*, 146 F.3d 113 (2d Cir. 1998) .......................................................21

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984)..................................................................28

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) ...............................................21

*Dutrow v. New York State Gaming Commission*, No. 13-cv-996, 2014 WL 11370355 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. App'x 56 (2d Cir. 2015)......................................................10

*EEOC v. Port Auth.*, 768 F.3d 247 (2d Cir. 2014)...................................................................9

*Everhome Mortg. Co. v. Aber*, 195 A.D.3d 682 (2nd Dep't 2021).............................................17

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ..............................22, 23

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018) ...............................27

*Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk County*, 805 F.3d 425 (2d Cir. 2015)................................................................................................................13, 16

*Fernandez v. Turetsky*, No. 12-cv-4092, 2014 WL 5823116 (E.D.N.Y. Nov. 7, 2014)............................23

*Garcia v. Tamir*, No. 99-cv-0298, 1999 WL 587902 (S.D.N.Y. Aug. 4, 1999).................................20

*Gibson v. Berryhill*, 411 U.S. 564 (1973).............................................................................10

*Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016) ...............................................................13

*Hartman v. Moore*, 547 U.S. 250, 256 (2006) ...................................................................27, 28

*Helms Realty Corp. v. City of New York*, 820 F. App'x 79 (2d Cir. 2020)......................................12

*Hensel v. City of Utica*, 6:15-cv-374, 2016 WL 1069673 (N.D.N.Y. March 16, 2016) .............................23

*Hindu Temple Soc'y of N. Am. v. Supreme Ct. of State of New York*, 335 F. Supp. 2d 369 (E.D.N.Y. 2004)...........................................................................................................................14

*Hinman, Straub, Pigors & Manning, P.C. v. Broder*, 89 A.D.2d 278 (3d Dep't 1982)................................15

*Hoblock v. Albany Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) ........................................................23

*Hogan v. Cuomo*, 67 A.D.3d 1144 (3d Dep't 2009) .............................................................................4

*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ...................................................................................12

*In re FDIC*, 58 F.3d 1055 (5th Cir. 1995)............................................................................................29

*In re Grand Jury of S. Dist.*, 508 F. Supp. 1210 (S.D. Ala. 1980)...........................................................29

*In re Roemer v. Cuomo*, 67 A.D.3d 1169 (3rd Dep't 2009) ...............................................................26

*In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378 (S.D.N.Y. 2014).................................13

*Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285 (7th Cir. 1988) ........................................20

*Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16 (2d Cir. 2012).............................................16

*Johnson v. D.A. Off., Staten Island*, No. 18-cv-1205, 2018 WL 1135475 (E.D.N.Y. Feb. 28, 2018)........................................................................................................................................16

*Juidice v. Vail*, 430 U.S. 327 (1977) ..................................................................................................15

*Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114 (2d Cir. 2017) ............................................................9

*Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58 (2d Cir. 2020).............................................22

*Lacks v. Lacks*, 41 N.Y.2d 71 (1976) .................................................................................................15

*Lance v. Dennis,* 546 U.S.  459 (2006) .............................................................................................22

*Lupin Pharmaceuticals, Inc. v. Richards*, No. 15-cv-1281, 2015 WL 4068818 (D. Md. July 2, 2015)........12

*MacPherson v. Town of Southampton*, No. 07-cv-3497, 2013 WL 6058202 (E.D.N.Y. Nov. 14, 2013).........................................................................................................................................14

*Mann v. New York State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236 (N.D.N.Y. Oct. 29, 2021).........................................................................................................................................9

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ..................................................................................29

*Matter of 1616 Second Ave. Rest. v. New York State Liquor Auth.*, 75 N.Y.2d 158 (1990)...........................27

*Matter of Abrams*, 62 N.Y.2d 183 (1984).................................................................................................24

*Matter of La Belle Creole Int'l, S.A. v. Attorney General of the State of N.Y.*, 10 N.Y.2d 192 (1961) .............3

*Mayor & City Council of Balt.*, 709 F.3d 129 (2d Cir. 2013) ................................................................ 9, 26

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982)...........................13

*Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75 (1984)................................................23

*Mirka United, Inc. v. Cuomo*, No. 06-cv-14292, 2007 WL 4225487 (S.D.N.Y. Nov. 27, 2007) .............14

*Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275 (2d Cir. 2000)..........................................................23

*Moon 170 Mercer, Inc. v. Vella*, 146 A.D.3d 537 (1st Dep't 2017) ..............................................................24

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)................................................. 18, 20

*Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) ...............................................................................21

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986) .......................................................................................26

*New York State Comm'n on Gov't Integrity v. Congel*, 142 Misc. 2d 9 (Sup. Ct., N.Y. Cty. 1988),
     *aff'd as modified*, 156 A.D.2d 274 (1st Dep't 1989) ..............................................................................15

*Niagara Mohawk Power Corp. v. Hudson River-Black Reg. Dist.*, 673 F.3d 84 (2d Cir. 2012)............... 17, 18

*NLRB v. Am. Med. Response, Inc.,* 438 F3d 188 (2d Cir. 2006) ...............................................................28

*NLRB v. United Technologies Corp.*, 706 F.2d 1254 (2d Cir. 1983) .........................................................25

*NYP Holdings, Inc. v. McClier Corp.*, 83 A.D.3d 426 (1st Dep't 2011)........................................................24

*People ex rel. Cuomo v. First Am. Corp.*, 18 N.Y.3d 173 (2011) .................................................................3

*People ex rel. Cuomo v. Greenberg*, 95 A.D.3d 474 (1st Dep't 2012) .......................................................3

*People of New York ex rel. Cuomo v. First Am. Corp.*, No. 07-cv-10397, 2008 WL 2676618
     (S.D.N.Y. July 8, 2008)...................................................................................................................3

*People v. The Trump Organization*, No. 451685/2020, 2020 WL 5775887 (Sup. Ct., N.Y Cty.
     Sept. 23, 2020), *modified on reargument*, 2020 WL 5992323 (Sup. Ct., N.Y. Cty. Oct. 7,
     2020), *further modified on reargument*, 2020 WL 7360811 (Sup. Ct., N.Y Cty. Dec. 15,
     2020)........................................................................................................................... 5, 6, 11

*People v. Trump*, 62 Misc. 3d 500 (Sup. Ct., N.Y. Cty. 2018)...................................................................27

*People v. Trump*, 66 Misc. 3d 200 (Sup. Ct., N.Y. Cty. 2019)....................................................................8

*Pratt v. Hogan*, 631 F. Supp. 2d 192 (N.D.N.Y. 2009) ................................................................15

*Public Serv. Comm'n v. Wycoff*, 344 U.S. 237 (1952) ................................................................21

*Rehab. Support Servs., Inc. v. City of Albany*, No. 14-cv-499, 2015 WL 4067066 (N.D.N.Y. July 2, 2015) ................................................................................................................................11

*Rehab. Support Servs., Inc. v. Town of Esopus, New York*, 226 F. Supp. 3d 113 (N.D.N.Y. 2016) ...............9

*Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16 (2d Cir. 2013) ..............................9

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999) ..............................................28

*Reus v. Arthur*, No. 19-cv-01327, 2020 WL 5122376 (N.D.N.Y. Aug. 31, 2020) ...................................9

*Savino v. City of N.Y.,* 331 F.3d 63 (2d Cir. 2003) ................................................................30

*Schorr v. DoPico*, 686 F. App'x 34 (2d Cir. 2017) ................................................................16

*See Cook v. Sheldon,* 41 F.3d 73 (2d Cir.1994) ................................................................30

*Seelig v. Shepard*, 152 Misc. 2d 699 (Sup. Ct., N.Y. Cty. 1991) ..............................................15

*Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65 (2d Cir. 2003) ...................10, 14, 15

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ................................................10, 11, 12

*Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264 (N.D.N.Y. 2015) ..............................13

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239 (2d Cir. 2014) .........................9

*Telesco v. Telesco Fuel and Masons*, 765 F.2d 356 (2d Cir. 1985) .........................................19, 20

*Temple of the Lost Sheep Inc. v. Abrams,* 930 F.2d 178 (2d Cir.1991) .....................................15, 18

*Toczek v. Alvord*, 841 F. App'x 263 (2d Cir. 2021) ................................................10, 12

*Trump v. Vance*, 977 F.3d 198 (2d Cir. 2020) ................................................22, 25

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994) ................................................28

*U.S. v. Morton Salt Co.*, 338 U.S. 632 (1950) ................................................28

*U.S. v. O'Brien*, 391 U.S. 367 (1968) ................................................28

*United States v. Kovel*, 296 F.2d 918 (1961) ................................................11, 24

*United States v. Peskin*, 527 F.2d 71 (7th Cir. 1975) ................................................30

*Ward v. New York University*, No. 99-cv-8733, 2000 WL 1448641 (S.D.N.Y. Sept. 25, 2000) .......16, 27

vi

*Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970) ........................................................... 24, 25

*Weiss v. Hunna*, 312 F.2d 711 (2d Cir.1963) .................................................................... 30

*White v. Fischer*, No. 09-cv-240, 2010 WL 624081 (N.D.N.Y. Jan. 25, 2010), *report-recommendation adopted*, 2010 WL 624081 (N.D.N.Y. Feb. 18, 2010) .............................. 9

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ............................................................... 21

*Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996) ......................................................... 21

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................................... 10, 16

## Statutes

N.Y. CPLR § 2308 ............................................................................................... 26

N.Y. Exec. Law § 63(12) .............................................................................. 3, 12, 28

## Treatises

Prosser, Torts (2d ed. 1955) ................................................................................ 30

## PRELIMINARY STATEMENT

This action is a collateral attack on a long-running civil investigation by the New York Office of the Attorney General ("OAG") into allegations of fraud and misrepresentation by Plaintiffs Donald J. Trump, the Trump Organization LLC, and others affiliated with them (the "Investigation"). The Investigation was launched in March 2019, first subpoenaed the Trump Organization in December 2019, and has involved proceedings before Justice Arthur Engoron of the New York State Supreme Court since August 2020 (the "NY Proceeding"). Justice Engoron has issued multiple orders directing the production of documents and testimony from the Trump Organization and its agents; none of those orders has been appealed. Over the course of the Investigation, the Trump Organization has produced over 900,000 documents, brought in more than a dozen current and former employees for testimony, and submitted to judicial oversight and third-party supervision of its compliance under a stipulated court order. Mr. Trump has been identified as a records custodian since the Investigation's first subpoena to the Trump Organization, portions of his documents and correspondence have been turned over, his personal counsel has directed OAG to the Trump Organization to collect his records, Justice Engoron has decided privilege issues concerning Mr. Trump's personal tax counsel, and Mr. Trump personally agreed to produce his income tax returns to OAG for the years 2014 through 2019.

At no point, despite having ample opportunity to do so in the NY Proceeding, did the Trump Organization or Mr. Trump ever challenge the underlying legal basis for the Investigation or OAG's statutory authority to conduct the Investigation. Until now – only after Mr. Trump was served with a subpoena. In a complete about-face, Plaintiffs contend here that the Investigation was actually never justified or lawful in the first place; rather, they assert, it constitutes an abuse of OAG's authority, motivated by the personal animus New York Attorney General Letitia James (the "Attorney General") purportedly harbors towards Mr. Trump, and is being conducted in retaliation for his political views.

But the ongoing proceedings in state court preclude this argument. In the interests of comity

and judicial efficiency, the Court should abstain and dismiss this case in deference to the NY Proceeding under the abstention doctrines established by Supreme Court decisions in *Younger*, *Colorado River*, and *Walton*. Additionally, the Court should dismiss this action for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine because Plaintiffs are state-court losers seeking to collaterally attack final, appealable orders entered by Justice Engoron in the NY Proceeding.

 Even putting aside these jurisdictional arguments, this case should be dismissed for failure to state a claim. First, the gravamen of Plaintiffs' action is that the Investigation has no legitimate, lawful basis. But that is a claim Plaintiffs are precluded from asserting based on the NY Proceeding; Justice Engoron compelled the Trump Organization and its employees and agents to comply with numerous OAG subpoenas, necessarily holding that OAG had a sufficient factual and legal basis under New York law to issue the subpoenas. The Trump Organization and all parties in privity with it, including Mr. Trump, are therefore barred by *res judicata* from relitigating whether the Investigation has a lawful purpose or asserting any other legal claim that could have been raised in the NY Proceeding to contest OAG's subpoenas, including all of the federal claims raised in this action.

Finally, even if Plaintiffs were not precluded by *res judicata* from challenging the good faith basis of the Investigation, their allegations do not plausibly infer facts sufficient to establish their alleged constitutional and abuse of process claims. To prevail on their claims, Plaintiffs must establish that the Investigation has no legitimate, lawful purpose, regardless of motivation. Their allegations, consisting of snippets of press releases, tweets, and public appearances – some of which pre-date the Attorney General's time in office at OAG – are legally insufficient; they do not support a plausible inference that the Investigation lacks any objective, reasonable basis. Indeed, the Investigation has had ample basis since its inception, and its factual foundation has repeatedly been demonstrated before Justice Engoron, including earlier this month by OAG's 113-page supplemental petition.

Moreover, Mr. Trump and his affiliated entities are not the first or only subjects of an OAG

investigation into allegations of fraud and misrepresentation of the type involved here relating to asset valuations. *See, e.g., People ex rel. Cuomo v. First Am. Corp.*, 18 N.Y.3d 173, 176 (2011) (involving OAG enforcement action against appraisal firm under New York's Executive Law and Consumer Protect Act alleging fraud and deceptive acts related to real estate appraisals). As in that prior enforcement action, the proper avenue for oversight and the appropriate venue to raise objections is a proceeding in New York state court. *See People of New York ex rel. Cuomo v. First Am. Corp.*, No. 07-cv-10397, 2008 WL 2676618, at *4 (S.D.N.Y. July 8, 2008) (remanding case back to state court).

## BACKGROUND

### A.  OAG's Investigation and the NY Proceeding

New York Executive Law § 63(12) allows the Attorney General to bring a proceeding "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Executive Law ("Exec. Law") § 63(12). The terms "fraud" and "fraudulent" are "given a wide meaning so as to embrace all deceitful practices … , including all acts … which do tend to deceive or mislead." *People ex rel. Cuomo v. Greenberg*, 95 A.D.3d 474, 483 (1st Dep't 2012).

The Attorney General "is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules." Exec. Law § 63(12). A sufficient factual basis for a subpoena under § 63(12) exists if there is a "reasonable relation to the subject-matter under investigation and to the public purpose to be achieved." *Matter of La Belle Creole Int'l, S.A. v. Attorney General of the State of N.Y.*, 10 N.Y.2d 192, 196 (1961). The Attorney General is presumed to be acting in good faith when issuing a subpoena. *American Dental Coop., Inc. v. Attorney-General*, 127 A.D.2d 274, 280 (1st Dep't 1987). Thus, a subpoena issued pursuant to § 63(12) will not be quashed unless it seeks material "utterly irrelevant to any proper inquiry" or where the futility of the process "to uncover anything legitimate is inevitable or obvious." *La Belle Creole*, 10 N.Y.2d at 196;

3

*see also Hogan v. Cuomo*, 67 A.D.3d 1144, 1145 (3d Dep't 2009) ("The information … need not be sufficient to establish fraud or illegality, or … probable cause ….").

OAG opened the Investigation into the Trump Organization in March 2019, after Michael Cohen, a former senior executive of the Trump Organization and Special Counsel to Mr. Trump, produced to Congress copies of Donald J. Trump's financial statements for 2011, 2012, and 2013. *See* Declaration of Colleen K. Faherty, dated January 26, 2022 ("Faherty Dec."), Ex. B at 38 (H. Hrg. 116-03 (Feb. 27, 2019)). Mr. Cohen testified that these financial statements inflated the values of Mr. Trump's assets to obtain favorable terms for loans and insurance coverage, while the Trump Organization also deflated the value of assets to reduce real estate taxes. *Id.* at 13, 19, 38-39, 160. Following this testimony, OAG determined that the financial statements were, in fact, provided to financial institutions. *Id.* at ¶3. As part of the Investigation, OAG also considered whether such statements contained inflated values and were used in a way that would establish a violation of law. *Id.* In the Investigation, OAG has issued dozens of subpoenas and has taken testimony to obtain information material to these matters. *Id.* In fact, prior to filing this action, Mr. Trump and the Trump Organization cooperated with the Investigation on various matters as it proceeded, producing many current and former Trump Organization employees and agents for examination under oath, and eventually producing over 900,000 documents, including while under judicial supervision. *Id.* Indeed, the Trump Organization professed in state court that it had "fully cooperated" with OAG's investigation through the production of documents and testimony, as well as "numerous meet-and-confer sessions." *Id.*, Ex. C at 15 (NYSCEF Dkt. No. 237).[1]

In August 2020, to resolve certain disputes that had arisen in the course of the Investigation,

---

[1] As evidenced by, among other things, the placement of the Trump Organization's subpoena compliance under judicial and third-party supervision, OAG does not agree with how the Trump Organization characterized its purported cooperation. *See, infra*, at 5-7.

OAG commenced the NY Proceeding pursuant to Article 4 of the New York Civil Practice Law and Rules to compel the production of documents and testimony "relevant to its ongoing investigation into potential fraud or illegality by respondent the Trump Organization and related entities," including whether "the Trump Organization improperly inflated the value of certain of its assets on various financial statements to obtain tax and other financial benefits." *People v. The Trump Organization*, No. 451685/2020, 2020 WL 5775887, at *1 (Sup. Ct., N.Y Cty. Sept. 23, 2020) ("*Trump I*"), *modified on reargument*, 2020 WL 5992323 (Sup. Ct., N.Y Cty. Oct. 7, 2020) ("*Trump II*"), *further modified on reargument*, 2020 WL 7360811 (Sup. Ct., N.Y Cty. Dec. 15, 2020) ("*Trump III*").

In *Trump I*, the state court (Justice Arthur Engoron) ordered that: (i) Eric Trump had to appear to provide testimony in response to OAG's subpoena by no later than October 7, 2020, rejecting an argument that the deposition should be delayed until after Election Day; (ii) additional examination of two outside lawyers representing the Trump Organization had to be conducted no later than October 23, 2020; and (iii) the Trump Organization and counsel had to produce documents in accordance with the court's rulings on various privilege assertions. *Trump I* at *1-2. Noting that depositions may raise privilege issues, Justice Engoron further provided that the court "will maintain jurisdiction over this special proceeding, and any of the parties may contact the Court in real time to obtain any necessary rulings as the depositions proceed." *Trump I* at *1. As Justice Engoron articulated on the same day he granted OAG's motions, "[t]he AG has the right to conduct this investigation." Faherty Dec., Ex. F at 4:11-13. The Trump Organization's own counsel during that hearing was similarly clear: "we understand they have a right to investigate this." *Id.* at 38:18-22; *see also id.* at 61:22-62:02 (counsel for Eric Trump stating, "we're happy for him to sit down and be deposed . . . .").

In *Trump II*, the court modified *Trump I* to require one of the outside lawyers to produce

responsive documents to the court for *in camera* review rather than to OAG in the first instance.[2] *Trump II* at *1. In *Trump III*, the court determined on reargument that communications with, and documents in the possession of, a certain "non-party, non-lawyer" were not privileged and must be produced together with a revised privilege log. *Trump III* at *3-4. The decision also set forth the legal standard to be applied going forward for any other documents for which the Trump Organization or others claim privilege under *United States v. Kovel*, 296 F.2d 918 (1961). *Trump III* at *3.

More recently, on September 2, 2021, Justice Engoron entered an order on the consent of OAG and the Trump Organization resolving numerous disputes concerning the Trump Organization's collection and production of documents in response to OAG's subpoenas. *See* Faherty Dec., Ex. D ("September 2021 Order"). Pursuant to the September 2021 Order, the Trump Organization was required to provide a report detailing its efforts to "preserve, collect, and produce hard-copy and electronic documents responsive to the OAG subpoenas," work diligently to comply with its production obligations, and if reasonably deemed necessary by OAG, appoint an independent third-party eDiscovery firm "to oversee the identification, collection, and review of electronically stored information" responsive to OAG's subpoenas.[3] *Id.* at 2.

Finally, Donald J. Trump, Donald Trump, Jr., and Ivanka Trump (collectively "Trump Respondents") submitted to Justice Engoron's continued exercise of jurisdiction in the NY Proceeding, recently filing a motion to quash testimonial subpoenas that OAG served on them last

---

[2] Justice Engoron made *in camera* rulings with respect to numerous privilege assertions, and the Trump Organization itself praised Justice Engoron's "careful and deliberate document-by-document rulings." *Id.*, Ex. E at 7 (NYSCEF Dkt. No. 293).

[3] On November 1, 2021, OAG advised the Trump Organization that OAG deemed it necessary to retain a third-party eDiscovery firm pursuant to the September 2021 Order, and the Trump Organization eventually complied with that request. *Id.* at ¶5.

month. *Id.*, Ex. H. Pursuant to Justice Engoron's scheduling order, the Trump Respondents filed their motion to quash the subpoenas on January 3, 2022, OAG filed its cross-motion to compel on January 20, 2022, and the motions will be fully briefed by February 8, 2022. *Id.*, Ex. A (NYSCEF Dkt. No. 318). Justice Engoron has scheduled oral argument on the motions for February 17, 2022. *Id.* at ¶11.

In support of their motion to quash, the Trump Respondents raise none of the claims or arguments Mr. Trump and the Trump Organization raise in this action. Rather, the sole basis of the motion to quash is the need for the Trump Respondents to choose between testifying in response to OAG's subpoenas or invoking their Fifth Amendment privilege against self-incrimination. *Id.*, Exh. H at 20 (NYSCEF Dkt. No. 354) (arguing it would be "grossly unfair" for the Trump Respondents to invoke their Fifth Amendment privilege and be subject to an adverse inference). In his brief, Mr. Trump assured Justice Engoron that "[w]ere there no criminal case, [he] might well be inclined to testify" in response to OAG's subpoena. *Id.*

### B.    Plaintiffs' Complaint

In their complaint (Dkt. No. 1 ("Compl.")), Plaintiffs allege, pursuant to 42 U.S.C. § 1983, that the Attorney General violated their First, Fourth, and Fourteenth Amendment rights and that her conduct in pursuing the Investigation otherwise constitutes an abuse of process. More specifically, Plaintiffs allege that during her time as New York's Public Advocate in 2017 and while campaigning for Attorney General in 2018, the Attorney General tweeted and made public comments concerning Mr. Trump, including that "New Yorkers need a fighter who will take on Donald Trump…," Compl. ¶ 33, that "Trump 'should be scared' about her upcoming term," *id.* ¶ 42, and that she promised to "fight back" against "this illegitimate president," *id.* ¶ 48. Plaintiffs further allege that once elected, the Attorney General promised to "ensure that the man occupying the Oval Office is held accountable to … any and everything he has done." *Id.* ¶ 65. According to the complaint, the Attorney General "accused Trump of waging a 'cruel crusade against…invaluable members of our society,'" *id.* ¶ 79, and

elaborated in a tweet: "[o]ur government made a promise to DREAMers that they would be able to live their lives free from the fear of sudden, arbitrary deportation. We will not allow the Trump Admin to continue this cruel crusade against these invaluable members of our society," *id.* n. 61 – a reference to litigation involving the Deferred Action for Childhood Arrivals program in which the Attorney General and other state attorneys general successfully challenged as arbitrary and capricious the Trump Administration's attempt to cancel the program. *See Dep't of Homeland Security v. Regents of the Univ. of California*, 140 S. Ct. 1891 (2020).

The complaint characterizes additional public statements issued by the Attorney General as targeting Mr. Trump; however, such statements similarly concern litigation brought by OAG on behalf of the State of New York, such as the suit challenging the 2020 census count that was decided by the Supreme Court against the Trump Administration, *Department of Commerce v. New York*, 139 S. Ct. 2551 (2019), Compl. ¶ 84 n. 65, and the dissolution of the Trump Foundation in 2019, *id.* ¶ 80 fn. 62; *see People v. Trump*, 66 Misc. 3d 200, 201-05 (Sup. Ct., N.Y. Cty. 2019). The complaint also alleges that the Attorney General showed "personal disdain" for Mr. Trump when interviewed on The View, where she refused to confirm or deny reports that OAG was seeking to depose Mr. Trump. *Id.* ¶ 97 n. 74.

Despite acknowledging that they have previously "produced over 8 million pages of documents in response" to OAG's subpoenas during the course of the Investigation, *id.* ¶ 88, Plaintiffs seek a declaration that the Investigation violates their constitutional rights and constitutes an abuse of process, and ask the Court to permanently enjoin the Investigation, or alternatively stay the Investigation pending resolution of this case, and enjoin the Attorney General "from being involved in any manner in any civil or criminal actions against Plaintiffs." *Id.* at p.29.

## STANDARD OF REVIEW

A motion to dismiss based on an abstention doctrine is considered as a motion made pursuant to Rule 12(b)(1). *See Rehab. Support Servs., Inc. v. Town of Esopus, New York*, 226 F. Supp. 3d 113, 125

(N.D.N.Y. 2016). Similarly, a challenge under the *Rooker-Feldman* doctrine asserts a lack of subject matter jurisdiction under Rule 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). A defendant may make "a fact-based Rule 12(b)(1) motion, proffering evidence beyond the complaint and its exhibits." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). A plaintiff must then "come forward with evidence of their own to controvert that presented by the defendant, or may instead rely on the allegations in the[ir p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017); *see also Reus v. Arthur*, No. 19-cv-01327, 2020 WL 5122376, at *4 (N.D.N.Y. Aug. 31, 2020).

A motion seeking dismissal invoking *res judicata* is properly brought under Rule 12(b)(6). *Mann v. New York State Ct. of Appeals*, No. 21-cv-49, 2021 WL 5040236, at *3 (N.D.N.Y. Oct. 29, 2021). To survive a motion to dismiss under Rule 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Mayor & City Council of Balt.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as well as "[v]ague and conclusory allegations," *White v. Fischer*, No. 09-cv-240, 2010 WL 624081, at *6 (N.D.N.Y. Jan. 25, 2010), *report-recommendation adopted*, 2010 WL 624081 (N.D.N.Y. Feb. 18, 2010).

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion … is an exercise of jurisdiction." *Dutrow v. New York State Gaming Commission*, No. 13-cv-996, 2014 WL 11370355, at *3 (E.D.N.Y. July 29, 2014), *aff'd*, 607 Fed. App'x 56 (2d Cir. 2015). Accordingly, OAG addresses its jurisdictional arguments first.

## ARGUMENT

## I. THE COURT SHOULD ABSTAIN FROM HEARING THIS ACTION BASED ON THE ONGOING NY PROCEEDING

### A. The Court Should Dismiss This Action Under *Younger*

The *Younger* abstention doctrine—initially set out in *Younger v. Harris*, 401 U.S. 37 (1971)— provides that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). The doctrine is rooted in "principles of equity, comity, and federalism," *Gibson v. Berryhill*, 411 U.S. 564, 575 (1973), and is predicated on the fundamental and longstanding assumption that "ordinarily a state proceeding provides an adequate forum for the vindication of federal constitutional interests," *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994). Deference to state-court proceedings "reaffirms the competence of the state courts, and thereby enhances the dignity of the state sovereign." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002).

Application of this doctrine, however, is limited; such abstention is applicable in only three "exceptional circumstances": (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013); *Toczek v. Alvord*, 841 F. App'x 263, 265–66 (2d Cir. 2021) (summary order) (holding *Sprint* clarified the three "exceptional circumstances" in which courts should abstain under *Younger*); *Disability Rights of New York v. New York*, 916 F.3d 129, 133 (2d Cir. 2019) (quoting *Sprint*, 571 U.S. at 78); *Rehab. Support Servs., Inc. v. City of Albany*, No. 14-cv-499,

2015 WL 4067066, at *7 (N.D.N.Y. July 2, 2015) (recognizing that "*Younger* abstention only applies if the case fits into one of the three enumerated categories" in *Sprint*) (cleaned up). *Younger* abstention applies here because the NY Proceeding independently satisfies two of the circumstances in *Sprint*.

**First**, the NY Proceeding is a civil proceeding that implicates New York's interest in enforcing the orders and judgments of its courts. *Sprint*, 571 U.S. at 78. The NY Proceeding was initiated by OAG in August 2020 to "compel the production of documents and testimony" related to the ongoing Investigation into potential fraud or illegality by the Trump Organization. *Trump I* at *1. The court in the NY Proceeding has issued multiple orders compelling the Trump Organization and its employees (including Eric Trump) and agents to comply with OAG's subpoenas related to the Investigation, and expressly agreed to "maintain jurisdiction over this special proceeding" so that the "parties may contact the Court in real time to obtain any necessary rulings as the depositions proceed." *Trump I* at *1. The state court also ordered the Trump Organization to comply with specifically enumerated production obligations, and pursuant to the same order, OAG and the Trump Organization have put in place an independent third-party e-Discovery firm that is currently assessing and reporting on the Trump Organization's compliance with those court-ordered obligations. Faherty Dec. at ¶5 and Ex. G. Finally, there are motions currently pending before Justice Engoron in the NY Proceeding to determine whether Mr. Trump, Donald Trump, Jr., and Ivanka Trump are required to provide sworn testimony in response to OAG subpoenas served on them last month. *Id.* at ¶6.

The orders issued in the NY Proceeding, including *Trump III* (setting forth the legal standard to govern privilege assertions under *United States v. Kovel*, 296 F.2d 918 (1961)), the September 2021 Order (pursuant to which a third-party eDiscovery firm is currently overseeing the Trump Organization's compliance with court-ordered production obligations), and Justice Engoron's continuing exercise of jurisdiction (pursuant to which the state court is presently entertaining cross-motions relating to the subpoenas served on Mr. Trump and his children), are "uniquely in furtherance

11

of the state courts' ability to perform their judicial functions" and "implicate [New York's] interest in enforcing the orders and judgments of its courts," thereby requiring abstention. *Sprint*, 571 U.S. at 72-73; *Toczek*, 841 F. App'x at 266 (finding state foreclosure proceeding satisfied third category of circumstances under *Sprint*); *Backpage.com, LLC v. Hawley*, No. 4:17-cv-1951, 2017 WL 5726868, at * 8 (E.D. Mo. Nov. 28, 2017) (holding state attorney general's action to enforce civil investigation demands satisfied the third category of circumstances under *Sprint*); *Lupin Pharmaceuticals, Inc. v. Richards*, No. 15-cv-1281, 2015 WL 4068818 at *4 (D. Md. July 2, 2015) (same).

**Second**, the NY Proceeding is also a civil enforcement proceeding that concerns "state proceedings 'akin to a criminal prosecution' in 'important respects.'" *Sprint*, 571 U.S. at 78 (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975)); *Helms Realty Corp. v. City of New York*, 820 F. App'x 79, 80 (2d Cir. 2020) (quoting *Sprint*, 571 U.S. at 79). The *Sprint* Court identified the following indicia of civil enforcement proceedings: (i) they are "characteristically initiated to sanction the federal plaintiff … for some wrongful act"; (ii) "a state actor is routinely a party to the state proceeding and often initiates the action"; and (iii) "[i]nvestigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Sprint*, 571 U.S. at 79-80. All of these indicia are present here.

The Attorney General is a state actor who, in furtherance of an ongoing investigation, initiated the NY Proceeding to compel the Trump Organization to comply with administrative subpoenas issued in OAG's Investigation, and recently filed in that proceeding a motion to compel Mr. Trump to provide sworn testimony and produce documents in response to a subpoena. *See, supra*, at 4-7. And the Investigation has the potential to culminate in the filing of a formal complaint under Executive Law § 63(12). Exec. Law § 63(12) (authorizing OAG to commence proceedings in state court). Accordingly, the NY Proceeding meets the second category of "exceptional circumstances" under *Sprint*. *See Backpage.com*, 2017 WL 5726868, at *5-6 (holding state court proceeding was a "civil enforcement proceeding" under *Sprint* where state attorney general initiated the proceeding to compel

12

subpoena compliance).[4]

Additional factors identified by the Supreme Court prior to *Sprint* in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), also weigh in favor of abstention.[5] The *Middlesex* factors are (1) whether there is a pending state proceeding (2) implicating an important state interest (3) that "affords the federal plaintiff an adequate opportunity" to obtain judicial review of the plaintiff's federal claims. *Falco*, 805 F.3d at 427; *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 271 (N.D.N.Y. 2015). All three of these considerations weigh in favor of abstention here.

**First**, there can be no serious dispute that the NY Proceeding is a pending state court proceeding. *Cuomo v. Dreamland Amusements, Inc.*, No. 08-civ-6321, 2008 WL 4369270, at *10 (S.D.N.Y. Sept. 22, 2008) (holding the attorney general's pending motion to compel compliance with investigatory subpoenas "satisfies the requirement of an ongoing state proceeding" under *Younger*).

**Second**, the NY Proceeding implicates an important state interest. A state interest is important "where exercise of the federal judicial power would disregard the comity between the States and the National Government," which turns on whether the state action "concerns the central sovereign functions of state government." *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 409-10 (S.D.N.Y. 2014) (cleaned up). A court must not look narrowly to the state's interest in the outcome of

---

[4] This case is easily distinguishable from *Google, Inc. v. Hood*, 822 F.3d 212 (5th Cir. 2016). In *Google*, the court held that the attorney general's mere service of a subpoena did not constitute a civil enforcement proceeding under *Sprint* because the attorney general, unlike OAG here, "ha[d] not moved to enforce the administrative subpoena in any state court, nor ha[d] any judicial or quasi-judicial tribunal begun proceedings against" the plaintiff. *Id.* at 2223; *see Backpage.com*, 2017 WL 5726868, at *6.

[5] In *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk County*, the Second Circuit clarified the relationship between the older *Middlesex* factors and the "categorical approach" later articulated by the Supreme Court in *Sprint*. 805 F.3d 425, 427 (2d Cir. 2015). *Falco* explained that after *Sprint*, "the straightforward categorical approach" of *Sprint* was primary, and the *Middlesex* criteria were at most to be treated as additional considerations. *Id.*

the particular case, but rather look to the importance of the generic proceedings to the state. *Id.* The NY Proceeding seeks to enforce administrative subpoenas issued in furtherance of a civil investigation pursuant to New York Executive Law § 63(12) into alleged fraud and misrepresentations to financial institutions and the government. *See, supra,* at 4-7. In other words, the general nature of OAG's state case is the enforcement of the state's laws, particularly those aimed at protecting the public from fraud and misrepresentation. Such an action goes to a fundamental interest of the state as a sovereign. *See Dreamland Amusements,* 2008 WL 4369270, at *10 (explaining that a "state's interest in enforcing its own laws and investigating their violation cannot seriously be disputed."); *Chertock v. Cuomo*, No. 07-cv-0077, 2007 WL 9710990, at *2 (E.D.N.Y. Nov. 19, 2007) (finding state interest requirement under *Younger* satisfied because "[s]tates have a palpable and significant interest in investigating and securing recovery for illegal conduct" and "investigating and prosecuting violations of their state laws."); *Mirka United, Inc. v. Cuomo*, No. 06-cv-14292, 2007 WL 4225487, at *4 (S.D.N.Y. Nov. 27, 2007) (holding New York has an important state interest in "investigating and preventing fraudulent conduct").

**Third**, courts consider whether the state court proceeding provides the federal plaintiff with "an adequate opportunity for judicial review of [their] federal constitutional claims." *Spargo*, 351 F.3d at 75. It is Plaintiffs' burden to establish that New York courts are unable or unwilling to address their federal claims. *See Hindu Temple Soc'y of N. Am. v. Supreme Ct. of State of New York*, 335 F. Supp. 2d 369, 374-75 (E.D.N.Y. 2004). The complaint does not contain any such allegation – reason enough to find this factor to be satisfied. *See MacPherson v. Town of Southampton*, No. 07-cv-3497, 2013 WL 6058202, at *19 (E.D.N.Y. Nov. 14, 2013) (finding *Younger* applied absent allegation that constitutional claims could not be raised in state court).

Nor would any allegation that the state court is incapable of adjudicating their federal claims be credible. The New York Supreme Court, where the NY Proceeding is pending, "is a court of plenary jurisdiction and is competent to entertain all causes of action unless its jurisdiction has been specifically

proscribed." *Hinman, Straub, Pigors & Manning, P.C. v. Broder*, 89 A.D.2d 278, 281 (3d Dep't 1982) (citing *Lacks v. Lacks*, 41 N.Y.2d 71, 75 (1976)). There is no proscription against the New York Supreme Court entertaining federal constitutional claims, and it routinely does so specifically in the context of special proceedings to compel compliance with administrative subpoenas. *See, e.g., Condon v. Inter-Religious Found. for Cmty. Org., Inc.*, 18 Misc. 3d 874, 878-79, 882-84 (Sup. Ct., N.Y. Cty.) (considering constitutional arguments under the First, Fourth, and Fifth Amendments and the Supremacy Clause in a proceeding to compel subpoena compliance), *aff'd*, 51 A.D.3d 465, 856 N.Y.S.2d 620 (2008); *Seelig v. Shepard*, 152 Misc. 2d 699, 703–04 (Sup. Ct., N.Y. Cty. 1991) (considering First Amendment challenge to a subpoena in Article 78 proceeding); *New York State Comm'n on Gov't Integrity v. Congel*, 142 Misc. 2d 9, 24 (Sup. Ct., N.Y. Cty. 1988) (considering constitutional arguments under the First, Fourth, and Fifth Amendments in proceeding to compel subpoena compliance), *aff'd as modified*, 156 A.D.2d 274 (1st Dep't 1989). Indeed, Justice Engoron shortly will consider the Fifth Amendment-related objections raised by Mr. Trump's motion to quash. Faherty Dec., Ex. H at 12-17. Because the NY Proceeding affords Plaintiffs an opportunity to raise their federal claims, abstention is warranted.[6] *See Juidice*, 430 U.S. at 337 (holding where "appellees had an opportunity to present their federal claims in the state proceedings … [n]o more is required to invoke *Younger* abstention"); *Spargo*, 351 F.3d at 81 ("In sum, while Spargo may prefer a federal forum, he may pursue his constitutional claims in state proceedings, and therefore, the District Court should have abstained.").

---

[6] The fact that Plaintiffs have chosen not to raise any of the claims asserted here in the NY Proceeding, including most recently in the context of Mr. Trump's motion to quash, supports abstention here. *See Juidice v. Vail*, 430 U.S. 327, 337 (1977) ("[Plaintiffs] need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate."); *Temple of the Lost Sheep Inc. v. Abrams,* 930 F.2d 178, 183 (2d Cir.1991) (holding federal plaintiffs cannot pass on the opportunity to assert federal constitutional claims in state court proceedings in an effort to obtain a later decision by a federal court); *Pratt v. Hogan*, 631 F. Supp. 2d 192, 196 (N.D.N.Y. 2009) (same, citing *Juidice*).

Finally, even if the *Younger* prerequisites are satisfied, a federal court may exercise jurisdiction if the plaintiff can make a showing of "bad faith, harassment or any other unusual circumstance that would call for equitable relief." *Falco*, 805 F. 3d at 427 (quoting *Younger*, 401 U.S. at 54). A "federal plaintiff seeking to establish that the bad faith exception to *Younger* applies must show that 'the party bringing the state action [has] no reasonable expectation of obtaining a favorable outcome.'" *Jackson Hewitt Tax Serv. Inc. v. Kirkland*, 455 F. App'x 16, 18 (2d Cir. 2012) (quoting *Cullen*, 18 F.3d at 103). "[A] state proceeding that is legitimate in its purposes, but unconstitutional in its execution – even when the violations of constitutional rights are egregious – will not warrant the application of the bad faith exception." *Schorr v. DoPico*, 686 F. App'x 34, 37 (2d Cir. 2017) (quoting *Diamond "D"*, 282 F.3d at 199). "[I]t is only when the state proceeding is brought with no legitimate purpose that th[e] state interest in correcting its own mistakes dissipates, and along with it, the compelling need for federal deference." *Diamond "D"*, 282 F.3d at 200. The narrow "bad faith" exception to *Younger* has hardly ever been applied, *see Johnson v. D.A. Off., Staten Island*, No. 18-cv-1205, 2018 WL 1135475, at *2 (E.D.N.Y. Feb. 28, 2018), and OAG is presumed to act in good faith, *see, e.g., Anheuser-Busch, Inc. v. Abrams*, 71 N.Y.2d 327, 332 (1988).

Plaintiffs' complaint is facially insufficient to support a "bad faith" exception to *Younger*. Although Plaintiffs offer snippets of statements, press releases, and tweets, they fail to allege any facts that plausibly infer there is any connection between those comments and the bases for initiating and continuing the Investigation. *See, infra*, at Point III.B.. They merely assert conclusory allegations that the Investigation is being conducted in "bad faith" (*see, e.g.,* Compl. ¶106), which are entitled to no weight. *Ward v. New York University*, No. 99-cv-8733, 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 25, 2000). In *Diamond "D"*, the Second Circuit rejected plaintiff's reliance on the "bad faith" exception even though the district court had found there was a "fundamentally flawed" investigation, 142 F. Supp. 2d 377, 403-404 (W.D.N.Y. 2001), *vacated*, 282 F.3d 191, holding that "bedrock principles of

16

federalism, embodied in the *Younger* abstention doctrine" required federal abstention, 282 F.3d at 193. So too here. OAG's Investigation commenced after Michael Cohen testified regarding financial malfeasance, and OAG has since uncovered substantial evidence establishing numerous misrepresentations in Mr. Trump's financial statements provided to banks, insurers, and the Internal Revenue Service. Faherty Dec., Ex. I at, *e.g.*, ¶¶ 32-224.[7]

Under *Younger*, the Court should dismiss the case. *See, e.g., Arbitron v. Cuomo, No. 08-cv-8497*, 2008 WL 4735227, at \*5 (S.D.N.Y. Oct. 27, 2008) (granting OAG's motion to dismiss under *Younger*).

**B.  The Court Should Dismiss This Action Under *Colorado River***

This case should also be dismissed in favor of the parallel NY Proceeding under the abstention doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). "In 'exceptional circumstances,' and in deference to parallel state court proceedings, the court may decline to exercise jurisdiction over a properly presented federal claim in order to further the interests of 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *American Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 87 (2d Cir. 1988) (quoting *Colorado River*, 424 U.S. at 817) (cleaned up).

A court looks to the following criteria when deciding whether to abstain under *Colorado River*: (1) avoidance of piecemeal litigation; (2) whether the cases involve property under one court's control; (3) the actions' order of filing and relative progress; (4) the forums' convenience; (5) whether federal or state law governs; and (6) whether the state proceeding is adequate to protect the federal plaintiff's rights. *See Niagara Mohawk Power Corp. v. Hudson River-Black Reg. Dist.*, 673 F.3d 84, 100–01 (2d Cir. 2012); *De Cisneros v. Younger*, 871 F.2d 305, 307–08 (2d Cir. 1989). These criteria are not a "mechanical

---

[7] Rule 105(u) of the New York Civil Practice Law and Rules "provides that a verified pleading may be utilized as an affidavit." *Everhome Mortg. Co. v. Aber*, 195 A.D.3d 682, 692–93 (2nd Dep't 2021).

checklist," but rather require "careful balancing" in a case's specific circumstances. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985). Careful examination of these factors warrants abstention.

  **First**, these parallel cases present a "danger of piecemeal litigation," a "paramount" consideration in any *Colorado River* analysis. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 19; *Arkwright-Boston Mfrs.*, 762 F.2d at 211. The state court upheld the lawfulness of the Investigation and has directed the Trump Organization and its current and former employees and agents to fulfill their production obligations on specified terms in response to subpoenas issued by OAG in its Investigation, and a third-party eDiscovery firm is now in place pursuant to court order to monitor and report on the Trump Organization's compliance with its court-ordered document production obligations. An order from this Court enjoining the Investigation and declaring it to be unlawful would contravene those prior state court orders (some of which the Trump Organization *consented to*), resulting in "inconsistent and mutually contradictory determinations." *De Cisneros*, 871 F.2d at 308 (cleaned up). Such a "risk of inconsistent outcomes" may not be "preventable by principles of res judicata," *see Niagara Mohawk*, 673 F.3d at 101–02 (cleaned up), given Plaintiffs' assiduous efforts not "to place the [] allegations, which [are] central to [its] section 1983 claims, directly in issue in the state court proceeding," *see Temple of Lost Sheep*, 930 F.2d at 184.

  **Second**, the principle that favors abstention when a court has assumed jurisdiction over a *res* is present here. The New York court has assumed control over the Trump Organization's production of documents, presently comprising millions of pages of documents, and issue will soon be joined before Justice Engoron over the enforceability of OAG's subpoena served on Mr. Trump seeking the production of documents maintained in his New York City office. *See, supra*, at 6-7. Hence, "concurrent federal proceedings are likely to be duplicative and wasteful, generating 'additional litigation through permitting inconsistent dispositions of property.'" *Arizona v. San Carlos Apache Tribe*

*of Ariz.*, 463 U.S. 545, 567 (1983) (quoting *Colorado River*, 424 U.S. at 819).

**Third**, the relative progress of the two cases strongly favors abstention. *See, e.g., De Cisneros*, 871 F.2d at 308 (advising that progress of parallel actions "must be carefully examined"). As described above (*see, supra,* at 4-7), the NY Proceeding was filed in August 2020 and since then has progressed through multiple rounds of motions resulting in multiple decisions and orders and the production of millions of pages of documents. During that time, Justice Engoron has grown familiar with the parties' subpoena enforcement issues and OAG's wide-ranging Investigation, and the Trump Organization itself has praised his "careful and deliberate" approach. *See, supra,* at 6 n.2. By contrast, this federal action is in its initial pleadings stage. *Am. Disposal Servs.*, 839 F.2d at 88; *see also Telesco v. Telesco Fuel and Masons*, 765 F.2d 356, 363 (2d Cir. 1985) (upholding abstention where state proceedings were "extensive" and federal suit had "not moved beyond the initial pleadings").

**Fourth**, the state courthouse in the NY Proceeding, located in New York City in the same borough as the Trump Organization's headquarters and the Attorney General's New York City Office out of which the Investigation is based, is convenient geographically, while this courthouse located in Syracuse is a dramatically inconvenient forum the parties and has no ostensible connection to the Investigation whatsoever. All of the lawyers working on the OAG Investigation are located in the Attorney General's offices at 28 Liberty Street in New York City and all of the lawyers who have appeared for Plaintiffs and other respondents in the NY Proceedings have offices in New York City and no offices in Syracuse. Faherty Dec. at ¶7. Moreover, none of the New York State properties which are the subject of OAG's Investigation is located in Syracuse, or anywhere else in the Northern District of New York for that matter. *Id.* at ¶8. The lack of any justification for Plaintiffs' decision to file this action in the Northern District, and the resources wasted in having Plaintiffs' claims adjudicated in this inconvenient forum, strongly favor abstention.

**Fifth**, although Plaintiffs' claims are federal, the claims necessarily involve a review of state

law pursuant to which OAG is conducting its Investigation. For example, Plaintiffs' allegations concerning purported abuse of process of parallel civil and criminal investigations (*see* Compl. ¶¶ 87, 106, and 137) will entail an evaluation of New York law concerning OAG's civil enforcement power and other laws governing parallel civil and criminal proceedings. The state law inquiry is paramount because, in general, a law enforcement action will be upheld against a constitutional challenge without "inquiry into the underlying motive." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

**Sixth**, subpoena enforcement procedures under state law offer full protection to Plaintiffs, despite their election to forum shop by placing only certain claims before this Court while simultaneously moving to quash on other grounds in state court. *See, supra*, at 7. Proceeding "in this 'one from column A, one from column B' manner" invites *Colorado River* abstention. *Garcia v. Tamir*, No. 99-cv-0298, 1999 WL 587902, at *8 (S.D.N.Y. Aug. 4, 1999). Moreover, the U.S. Supreme Court and Second Circuit have "found 'considerable merit' in the idea 'that the vexatious or reactive nature of either the federal or the state litigation may influence'" the *Colorado River* calculus. *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone*, 460 U.S. at 17 n.20). The timing of this lawsuit against the Attorney General – coming only as OAG is nearing a conclusion of its Investigation, is contemplating the filing of an enforcement action, and has sought Mr. Trump's sworn testimony – belies any notion that there is any objective behind this suit other than distraction and delay. That this action was filed only just after Mr. Trump, Donald Trump, Jr., and Ivanka Trump were served with subpoenas last month is evidence that this federal court action is "both vexatious and contrived," *Interstate Material Corp. v. City of Chicago*, 847 F.2d 1285, 1289 (7th Cir. 1988), and a "blatant attempt to manipulate the concurrent system of jurisdiction," *Garcia*, 1999 WL 587902, at *8. Entertaining this lawsuit would encourage future state subpoena recipients participating in state court proceedings to undermine those proceedings by countersuing in federal court and decrying the subpoena as the product of an unconstitutional conspiracy. Federal courts should "have no interest in encouraging this practice."

*Nakash v. Marciano*, 882 F.2d 1411, 1417 (9th Cir. 1989).

### C.  The Court Should Dismiss This Action Under *Wilton*

The same considerations that warrant dismissal under *Younger* and *Colorado River* also separately counsel for abstention under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). In *Wilton*, the Supreme Court held that federal courts should use the "unique and substantial discretion" conferred upon them by the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to decline to hear declaratory judgment actions where there are parallel state proceedings that can satisfactorily resolve all of the parties' claims and defenses. *Wilton*, 515 U.S. at 286. This abstention doctrine is grounded in concerns for avoiding "wasteful and duplicative litigation," *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998), and potentially "gratuitous interference" with pending state court proceedings addressing "the same state law issues" involving the same parties, *Youell v. Exxon Corp.*, 74 F.3d 373, 376 (2d Cir. 1996) (cleaned up). In determining whether to abstain under *Wilton*, courts may also consider whether the federal declaratory judgment action is being used as a means of forum shopping. *See Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). The assertion of injunctive relief (in addition to a declaration) does not foreclose the application of *Wilton* abstention. *See id.*

Here, *Wilton* abstention is appropriate. Entertaining Plaintiffs' suit will require this Court to construe state law and resolve questions of the proper scope and application of OAG's investigatory powers – a result that runs contrary to longstanding federal deference to state courts on state-law questions. *See Public Serv. Comm'n v. Wycoff*, 344 U.S. 237, 247 (1952). And Plaintiffs have had ample opportunity to raise all of their federal claims in the NY Proceeding to obtain the relief that they seek in this federal action. *See, supra*, at 4-7. Moreover, Plaintiffs' filing of this suit in this forum – far from where evidence, witnesses, and ongoing proceedings are located – smacks of forum shopping.

## II.    PLAINTIFFS' CLAIMS ARE BARRED BY *ROOKER-FELDMAN*

The *Rooker-Feldman* doctrine bars "cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005); *see Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58, 61 (2d Cir. 2020). "By state-court losers, we mean just that: the losing parties to the original state court proceeding." *Kosachuk*, 827 F. App'x at 61. While the Supreme Court has held that *Rooker-Feldman* should not be stretched to cover those in privity with state-court losers because to do so would alchemize the doctrine into "preclusion by another name," *Lance v. Dennis,* 546 U.S. 459, 466 (2006), where the federal plaintiff and the state-court loser are "alter egos," *i.e.* "essentially one and the same," then there is a basis to invoke *Rooker-Feldman, Kosachuk*, 827 F. App'x at 61. In addition, a plaintiff cannot circumvent *Rooker—Feldman* by recasting his claim as a federal civil rights violation. *See, e.g., Davidson v. Garry*, 956 F. Supp. 265, 268-69 (E.D.N.Y. 1996).

Here, the Trump Organization and Mr. Trump are state-court losers subject to *Rooker-Feldman*. The Trump Organization was a party to the September 2021 Order. Faherty Dec., Ex. D. Since at least 2020, when the NY Proceeding was commenced, the Trump Organization has been wholly owned by DJT Holdings Managing Member LLC, which was owned and controlled by The Donald J. Trump Revocable Trust, a trust created and operating under the laws of New York, of which Mr. Trump is the sole beneficiary. Faherty Dec. at ¶9; *Trump v. Vance*, 977 F.3d 198, 203–04 (2d Cir. 2020) ("The Trump Organization is owned by The Donald J. Trump Revocable Trust, of which the President is the grantor and beneficiary.") Accordingly, Mr. Trump and the Trump Organization were "essentially one and the same," or "alter egos," at the time Justice Engoron entered the September 2021 Order. *Kosachuk*, 827 F. App'x at 61.

Moreover, this action invites the Court to reject the September 2021 Order compelling the Trump Organization to comply with ongoing subpoena obligations by expressly seeking "to immediately cease or, at a minimum, appropriately limit all ongoing investigations of Plaintiffs"

(Compl. at p.29). *Fernandez v. Turetsky*, No. 12-cv-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil*, 544 U.S. at 284). Nor does it matter that the specific claims raised here have not been raised by Plaintiffs in the NY Proceeding. Under the doctrine, a federal court is barred from considering claims, whether or not raised in state court, that assert injury based on a state court order and seek review and reversal of that order. *See Hensel v. City of Utica*, 6:15-cv-374, 2016 WL 1069673, at *4 (N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Such claims, like those here that assert injury based on the Investigation, are "inextricably intertwined" with the prior state court determination. *Hensel*, 2016 WL 1069673, at *4.

## III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM

### A.  Plaintiffs' Claims Are Barred By *Res Judicata*

Pursuant to 28 U.S.C. § 1738, the federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984); *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000). Under New York law, the doctrine of *res judicata*, or claim preclusion, applies where: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). All three elements are satisfied.

**First**, there were multiple final orders issued by Justice Engoron in the NY Proceeding that adjudicated on the merits the lawfulness of OAG's Investigation. In *Trump I*, *Trump II*, and *Trump III*, the court ordered witnesses to appear for deposition by specific dates, compelled the production of documents, ruled that communications with, and documents in the possession of, a certain "non-party, non-lawyer" were not privileged and must be produced together with a revised privilege log, and set forth the legal standard to be applied by the parties going forward for any other documents

23

for which the Trump Organization claims privilege under *United States v. Kovel*, 296 F.2d 918 (1961). *See, supra,* at 5-6. Pursuant to the September 2021 Order, Justice Engoron ordered the Trump Organization to provide a report detailing its efforts to "preserve, collect, and produce hard-copy and electronic documents responsive to the OAG subpoenas," work diligently to comply with its obligations set forth in a list attached as an exhibit to the order, and granted OAG the right to request an independent third-party eDiscovery firm "to oversee the identification, collection, and review of electronically stored information" responsive to OAG's subpoenas. *Id.* These orders were final and appealable court judgments that resolved discrete issues raised in the NY Proceeding in their entirety and therefore have preclusive effect. *See Matter of Abrams*, 62 N.Y.2d 183, 192 (1984).

**Second**, Mr. Trump was in privity with the Trump Organization at the time these final orders were issued by Justice Engoron. Privity applies to "successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (1970). In determining whether privity exists for purposes of applying *res judicata*, the Court should consider whether the party to be bound had identical interests to the party that litigated the initial claim. *See NYP Holdings, Inc. v. McClier Corp.*, 83 A.D.3d 426, 427–28 (1st Dep't 2011); *Buechel v. Bain*, 97 N.Y.2d 295, 305 (2001) (finding privity between law firm partners and their former colleague); *Moon 170 Mercer, Inc. v. Vella*, 146 A.D.3d 537, 537 (1st Dep't 2017) (finding privity between tenant and guarantor); *see also Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir.1995) (holding privity "is a functional inquiry in which the formalities of legal relationships provide clues but not solutions."). A party will be bound by the prior judgment if his "interests were adequately represented by another vested with the authority of representation." *Alpert's Newspaper Delivery, Inc. v. The New York Times Co.,* 876 F.2d 266, 270 (2d Cir. 1989).

Mr. Trump's "interests were adequately represented by" the Trump Organization and Eric

Trump in the NY Proceeding (as well as by his own personal tax counsel), not least because Mr. Trump owns and controls the Trump Organization, *see Vance*, 977 F.3d at 203–04, and his interests in responding to OAG's subpoena are fully aligned with the interests of the Trump Organization and Eric Trump. In fact, when Eric Trump provided testimony in response to OAG's subpoena pursuant to Justice Engoron's order, he read a lengthy statement before invoking his Fifth Amendment privilege that echoes the same "abuse of authority" arguments Mr. Trump raises in this case. Faherty Dec., Ex. J. Moreover, Mr. Trump shares counsel with the Trump Organization in this action (Alina Habba, Esq.), an indication that their interests are aligned with respect to OAG's Investigation. *See Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 278 (1970) ("It is of singular significance that the two actions were prosecuted simultaneously by the same law firm.").

**Third**, Plaintiffs had a full and fair opportunity to litigate the propriety of OAG's Investigation in the NY Proceeding. Nevertheless, at no point during the contested hearings before Justice Engoron did the Trump Organization or Eric Trump contend that OAG's Investigation was unlawful, pretextual, an abuse of authority, or in violation of their constitutional rights. To the contrary, the Trump Organization *consented* to the September 2021 Order and purported to cooperate with the Investigation, insofar as the company submitted witnesses and corporate representatives for testimony and produced documents, as Plaintiffs concede in their complaint. Compl. at ¶ 88.

"Whether or not the first judgment will have preclusive effect depends in part on whether the same transaction or connected series of transactions is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first." *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983). The lawfulness of the Investigation that is the focus of Plaintiffs' complaint here was front and center in the NY Proceeding and was necessarily decided by Justice Engoron's orders. Justice Engoron compelled compliance with OAG's subpoenas pursuant to CPLR § 2308, which by its very terms required him

25

to find that "[OAG's] subpoena[s] were *authorized*." CPLR § 2308 (b) ("If the court finds the subpoena was authorized, it shall order compliance…") (emphasis added). Because Plaintiffs had a full and fair opportunity to litigate the proprietary of OAG's Investigation in the context of OAG's petition in the NY Proceeding, they are precluded from raising the claims they assert in this action, all of which require as a predicate finding that OAG's Investigation is without legal basis, *see, infra*, at 27-30. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994). Plaintiffs do not get a second bite at the apple in this federal forum. *Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986).

### B. Plaintiffs Fail To Allege Facts That Plausibly Infer OAG's Investigation Is Without Legal Basis

Even if this Court finds that Plaintiffs are not precluded from relitigating the reasonable basis for OAG's Investigation, Plaintiffs' allegations fail to raise a plausible inference that the Investigation is without any legitimate justification, which is a necessary element of each of their claims, and therefore their complaint should be dismissed. *Mayor & City Council of Balt.*, 709 F.3d at 135.

As a threshold matter, OAG is entitled to a presumption that it is acting in good faith when commencing an investigation and issuing administrative subpoenas. *See, e.g.*, *Anheuser-Busch*, 71 N.Y.2d at 332; *In re Roemer v. Cuomo*, 67 A.D.3d 1169, 1171 (3rd Dep't 2009); *American Dental Coop.*, 127 A.D.2d at 280. Even in the absence of that legal presumption, there is strong and compelling evidence of OAG's good-faith basis for the Investigation. The Investigation was opened based on the Congressional testimony provided by Michael Cohen alleging Plaintiffs improperly inflated asset valuations to obtain favorable terms for loans and insurance coverage. *See, supra*, at 4. That testimony provided more than a sufficient good-faith basis for OAG to commence an investigation pursuant to Executive Law § 63(12). And the substantial evidence uncovered by OAG during the course of the Investigation, *see* Faherty Dec., Ex. I, leave no possible doubt that OAG has continued to pursue the Investigation in good faith to the present day. Because Plaintiffs have not plausibly alleged that OAG's Investigation is without a good faith basis, which is a necessary element for each of their causes of

action, their complaint should be dismissed. *See People v. Trump*, 62 Misc. 3d 500, 509 (Sup. Ct., N.Y. Cty. 2018) (rejecting motion to dismiss by Eric Trump and other respondents based on alleged appearance of partiality or bias by the Attorney General, and holding that "given the very serious allegations set forth in the petition, I find that there is no basis for finding that animus and bias were the sole motivating factors for initiating the investigation and pursuing this proceeding"); *accord Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 707 (S.D.N.Y. 2018) (finding Attorney General's public statements provide no basis to "infer an improper purpose" but instead "suggest only that [the Attorney General] believes that an investigation is justified").

More generally, courts have recognized that "a predisposition on questions of law or policy and advance knowledge of general conditions in the regulated field are common" and not disqualifying. *Matter of 1616 Second Ave. Rest. v. New York State Liquor Auth.*, 75 N.Y.2d 158, 162 (1990). Likewise, "taking a public policy position on a policy issue related to the proceeding ha[s] been held insufficient to require disqualification." *Id.*

### 1)       Plaintiffs Fail to State a First Amendment Claim

To plead a First Amendment claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury. *See Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). Plaintiffs allegations that OAG's subpoenas and Investigation are "pretextual" (Compl. ¶ 129) and motivated to harass Mr. Trump because of his political views and his official acts as President (*id.* ¶ 125) are not only conclusory and therefore entitled to no weight, *Ward*, 2000 WL 1448641, at *5, but are also legally insufficient even if credited, *Hartman v. Moore*, 547 U.S. 250, 256-58 (2006) (holding that to challenge prosecutorial action as retaliation for protected speech, a plaintiff must plead and prove that the action was independently unjustified). This requirement honors the "presumption that a prosecutor has legitimate grounds for the action [s]he takes," *id.* at

27

263, and confirms that a prosecutor's motive "is particularly ill-suited to judicial review," *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 472, 489-90 (1999) (cleaned up), even when there is an alleged direct "disclosure of retaliatory thinking," *Hartman*, 547 U.S. at 264.

Plaintiffs' complaint contains no allegations that would support a plausible inference that OAG is pursuing the Investigation solely as a pretext to harass Mr. Trump rather than engaging in responsible law enforcement activity based on mountains of hard evidence reflecting fraudulent or misleading statements methodically collected by OAG during the Investigation. Nor does the complaint allege any First Amendment injury resulting from the Investigation. Even liberally construed, the complaint does not identify which of Mr. Trump's viewpoints have been targeted or are in danger of being suppressed, or for what particular protected speech the Investigation supposedly retaliates against him. *See, e.g.*, Compl. ¶ 120 (citing broadly to "Trump's political views, beliefs, and affiliations, and those acts he has taken in furtherance of his political career" which are "a form of political speech subject to constitutional protection."). In any event, there is "no support whatever" for the notion that an allegation of "wrongful purpose or motive" is enough to defeat a legally compliant action by a law enforcement agency. *U.S. v. O'Brien*, 391 U.S. 367, 383 (1968) (cleaned up); *accord Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 652 (1994).

### 2)    *Plaintiffs Fail to State a Fourth Amendment Claim*

Because the recipient of an administrative subpoena may challenge it in court before complying, such subpoenas are limited by the general reasonableness standard of the Fourth Amendment, not by the probable cause requirement. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984); *NLRB v. Am. Med. Response, Inc.*, 438 F3d 188, 192-93 (2d Cir. 2006). Under this standard, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Here, OAG has issued subpoenas within OAG's statutory authority to investigate. *See* Exec. Law § 63(12);

*see also*, *supra* at 4.

Plaintiffs' theory of a Fourth Amendment violation is also based on an alleged improper purpose. *See* Compl. ¶ 139 (Defendant's actions were "motivated by an improper purpose, namely her desire to harass intimidate, threaten, oppress, coerce, and injure Plaintiffs"). But "motive is irrelevant … because a Fourth Amendment claim must be based on a showing that the search in question was objectively unreasonable." *Blue v. Koren*, 72 F.3d 1075, 1081 (2d Cir. 1995).

### 3)   *Plaintiffs Fail to State a Due Process Claim*

On their Fourteenth Amendment claim, Plaintiffs assert that they have a due process right not to be investigated by a law enforcement agency that they claim has disagreed with their political views. But due process does not require administrative prosecutors to be "entirely neutral and detached." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980) (cleaned up). Moreover, judicial review of prosecutorial discretion is particularly deferential at the investigative stage, during which a prosecutor must be able to "investigate . . . wrongdoing free from interference by the courts." *In re Grand Jury of S. Dist.*, 508 F. Supp. 1210, 1214 (S.D. Ala. 1980).

Similarly, Plaintiffs' allegations that the Attorney General discussed the ongoing Investigation with members of the press or private citizens, Compl. ¶¶ 96-98, are likewise insufficient to state a due process claim, especially when those same comments – taken in context, that the Attorney General could neither confirm nor deny a direct question about the Investigation, Compl. ¶ 98 – demonstrate a *lack* of prejudgment. Put simply, allegations of political disagreement cannot insulate the subject of an ongoing investigation from law enforcement activity. *See In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) (holding political considerations could not establish "bad faith or improper behavior" by agency officials). As the Seventh Circuit has held in the analogous context of a selective-prosecution claim, even assuming an investigative target were chosen for "political prominence" or newsworthiness, that would "not [be] an impermissible basis for selection" because "[i]t makes good sense to prosecute

29

those who will receive the media's attention" and "[p]ublication of the proceedings may enhance the deterrent effect of the prosecution and maintain public faith in the precept that public officials are not above the law." *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975).

### 4) Plaintiffs Fail to State a Claim for Abuse of Process

To prove malicious abuse of process under § 1983, courts look to state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994). Under New York law, a plaintiff must show the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.,* 331 F.3d 63, 76 (2d Cir. 2003).

In evaluating the third element, the Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to meet the "collateral objective" prong. *See Savino*, 331 F.3d at 77 (holding a plaintiff must establish defendant had an improper purpose in instigating the action, regardless of motive); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) ("A malicious motive alone ... does not give rise to a cause of action for abuse of process."). "The purpose for which the process is used, once it is issued, is the only thing of importance." Prosser, Torts, at 667–68 (2d ed. 1955) (quoted by *Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir.1963)). Accordingly, to state a claim for abuse of process, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his …prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his…prosecution." *Savino*, 331 F.3d at 77. Here, Plaintiffs allege no facts that would plausibly infer such a collateral purpose exists. Rather, their allegations seek to infer an improper motive, which is insufficient to support their claim.

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Defendant's motion to dismiss the complaint in its entirety, along with any other relief the Court deems necessary and appropriate.

Dated:   New York, New York
         January 26, 2022

LETITIA JAMES
Attorney General of the State of New York

By: _____/s/ Andrew S. Amer_____

Andrew S. Amer (admitted *pro hac vice*)
  Special Counsel
Colleen K. Faherty
  Assistant Attorney General
Kevin Wallace
  Senior Enforcement Counsel
28 Liberty Street
New York, New York 10005
(212) 416-6127/6046/6376
andrew.amer@ag.ny.gov
colleen.faherty@ag.ny.gov
kevin.wallace@ag.ny.gov

*Attorney for Defendant Letitia James, in her official capacity*