# EXHIBIT G



STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

November 1, 2021

Lawrence S. Rosen
LaRocca Hornik Rosen & Greenberg LLP
The Trump Building
40 Wall Street, 32nd Floor
New York, NY 10005

      RE:    *People v. Trump Organization*, Index No. 451685/2020 N.Y. Cty. Sup. Ct.

Dear Larry,

      We write on behalf of the Office of the Attorney General ("OAG") and further to the Stipulation and Order entered on September 2, 2021 in the above-referenced proceeding (Docket No. 314) (the "Stipulated Order"). Item 3 of the Stipulated Order provides that if "OAG reasonably concludes, after October 15, 2021 (but no later than December 31, 2021), and so notifies the Trump Organization (setting forth in reasonable detail the basis for its conclusion) that the Trump Organization has not met its obligations to comply with any subpoenas outstanding as of the date hereof, then the Trump Organization will retain, at its expense, an independent third-party e-discovery firm (the 'eDiscovery Firm') to oversee the identification, collection, and review of electronically stored information ('ESI') responsive to OAG's subpoenas."

      This letter serves as notice that OAG has reasonably concluded that the Trump Organization has not met its obligations to comply with a number of subpoenas outstanding as of September 2, 2021. As a result, the Trump Organization must retain an independent eDiscovery Firm. At this time, we would only ask that the eDiscovery Firm undertake the procedures outlined in Items 1-4 of Exhibit A to the Stipulated Order. We will determine whether the remaining responsibilities laid out in Exhibit A need to be undertaken once we have a clear understanding of what data exists and has been collected (and what has not been collected).

      The basis for our conclusion is laid out in additional detail below, but this determination should not come as a surprise. Over the last several months, we have been engaged with you in a painstaking effort to determine why the Trump Organization's document productions since the issuance of subpoenas nearly two years ago have been so plainly inadequate as compared to the productions from other parties.[1] Only now, when under court order, has the Trump Organization begun divulging hundreds of thousands of

---

[1] These issues have been detailed in a series of letters and related email exchanges, including our letters dated March 19, 2021, April 8, 2021, April 15, 2021 and July 27, 2021,

Lawrence Rosen
November 1, 2021
Page 2

pertinent documents and communications that should have been produced years ago before the testimony of important witnesses. Moreover, the Trump Organization has never provided basic, clear information regarding the collection and production process—such as what occurred with the still-unexplained email migration process that resulted in substantial production deficiencies and delays. Far from signifying a good faith effort to comply, the present state of affairs confirms at a minimum that the Trump Organization has not been, and is not, a reliable subpoena respondent. It is therefore imperative that we obtain a clear understanding from an independent third-party of what has been collected and reviewed to date and if there are any additional collections of potentially responsive documents that remain to be searched.

As a result, please submit your choice of eDiscovery Firm by November 8, 2021 for OAG review and approval.

### 1. The Trump Organization has not complied with its subpoena obligations

Although OAG's initial subpoena duces tecum was served in December 2019, productions from the Trump Organization only seem to have begun in earnest over the past two months; since the execution of a tolling agreement and entry of the Stipulated Order. During that time the Trump Organization has produced 751,035 documents which constitutes more than 97 percent of its total production of 769,813 documents. While OAG is still in the process of reviewing these documents, significant issues are already apparent. First, we still do not have a production of custodial documents for Donald J. Trump. Indeed, we have received no production of custodial documents for Mr. Trump since the production of the three letters from Mr. Trump on July 22, 2021, which we noted in our letter of July 27, 2021. All of this is despite testimony from the General Counsel, Alan Garten that there were file cabinets at the Trump Organization holding Mr. Trump's files, that Mr. Trump had assistants who maintained files on his behalf, that he received and maintained hard copy documents, and that he used Post-It Notes to communicate with employees. Moreover, while the Trump Organization has interviewed 64 custodians to date, Rhona Graff is the only executive assistant to Donald J. Trump on that list. Attached at Tab A is a list of executive assistants at the Trump Organization and addresses for scanners and other imaging machines they used. At least five of those executive assistants worked for Donald J. Trump, nearly all of whom have sent documents to or on behalf of Mr. Trump.[2] The failure to fully search these custodians and sources is a significant gap in compliance.

Second, we note that there still appear to be gaps in the productions based on documents produced by third parties in this investigation. For example: Attached at Tab B is an email from Donald Bender at Mazars to Jeff McConney, Senior Vice President and Controller at the Trump Organization. The email is dated November 2, 2015 and attaches the engagement letter for the preparation of the "statement of financial condition of Donald J. Trump as of June 30, 2015." Attached at Tab C is an email from Jeff McConney to Peter Welch at Capital One, copying Allen Weisselberg and others, dated January 22, 2013, attaching a memo and "information relating to 40 Wall Street." That attachment includes plainly relevant and responsive financial information

---

[2] The exhibit also includes executive assistants to other Trump Organization personnel and scanners or other machines they may have used.

Lawrence Rosen
November 1, 2021
Page 3

concerning the valuation of 40 Wall Street. Attached at Tab D is an email from Jeff McConney to Dave Guerrero at Deutsche Bank, dated December 10, 2015, concerning an audit of the financial statements for the Old Post Office property. And the gaps are not limited to electronic communications. Attached at Tab E is a letter sent express mail from Allen Weisselberg to Peter Welch at Capital One stating that 40 Wall Street LLC will prepay the note on its $160,000,000 loan for the property at 40 Wall Street. Each of these documents are responsive and were produced by third parties, but not the Trump Organization.

In addition to these gaps, we would note that the inclusion of a significant volume of irrelevant material raises questions for us about the process for collecting, reviewing and producing responsive documents. To take just two examples, attached at Tab F is an email to Eric Trump regarding a hunter safety course at the Cos Cob Revolver and Rifle Club, and attached at Tab G is an email exchange with Rhona Graff about hosting a Serena Williams 5K. Whatever the specifics of the search and production process to date, the production of these irrelevant materials does not instill confidence that the process is thorough and effective. Indeed we have identified a number of problems with the collection, review and production process to date:

### a. Failure to search relevant shared and local drives

Testimony from multiple witnesses has established that the Trump Organization maintains a series of shared network drives. For example back in February 2021, Assistant Controller Donna Kidder testified that the accounting department utilized an "O drive," a network shared drive for work performed by employees in the department. Ms. Kidder further testified that she would save work-related documents to the drive. In a letter dated March 19, 2021 we explicitly asked for the O Drive to be searched along with custodial records for Ms. Kidder. The Trump Organization, however, did not make a production from the O Drive until October 15, 2021. That production also included materials from a "P Drive." We have never had a full explanation of the shared network drives utilized by the Trump Organization or what steps have been taken to preserve and search for those locations. Attached at Tab H is a document discussing a "G Drive" containing "40 Wall Street executed leases and amendments," and an "L Drive." At this late stage we need a full disclosure of the shared network drive structure and an assurance all drives have been searched for responsive documents in all places on such drives where responsive documents may exist.

### b. Failure to produce metadata

Many of the recent productions lack metadata information as called for by the subpoenas. We first raised the issue of missing metadata over one year ago and the subpoenas insist upon inclusion of this information. To take one example, TTO_02397315 is an email with several attachments, but none of said attachments shows up as a family to the parent email. Without seeing family information, it is not readily apparent whether all attachments were collected and produced. Given the email migration issues the Trump Organization has experienced, it is critical that we be able to verify all parts of responsive emails have been collected and received. Furthermore, the lack of metadata means OAG cannot determine the source path of the files in Trump Organization productions. Without a source path, we cannot verify where in the Trump

Lawrence Rosen
November 1, 2021
Page 4

Organization's network any particular document came from—which is responsive information called for by the subpoena and relevant to determining subpoena compliance. Moreover, the absence of metadata may be responsible for the apparent failure in deduplication of recent productions. Successful deduplication would reduce burden on all parties.

> c. *Failure to produce a complete set of text messages, voicemail, and mobile phone records*

The Trump Organization's production of text messages and voicemails appears to be incomplete. At the outset, the process involving the preservation and collection methods for these materials has been opaque. But even more critically the limited productions we have received to date suggest on their face that they are incomplete. For example, on August 26, 2021 the Trump Organization produced a list of devices for 25 custodians issued from January 1, 2014 through December 18, 2020. The Trump Organization declined to provide a sworn affirmation as to the accuracy of the list and offered no description of the process for collecting the list apart from noting that it was prepared by Eric Brunnett and was not maintained during the routine course of business. But that list appears to be inaccurate. The document lists Allen Weisselberg as having one mobile device; however in the status report dated September 24, 2021, the Trump Organization stated that he used three mobile phones for business including one that has been in use since late 2018 which was omitted from the list. More recently, on October 22, 2021, we were informed that three Trump Organization employees – Patrick Birney, Jeff McConney and Donna Kidder – used personal phones and not phones issued by the Trump Organization. Four days later you informed us that that disclosure was incorrect and Mr. Birney used a Trump Organization issued phone. Then on Friday, October 29, 2021 you "confirmed that Patrick Birney has used both a personal cell phone and a TTO-issued cell phone for business purposes." In short, we have no reason to believe the Trump Organization has accurately tracked the electronic devices utilized by its employees.

Beyond merely tracking the devices used, the productions from devices collected to date also appear to be incomplete. To date we have only received text message files (ufdr) for Allen Weisselberg, Donald Trump Jr., Eric Trump, and Ray Flores. Those productions amount to roughly two dozen conversations in total. But evidence gathered to date would suggest substantially greater volume of conversations exist. Indeed, it would appear that Trump Organization employees regularly text and call each other about business matters. Alan Garten testified that he texted at least 10 other employees about Trump Organization business. Patrick Birney testified that he has texted about Trump Organization business. Ray Flores received multiple voice messages from other Trump Organization employees, including Jeff McConney and Eric Trump, regarding valuations for properties on the statement of financial condition.[3] The texts we have received suggest they were part of a regular flow of communication concerning

---

[3] Voicemail from Jeff McConney to Ray Flores (Dec. 24, 2020) "Hey, Ray, it's Jeff McConney, I'll leave you a short message. I know it's Christmas Eve and we are still working on the financial statement. Bender is giving us a hard time on the cap rate for Niketown and Trump Tower."; Voicemail from Eric Trump to Ray Flores (Mar. 28, 2016) "Hey, Ray, it's Eric, I hope you are doing well, I just wanted to give you a call quickly and ask you about Las Vegas and that final value. Give me a call anytime on my cellphone."

Lawrence Rosen
November 1, 2021
Page 5

Trump Organization business and not limited to one-off exchanges commensurate with the handful of communications we have received.

Other documents in the production indicate the existence of responsive documents that we have not received. In December 2019, Eric Trump apparently exchanged text messages with Eric Lipton of the New York Times about subjects of obvious relevance to the OAG investigation: the strength of the Trump Organization's commercial portfolio and its debt load. OAG alerted the Trump Organization to the existence of this text message exchange during Alan Garten's examination. While Mr. Garten disclaimed any knowledge of the exchange—"Yeah, I don't have his phone, I don't know what's on his phone" —the Trump Organization should have searched for the exchange. If the exchange no longer exists, Instruction C.3 to the December 27, 2019 subpoena obligates the Trump Organization to submit a statement under oath about its destruction.

And finally, we have not received a comprehensive or even partially complete report on devices held by former employees or private devices utilized by employees. While the Trump Organization has indicated it does not control personal devices, Mr. Brunnett testified that the company did retain some control over such devices. A full, independent report is required.

### d. Failure to produce hard copy documents

We specifically flagged the failure to make an adequate production of hard copy documents in our letter of July 27, 2021. That letter noted that:

> A review of the productions from the Trump Organization to date appears to demonstrate that less than four hundred hard copy documents have been produced in total. In large part these appear to be contracts and other finalized documents, not the files of individual custodians. Indeed, none of the metadata related to hard-copy documents produced to date reflects any individual custodian. There appears to be almost no individual notes or other records.

Since that time there appear to have been no additional hard copy documents produced. Indeed, the table included in your September 30, 2021 letter indicated that the last hard copy document production was made on January 27, 2020 and consisted of "Hard copy files from J. McConney, J. Maraynes, A. Weisselberg, P. Birney, and storage relating to Seven Springs." Given the fact that Donald J. Trump did not personally use email, a search for his hard copy documents in particular is especially critical.

### e. Other failures

We still have not received a comprehensive, final report on the server migration issues that were first disclosed in April 2021. We do not know which employee records were affected, whether existing volumes have been successfully restored, whether they have been searched and are included in the production, or whether the fact that the Trump Organization has in recent weeks produced more than one hundred times the number of documents it had produced before the stipulation was signed was caused by the migration process or by other factors. Given the

Lawrence Rosen
November 1, 2021
Page 6

ongoing issues and questions regarding this significant event, an independent review is necessary.

We also do not appear to have a complete production of documents regarding challenges to property tax assessments for Trump Organization properties. The Trump Organization recently produced a document titled "Real Estate Tax Appeal Summary 1-8-19." It includes several properties that are valued on the statement of financial condition and undergoing an appeals process. To take one example, TNGC Hudson Valley authorized Paradigm Tax Group LLC to represent it in any tax appeals for tax year 2015 and forward. "PARADIGM TAX GROUP is authorized to file real estate returns, to review and receive copies of any prior tax year's tax returns, to investigate appraisals and assessments, to submit income and expense information, to appeal property values and taxes, to receive tax bills, to appear before administrative boards or agencies, and to prepare to take such actions in our offices as necessary to effectuate same." TTO_01534725. However, the documents, communications, and material submitted to support the appeals on many of these properties have not appeared in previous productions. Any material submitted to a county or municipality including income and expense statements, appraisals, and challenges to appraisals as a part of the tax appeal process, would not be privileged and responsive material should have been produced.[4]

## 2. The September 30, 2021, status report was insufficient and should be supplemented by the third-party eDiscovery firm

In light of the above issues, OAG has reasonably concluded that the Trump Organization has not complied with its subpoena obligations and seeks to initiate the process for the appointment of the independent third-party eDiscovery Firm. The duties and responsibilities of the firm upon its appointment are outlined in Exhibit A to the Stipulated Order. The eDiscovery Firm shall: (i) obtain and verify a log of devices issued to each custodian; (ii) identify all other custodians of responsive hard-copy and electronic material; (iii) ascertain the locations of likely responsive records, through interviews and other means; and (iv) verify that one or more backups of Trump Organization data is restored to a standalone system. Through the completion of these steps, the eDiscovery Firm should be ready to issue a detailed status report expanding on the limited information disclosed by the Trump Organization pursuant to Paragraph 1 of the Stipulated Order. OAG will wait for the issuance of that report before providing the firm with search terms pursuant to Item 5 of Exhibit A to the Stipulated Order.

---

[4] Relatedly, documents recently produced indicate that the Trump Organization engaged a firm called McGladrey LLP to perform tax and accounting-related work with respect to Trump Organization properties. Documents in your possession regarding those engagements, or under your control (because held by your agent), ought to be produced.

Lawrence Rosen
November 1, 2021
Page 7

*****

We remain committed to resolving this investigation as quickly as possible and would therefore ask that you provide us with your proposed third party eDiscovery Firm as soon as possible. In any event, we ask that you submit your proposal no later than November 8, 2021.

Sincerely,

*/s/ Kevin Wallace*
Kevin Wallace

# TAB A

**Executive Assistants and Additional Custodians List**

| Name | Position |
|---|---|
| Deborah Tarasoff | Accounts payable supervisor |
| Holly Lorenzo | Executive Assistant to Allen Weisselberg |
| Rebecca Manochio | Executive Assistant to Allen Weisselberg |
| Chelsea Frommer | Executive Assistant to Donald J. Trump |
| Jessica Macchia | Executive Assistant to Donald J. Trump |
| Katie Murphy | Executive Assistant to Donald J. Trump |
| Kelli Rose | Executive Assistant to Donald J. Trump |
| Thuy Colayco | Executive Assistant to Donald J. Trump |
| Lindsay Santoro | Executive Assistant to Donald J. Trump Jr. |
| Kimberly Benza | Executive Assistant to Eric Trump and Corporate Communications |
| Elizabeth Hickey | Executive Assistant to Ivanka Trump |
| Kelly Malley | Executive Assistant to Jeff McConney and Allen Weisselberg |
| Cammie Artusa | Leasing Coordinator and Executive Assistant to George Ross |
| 26-copier-pantry | N/A |
| scanemail@trumporg.com | N/A |
| scanner@trumporg.com | N/A |
| Meredith McIver | Staff Writer |

# TAB B

**From:** Bender, Donald
**Sent:** Thursday, February 25, 2016 9:28 AM
**To:** jmcconney@trumporg.com
**CC:** Pagan, Ellen
**Subject:** DJT engagement letter
**Attachments:** 2016_02_25_09_26_22.pdf



FOIA/FOIL CONFIDENTIAL TREATMENT REQUESTED

MAZARS-NYAG-00123419

 

November 2, 2015

Mr. Allen Weisselberg
Executive Vice President
Chief Financial Officer
The Trump Organization
725 Fifth Avenue
New York, NY  10022

Dear Mr. Weisselberg:

This letter is to confirm our understanding of the terms and objectives of our engagement and the nature and limitations of the services we will provide.

We will perform the following services:

We will compile, from information you provide, the statement of financial condition of Donald J. Trump as of June 30, 2015 and issue an accountant's report thereon in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

As part of our engagement, we will also perform other accounting services as needed.

**Compilation Objective**
The objective of a compilation is to assist you in presenting financial information in the form of financial statements. We will utilize information that is your representation without undertaking to obtain or provide any assurance that there are no material modifications that should be made to the financial statements in order for the statements to be in conformity with accounting principles generally accepted in the United States of America.

**Compilation Procedures**
We will conduct our compilation in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

A compilation differs significantly from a review or an audit of financial statements.   A compilation does not contemplate performing inquiry, analytical procedures, or other procedures performed in a review.   Additionally, a compilation does not contemplate obtaining an understanding of the Donald J. Trump's internal control; assessing fraud risk; testing accounting records by obtaining sufficient appropriate audit evidence through inspection, observation, confirmation, or the examination of source documents (for example, cancelled checks or bank images); or other procedures ordinarily performed in an audit.  Accordingly, we will not express an opinion or provide any assurance regarding the financial statements being compiled.

WEISERMAZARS LLP
60 CROSSWAYS PARK DRIVE WEST, SUITE 301 – WOODBURY, NEW YORK – 11797
TEL: 516.488.1200 – FAX: 516.488.1238 – WWW.WEISERMAZARS.COM

WEISERMAZARS LLP IS AN INDEPENDENT MEMBER FIRM OF MAZARS GROUP.



 

November 2, 2015
Page 2

Our accountants' compilation report is expected to include references to the following departures from generally accepted accounting principles.

1.  Generally accepted accounting principles require that in order to reflect amounts to be received in the future at estimated current values the rights must be non-forfeitable, fixed and determinable and not require any future services. Several of the values that will be expressed will be based on future interests that, in some instances, are not for fixed or determinable amounts, and, in some instances, are based on performance of future services.

2.  Generally accepted accounting principles require that with respect to each closely held business entity, summarized information about assets, liabilities and results of operations for the most current year be disclosed in the financial statements. In addition, the current estimated value of each closely held business should be recorded as a net investment (assets net of liabilities). The statement of financial condition will not include the required summarized disclosures and will report some closely held business entities in a manner that separately states gross assets and liabilities and states certain cash positions separately from their related operating entity.

3.  Generally accepted accounting principles require that financial statements include a disclosure of subsequent events and their effects on the statement of financial condition, if any. The statement of financial condition will not include such disclosure.

4.  Generally accepted accounting principles require that the receipt of non-interest bearing deposits in exchange for rights or privileges be recorded at the present value of the liability. The present value of the liability for non-interest bearing deposits received as a condition of membership in club facilities will not be included in the accompanying statement of financial condition, other than in the case where the valuation of the asset is subject to the refunding of said deposit.

5.  Generally accepted accounting principles require that personal financial statements include a provision for current income taxes, as well as estimated income taxes on the differences between the estimated current values of assets and the estimated current amounts of liabilities and their tax bases. The statement of financial condition will not include such provisions.

6.  Accounting principles generally accepted in the United States of America require that personal financial statements report cash and marketable securities as separate amounts. The accompanying statement of financial condition reports cash and marketable securities as a single amount.

7.  Generally accepted accounting principles require that personal financial statements include all assets and liabilities of the individual whose financial statements are presented. The accompanying statement of financial condition does not include the following for Trump International Hotel & Tower Chicago: (1) real property and related assets, (2) mortgages and loans payable, and (3) guarantees which Donald J. Trump may have provided.

The effects of the above departures from generally accepted accounting principles as described above will not be determined or disclosed in our accountants' compilation report.

**FOIA/FOIL CONFIDENTIAL TREATMENT REQUESTED**

 

November 2, 2015
Page 3

Further, our report will include the following:

Because the significance and pervasiveness of the matters discussed above make it difficult to assess their impact on the statement of financial condition, users of this financial statement should recognize that they might reach different conclusions about the financial condition of Donald J. Trump if they had access to a revised statement of financial condition without the above referenced exceptions to generally accepted accounting principles.

Our engagement cannot be relied upon to disclose errors, fraud, or illegal acts. However, we will inform the appropriate level of management of any material errors, and of any evidence or information that comes to our attention during the performance of our compilation procedures, that fraud may have occurred.  In addition, we will inform you of any evidence or information that comes to our attention during the performance of our compilation procedures regarding illegal acts that may have occurred, unless they are clearly inconsequential.  We have no responsibility to identify and communicate deficiencies in your internal control as part of this engagement.

If, for any reason, we are unable to complete the compilation of your financial statements, we will not issue a report on such statements as a result of this engagement.

**Management Responsibilities**
You are responsible for:

a) the preparation and fair presentation of the financial statements in accordance with accounting principles generally accepted in the United States of America, other than previously noted.

b) designing, implementing, and maintaining internal controls relevant to the preparation and fair presentation of the financial statements.

c) preventing and detecting fraud.

d) identifying and ensuring that Donald J. Trump complies with the laws and regulations applicable to his activities.

e) the selection and application of accounting principles.

f) making all financial records and related information available to us and for the accuracy and completeness of that information.

You are responsible for making management decisions and performing management functions, and for designating an individual with suitable skill, knowledge, or experience to oversee any bookkeeping services, tax services, or other services we provide, if any.  You are responsible for evaluating the adequacy and results of the services performed and accepting responsibility for such services.  You are responsible for establishing and maintaining internal controls, including monitoring ongoing activities.

**FOIA/FOIL CONFIDENTIAL TREATMENT REQUESTED**   **MAZARS-NYAG-00123422**

 

November 2, 2015
Page 4

If you intend to publish or otherwise reproduce our compilation report on the financial statements and make reference to WeiserMazars LLP, you agree to provide us in advance with copies for our review and approval before distribution. You also agree to provide us with a copy of the final reproduced material for our approval before it is distributed. If you intend to distribute in electronic format, you must provide us both the electronic version as well as an actual print-out for our approval.

**Administration**
Donald Bender is the engagement partner and is responsible for supervising the engagement and signing the report or authorizing another individual to sign it.

To the best of your knowledge, you are unaware of any facts, which might impair our independence with respect to this engagement.

Please be advised that the independence rules provide that an accountant will not be independent with respect to a client where the client employs a current or former partner or professional employee of the firm within a specified period of time. Accordingly, you agree not to enter into any discussion regarding employment with any current or former partner or professional employee of WeiserMazars LLP without our permission.

We may from time to time, and depending on the circumstances, use contract professionals in performing certain limited tasks on your engagement. We hold these professionals to the same standards of confidentiality as all Firm professionals.

You agree to hold WeiserMazars LLP, its successors and assigns harmless from any liability arising out of knowing misrepresentation from management.

This engagement is for the provision of annual compilation services for the periods described herein, and it is understood that such services, and all services related to this engagement, are provided as a single annual engagement. Our compilation engagement ends on delivery of our compilation report. Any subsequent services after this date will be considered a new engagement.

Any and all claims by Donald J. Trump arising under this engagement must be commenced by Donald J. Trump by the later of one (1) year following the date on which WeiserMazars LLP delivered the Statement of Financial Condition associated with this engagement or the date when a new Statement of Financial Condition is issued by WeiserMazars LLP, if WeiserMazars LLP is engaged within one year of the date of this letter. If the completed work product is not delivered to the client, for any reason, any and all claims by Donald J. Trump arising under this engagement must be commenced by Donald J. Trump within one (1) year following the date Donald J. Trump is informed of the engagement's termination in writing.

**FOIA/FOIL CONFIDENTIAL TREATMENT REQUESTED**

 

November 2, 2015
Page 5

You agree to reimburse WeiserMazars LLP, its successors and assigns, partners, principals and employees, to the fullest extent permitted by law for any expense, including compensation for our time and reimbursement for our out-of-pocket expenses and attorneys' fees, incurred in complying with or responding to any request (by subpoena or otherwise) for testimony, documents or other information concerning this engagement by any governmental agency or investigative body or by a party in any litigation or dispute other than litigation or disputes involving claims pertaining to this engagement against WeiserMazars LLP. This paragraph will survive termination of this engagement.

WeiserMazars LLP shall not be liable to Donald J. Trump for any actions, damages, claims, liabilities, costs, expenses or losses in any way arising out of or relating to the services performed under this engagement letter for an aggregate amount in excess of four (4) times the fees paid or owing to WeiserMazars LLP for all entities wholly owned by Donald J. Trump as outlined in the annual billing schedule for the twelve months ending October 15, 2015. In no event shall WeiserMazars LLP be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including, without limitation, lost profits and opportunity costs).

In connection with the performance of our services we may communicate with you or others via e-mail transmission. As e-mails can be intercepted and read, disclosed or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, we cannot warrant that e-mails from us will be properly delivered and read only by the addressee. Therefore, we specifically disclaim any liability whatsoever for interception or unintentional disclosure of e-mail transmissions, or for the unauthorized use or failed delivery or receipt of e-mails transmitted by us in connection with the performance of this engagement. In that regard, you agree that we shall have no liability for any loss or damage to any person or entity resulting from the use of e-mail transmissions, including any consequential, incidental, direct, indirect or special damages, such as loss of revenues or anticipated profits, or disclosure or communication of confidential or proprietary information or missed deadlines.

We may also elect to resign upon our determination that Donald J. Trump's personnel have not been forthcoming in providing information or have not been truthful. If we elect to terminate our services, our engagement will be deemed to have been concluded upon written notification of termination, even if we have not completed our report. You will be obligated to compensate us for all time expended and to reimburse us for all out-of-pocket expenditures through the date of termination.

FOIA/FOIL CONFIDENTIAL TREATMENT REQUESTED

 

November 2, 2015
Page 6

**Dispute Resolution**

Any controversy or claim ("dispute") arising out of or relating to this engagement, the services provided thereunder, or any other services provided by or on behalf of WeiserMazars LLP or any of its subcontractors or agents to Donald J. Trump or at its request (including any dispute involving any person or entity for whose benefit the services in question are or were provided), shall be resolved in accordance with the dispute resolution procedures set forth below, which constitute the sole methodologies for the resolution of all such disputes. If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

*Mediation*

Any dispute arising out of or relating to this engagement, or breach thereof, shall first be submitted for good faith mediation administered by the American Arbitration Association ("AAA") under its Mediation Rules. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

Mediation shall take place at a place to be designated by the parties.

*Arbitration*

If the matter is not resolved by mediation within 60 days of its submission to the mediator, then the parties shall submit the dispute for arbitration administered by the American Arbitration Association under its Professional Accounting and Related Services Dispute Resolution Rules (the "Rules").

The arbitration will be conducted before a single arbitrator selected by agreement between the parties from the AAA's Panel of Accounting Professionals and Attorneys and shall take place in New York, New York. The arbitrator shall be a fit and impartial person and shall have at least ten (10) years' experience in commercial litigation, accounting or a similar field connected to the subject matter of the dispute. The arbitrator, with the aforementioned requisite qualifications, shall be selected pursuant to Section 13 of the Rules.

The arbitrator shall issue its final award in a written and reasoned decision to be provided to each party. In its decision, the arbitrator will declare one party the prevailing party and shall have the power to award all reasonable legal fees associated with the arbitration and prior mediation to the prevailing party. The arbitrator shall have no authority to award non-monetary or equitable relief of any sort. The arbitrator shall not have authority to award damages that are punitive in nature, or that are not measured by actual compensatory loss.





November 2, 2015
Page 7

Any discovery sought in connection with the arbitration must be expressly approved by the arbitrator only upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitrator may disclose the existence, content or result of the arbitration only as expressly provided by the Rules.

The award reached as a result of the arbitration will be binding on the parties and confirmation of the arbitration award may be sought in any court having jurisdiction.

Any dispute relating in any way to this engagement will be governed by the laws of the State of New York, without giving effect to any provisions relating to conflict of laws that would require the laws of another jurisdiction to apply. In applying the terms of this engagement letter, the Arbitrator shall apply the laws of the State of New York.

**Fees**
Our fee for these services will be at our standard hourly rate. You will also be billed for travel and other out-of-pocket costs such as report production, typing, postage, etc.

The fee is based on anticipated cooperation from your personnel and the assumption that unexpected circumstances will not be encountered during the engagement. If significant additional time is necessary, we may revise our fee.

**Additional Services**
You may request that WeiserMazars LLP perform additional services not addressed in this engagement letter. If such a request is made, we will communicate with you regarding the scope of the additional services and the estimated fees. Depending upon the scope and time required to perform these services, we may issue a separate engagement letter covering the additional services. In the absence of any other written communication from us documenting such additional services, our services will be governed by the terms of this engagement letter, however, these additional services are a separate engagement.

**Agreement**
This letter comprises the complete and exclusive statement of the agreement between the parties superseding all proposals, oral or written, and all other communications between the parties with respect to the subject matter hereof. If any provision of this letter is determined to be unenforceable, all other provisions shall remain in force.

 MAZARS

 WeiserMazars

November 2, 2015
Page 8

We appreciate the opportunity to be of service to you and believe this letter accurately summarizes all the terms of our engagement. If you have any questions, please let us know. If you agree with the terms of our engagement as described in this letter, please sign the enclosed copy and return it to us.

Sincerely yours,

WEISERMAZARS LLP

Acknowledged:

_____

Allen Weisselberg
Executive Vice President
Chief Financial Officer
The Trump Organization

_____

Date

EPACE/08292/2015C/1030.03

# TAB C

| From: | Jeff McConney [jmcconney@trumporg.com] |
|---|---|
| Sent: | 1/22/2013 12:04:51 PM |
| To: | Welch, Peter [Peter.Welch@capitalone.com] |
| CC: | Allen Weisselberg [weisselberg@trumporg.com]; Galaburri, Matthew [Matthew.Galaburri@capitalone.com]; Glanville, Terry [Terry.Glanville@capitalone.com] |
| Subject: | 40 Wall Street |
| Attachments: | 20130122114453421.pdf |

Hi Peter,

Please see the attached information relating to 40 Wall Street.

Should you have any questions, please feel free to contact me.

Thanks
Jeff


Jeffrey S. McConney
Senior Vice President/Controller
725 Fifth Avenue | New York, NY | 10022
p. 212.715.7231 | f. 212.832.5396
jmcconney@trumporg.com | Trump.com


-----Original Message-----
From: Jennifer Walsh [mailto:jwalsh@trumporg.com]
Sent: Tuesday, January 22, 2013 11:45 AM
To: Jeff McConney
Subject: Message from "RNPFC77CE"

This E-mail was sent from "RNPFC77CE" (MP 8001/LD380).

Scan Date: 01.22.2013 11:44:53 (-0500)
Queries to: scanner@trumporg.com

This e-mail message, and any attachments to it, are for the sole use of the intended recipients, and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution of this email message or its attachments is prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, while the company uses virus protection, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

CAPITALONE-00254440

CONFIDENTIAL



# T R U M P

THE TRUMP CORPORATION

January 22, 2013

Capital One, NA
275 Broadhollow Road
Melville, NY 11747

Attn:  Mr. Peter Welch
       Senior Vice President

Re:    40 Wall Street LLC

Dear Peter,

Pursuant to Section 2 of Exhibit B of the Second Amended, Consolidated and Restated
Mortgage Note dated November 19, 2010 between Capital One, N.A. and 40 Wall Street
LLC, enclosed please find:

- Income and Expense Statement for the calendar quarter ended December 31, 2012
- January 2013 Rent Roll

Also enclosed is a twelve month cash basis Income and Expense Statement which covers
the period January 2012 - December 2012.

Should you have any questions related to enclosed information, please do not hesitate to
contact me at (212) 715-7231

Very truly yours,

Jeffrey McConney
SVP/ Controller

Enclosures

725 FIFTH AVENUE • NEW YORK, NY 10022 • (212) 832-2000 • FAX (212) 935-0141

CAPITALONE-00254441

CONFIDENTIAL

**40 WALL STREET**
**INCOME AND EXPENSE STATEMENT**

**CASH BASIS**

October 1, 2012 -
December 31, 2012

Total Actual

**Receipts**

| | |
|---|---:|
| STORAGE ROOM INCOME | 1,020 |
| RETAIL INCOME | 368,098 |
| OFFICE RENT INCOME FIXED | 6,439,293 |
| OPER EXP ESCALATION INCOM | 464,866 |
| LEASE CANCELLATION INCOME | 0 |
| RETRO OPERATING EXP ESCALATION | 40,043 |
| MANAGEMENT FEE INCOME | 0 |
| BRONZE INCOME | 360 |
| REAL ESTATE TAX INCOME | 252,095 |
| ELECTRIC INCOME | 174,127 |
| TELECOMMUNICATIONS SVC INCOME | 68,436 |
| BUILDING SERVICES INCOME | 500,150 |
| | 8,308,489 |

**Other Receipts**

| | |
|---|---:|
| OTHER INC-MISCELLANEOUS | 17,426 |
| OTHER INC-MISC INTEREST | 9,835 |
| OTHER INC-ADMIN FEES | 29,078 |
| OTHER INC-INT ON TENANT SEC | 2,367 |
| OTHER INC-R E TAX REFUND | 0 |
| | 58,708 |

| | |
|---|---:|
| **Total Receipts** | 8,367,197 |

**General Expenses**

| | |
|---|---:|
| PAYROLL | 29,438 |
| INSURANCE EXPENSE | (67) |
| INSURANCE CLAIMS | 3,972 |
| REAL ESTATE TAX EXPENSE - BID TAX | 98,093 |
| | 131,436 |

**Administrative Expenses**

| | |
|---|---:|
| INTEREST EXPENSE - OTHER | 6 |
| ADVERTISING & PROMOTION | 9,663 |
| COMPUTER PAYROLL EXPENSE | 834 |
| LEGAL EXPENSE | 44,745 |
| AUDITING | 0 |
| DUES & SUBSCRIPTIONS | 676 |
| OFFICE EXPENSE & SUPPLIES | 495 |
| STATIONERY/PRINTING/POSTAGE | 0 |
| TELEPHONE & TELEX | 7,975 |
| MANAGEMENT FEES AND EXPENSES | 25,000 |
| 32BJ TRAINING BENEFIT | 1,888 |
| 32 BJ ANNUITY BENEFIT | 6,981 |
| 32 BJ PENSION BENEFIT | 46,585 |
| 32BJ WELFARE BENEFIT | 149,689 |
| ELECTRIC SUB-METERING EXPENSES | 864 |
| BANK CHARGES | 69 |
| EMPLOYEE BENEFITS | (32) |
| 32BJ LEGAL FUND | 2,222 |
| LOCAL 94/LOCAL 6 TRAINING BENE | 1,029 |
| LOCAL 94/LOCAL 6 ANNUITY BEN | 17,144 |
| LOCAL 94/LOCAL 6 PENSION BENEF | 15,919 |
| LOCAL 94/LOCAL 6 SICKNESS BENE | 6,906 |
| LOCAL 94/LOCAL 6 WELFARE BENE | 35,267 |
| GROUND RENT EXPENSE | 375,000 |
| RENT EXPENSE | 174,436 |
| PROFESSIONAL FEES | 15,000 |
| | 938,361 |

**Operating Expenses**

| | |
|---|---:|
| SECURITY GUARDS | 146,601 |
| FUEL STEAM/GAS | 106,069 |
| WATER AND SEWER CHARGES | 23,840 |
| WALKIE TALKIES | 366 |
| ELECTRICITY USAGE EXPENSE | 316,583 |
| UNIFORM EXPENSE | 722 |
| CHRISTMAS EXPENSE | 0 |
| ENTERTAINMENT | 691 |
| MESSENGER & DELIVERY | 375 |
| TEMPORARY HELP | 715 |
| TRAVEL | 222 |
| FLOWERS | 1,633 |
| CLEANING | 0 |
| COMPUTER SERVICES | 3,997 |
| INVESTIGATION FEE EXPENSE | 0 |
| | 607,814 |

CAPITALONE-00254442

CONFIDENTIAL

**40 WALL STREET**
**INCOME AND EXPENSE STATEMENT**

**CASH BASIS**

October 1, 2012 -
December 31, 2012

Total Actual

**Repairs and Maintenance**

| | |
|---|---:|
| PAINTING SUPPLIES | 0 |
| HARDWARE SUPPLIES | 0 |
| REPAIRS MATERIALS & SUPPLIES | (13,709) |
| PLUMBING REPAIRS MATL & SUP | 3,337 |
| ELECTRIC REPAIRS & SUPPLIES | 4,529 |
| RUBBISH REMOVAL | 6,912 |
| ROOF REPAIRS | 0 |
| WINDOW WASHING | (3) |
| MARBLE MAINTENANCE;CONTRACT | 9,799 |
| IN/OUT METAL MAINT. CONTRACT | 8,601 |
| HVAC MAINTENANCE | 16,173 |
| LOCKS & DOORS REPAIR | 542 |
| FIRE & SECURITY SYSTEM | 14,996 |
| MARBLE MAINT/PAVER REPAIRS | 0 |
| METAL MAINTENANCE: REPAIRS | 0 |
| TIME RECORDER | 414 |
| ELEVATOR CONTRACT | 38,066 |
| | 0 |
| EXTERMINATING | 0 |
| SIGNS | 0 |
| MISCELLANEOUS REP. & MAINT. | 3,269 |
| LOCAL LAW 10/11 | 0 |
| ESCALATOR R&M | 0 |
| ELEVATOR REPAIRS | 0 |
| WINDOW REPAIRS | 0 |
| HVAC P/R, P/R TAXES & BENEFITS | 184,771 |
| BUILDING CLEANING P/R | 498,036 |
| EQUIPMENT RENTAL & EXPENSES | 2,010 |
| PAINTING AND DECORATING | 0 |
| SECURITY EQUIPMENT | 1,085 |
| | **776,830** |

**Other Taxes**

| | |
|---|---:|
| FEDERAL INCOME TAX | 6 |
| STATE FRANCHISE TAX | 25 |
| FICA EXPENSE | 48,678 |
| PAYROLL TAX EXPENSE-SUI | (133) |
| LICENSES AND PERMITS | 1,250 |
| MISCELLANEOUS OTHER TAXES | 250 |
| PAYROLL TAX EXPENSE-FUI | 0 |
| DISABILITY INSURANCE | 492 |
| WORKERS COMP INSURANCE-EXPENSE | 81,907 |
| NY METRO TAX ER | 378 |
| | **132,853** |

| | |
|---|---:|
| **Total Expenses and Disbursements** | **2,587,394** |

| | |
|---|---:|
| **Operating Cash Flow Before Debt Service, Escrow Deposits and Capital Disbursements)** | **6,779,803** |

**Debt Service**

| | |
|---|---:|
| ESC DEP-RE TAXES/INSURANCE | 1,978,543 |
| INTEREST ON MORTGAGE | 2,309,378 |
| | **4,287,921** |

**Capital Disbursements**

| | |
|---|---:|
| BUILDING IMPROVEMENTS | 2,492,152 |
| FURNITURE, FIXTURES & EQUIPMENT | 0 |
| LEASEHOLD IMPROVEMENTS | 206,648 |
| LEASING COMMISSIONS | 488,061 |
| | **3,186,861** |

| | |
|---|---:|
| **Excess Cash Flow (Deficit)** | **(1,693,979)** |

C:\486FILES\123R4D\123\40 Wall Street\Capital One Reports\2012\TRAILING 12 Dec 2012 BANK (2).xlsx

CAPITALONE-00254443

**40 WALL STREET**
**INCOME AND EXPENSE STATEMENT**
**CASH BASIS**

**12 Month Period Ended**
**31-Dec-12**

**Receipts**

| | |
|---|---|
| STORAGE ROOM INCOME | 4,080 |
| RETAIL INCOME | 1,515,959 |
| OFFICE RENT INCOME FIXED | 21,339,504 |
| OPER EXP ESCALATION INCOM | 1,123,946 |
| LEASE CANCELLATION INCOME | 93,445 |
| RETRO OPERATING EXP ESCALATION | 447,749 |
| MANAGEMENT FEE INCOME | 166,449 |
| BRONZE INCOME | 1,980 |
| REAL ESTATE TAX INCOME | 938,923 |
| ELECTRIC INCOME | 1,054,421 |
| TELECOMMUNICATIONS SVC INCOME | 222,319 |
| BUILDING SERVICES INCOME | 907,053 |
| | 27,990,028 |

**Other Receipts**

| | |
|---|---|
| OTHER INC-MISCELLANEOUS | 36,664 |
| OTHER INC-MISC INTEREST | 49,442 |
| OTHER INC-ADMIN FEES | 62,736 |
| OTHER INC-INT ON TENANT SEC | 10,668 |
| OTHER INC-R E TAX REFUND | 41,248 |
| | 190,749 |

**Total Receipts** | | 28,180,778 |

**General Expenses**

| | |
|---|---|
| PAYROLL | 100,779 |
| INSURANCE EXPENSES | 1,500 |
| INSURANCE C AMB | 25,442 |
| REAL ESTATE TAX EXPENSE - BID TAX | 194,340 |
| | 322,061 |

**Administrative Expenses**

| | |
|---|---|
| INTEREST EXPENSE - OTHER | 517 |
| ADVERTISING & PROMOTION | 67,790 |
| COMPUTER PAYROLL EXPENSE | 4,464 |
| LEGAL EXPENSE | 227,160 |
| AUDITING | 40,000 |
| DUES & SUBSCRIPTIONS | 2,285 |
| OFFICE EXPENSE & SUPPLIES | 5,690 |
| STATIONERY/PRINTING/POSTAGE | 1,937 |
| TELEPHONE & TELEX | 33,746 |
| MANAGEMENT FEES AND EXPENSES | 100,000 |
| 32BJ TRAINING BENEFIT | 6,353 |
| 32 BJ ANNUIT BENEFIT | 24,232 |
| 32 BJ PENSION BENEFIT | 163,155 |
| 32BJ WELFARE BENEFIT | 501,667 |
| ELECTRIC SUB-METERING EXPENSES | 29,918 |
| BANK CHARGES | 106 |
| EMPLOYEE BENEFITS | (143) |
| 32BJ LEGAL FUND | 7,477 |
| LOCAL 94/LOCAL 6 TRAINING BENE | 4,197 |
| LOCAL 94/LOCAL 6 ANNUITY BEN | 69,760 |
| LOCAL 94/LOCAL 6 PENSION BENEF | 64,764 |
| LOCAL 94/LOCAL 6 SICKNESS BENE | 25,734 |
| LOCAL 94/LOCAL 6 WELFARE BENE | 143,330 |
| GROUND RENT EXPENSE | 1,500,000 |
| RENT EXPENSE | 704,152 |
| PROFESSIONAL FEES | 139,249 |
| | 3,861,858 |

**Operating Expenses**

| | |
|---|---|
| SECURITY GUARDS | 682,286 |
| FUEL STEAM/GAS | 608,395 |
| WATER AND SEWER CHARGES | 167,253 |
| WAX HE TAXES | 908 |
| ELECTRICITY USAGE EXPENSE | 1,381,450 |
| UNIFORM EXPENSE | 6,701 |
| CHRISTMAS EXPENSE | 8,710 |
| ENTERTAINMENT | 818 |
| MESSENGER & DELIVERY | 896 |
| TEMPORARY HELP | 1,444 |
| TRAVEL | 258 |
| FLOWERS | 12,412 |
| CLEANING | 9,642 |
| COMPUTER SERVICES | 30,676 |
| INVESTIGATION FEE EXPENSE | 91 |
| | 2,946,340 |

C:\456FILES\123R4D1\23440 Wall Street\Capital One Reports\2012\TRAILING 12 Dec 2012 BANK (2).xlsx

CAPITALONE-00254444

CONFIDENTIAL

**40 WALL STREET**
**INCOME AND EXPENSE STATEMENT**
**CASH BASIS**

**12 Month Period Ended**
**31-Dec-12**

**Repairs and Maintenance**

| | |
|---|---|
| PAINTING SUPPLIES | 4,763 |
| HARDWARE SUPPLIES | 4,758 |
| REPAIRS MATERIALS & SUPPLIES | 14,667 |
| PLUMBING REPAIRS MATL & SUP | 39,606 |
| ELECTRIC REPAIRS & SUPPLIES | 21,646 |
| RUBBISH REMOVAL | 37,942 |
| ROOF REPAIRS | 167,233 |
| WINDOW WASHING | (3) |
| MARBLE MAINTENANCE-CONTRACT | 58,766 |
| IN/OUT METAL MAINT. CONTRACT | 51,607 |
| HVAC MAINTENANCE | 314,234 |
| LOCKS & DOORS REPAIR | 6,585 |
| FIRE & SECURITY SYSTEM | 59,666 |
| MARBLE MAINT/PAVER REPAIRS | 0 |
| METAL MAINTENANCE: REPAIRS | 0 |
| TIME RECORDER | 514 |
| ELEVATOR CONTRACT | 414,753 |
| CLEANING SUPPLIES | 448 |
| EXTERMINATING | 0 |
| SIGNS | 3,502 |
| MISCELLANEOUS REP  & MAINT. | 14,501 |
| LOCAL LAW 10/11 | 9,000 |
| ESCALATOR R&M | 1,450 |
| ELEVATOR REPAIRS | 28,541 |
| WINDOW REPAIRS | 0 |
| HVAC P/R, P/R TAXES & BENEFITS | 754,088 |
| BUILDING CLEANING P/R | 1,852,695 |
| EQUIPMENT RENTAL & EXPENSES | 8,903 |
| PAINTING AND DECORATING | 11,580 |
| SECURITY EQUIPMENT | 17,423 |
| | **3,898,097** |

**Other Taxes**

| | |
|---|---|
| FEDERAL INCOME TAX | 5 |
| STATE FRANCHISE TAX | 4,525 |
| FICA EXPENSE | 195,534 |
| PAYROLL TAX EXPENSE-SUI | 10,144 |
| LICENSE AND PERMITS | 19,884 |
| MISCELLANEOUS TAXES | 2,221 |
| PAYROLL TAX EXPENSE-FUI | 2,392 |
| DISABILITY INSURANCE | 3,491 |
| WORKERS COMP INSURANCE-EXPENSE | 94,899 |
| NY METRO TAX ER | 3,262 |
| | **338,359** |

| | |
|---|---|
| **Total Expenses and Disbursements** | **11,306,511** |

| | |
|---|---|
| **Operating Cash Flow Before Debt Service, Escrow Deposits and Capital Disbursements)** | **16,874,266** |

**Debt Service**

| | |
|---|---|
| ESC DEP-RE TAXES/INSURANCE | 8,885,982 |
| INTEREST ON MORTGAGE | 9,288,187 |
| | **18,174,169** |

**Capital Disbursements**

| | |
|---|---|
| BUILDING IMPROVEMENTS | 15,940,207 |
| FURNITURE, FIXTURES & EQUIPMENT | 184,531 |
| LEASEHOLD IMPROVEMENTS | 256,616 |
| LEASING COMMISSIONS | 3,309,616 |
| | **19,690,970** |

| | |
|---|---|
| **Excess Cash Flow (Deficit)** | **(20,990,873)** |

C:\486FILES\123R4D\123\40 Wall Street\Capital One Reports\2012\TRAILING 12 Dec 2012 BANK (2) xlsx

CAPITALONE-00254445

2013 RENT ROLL
(as of 01/09/13)

## OFFICE SPACE

| Unit No | Floor No | Square Feet | Tenant | Lease Terms | | | | Rit Tax Base Year | BYE Tax % | Operating Exc Base Year | Operating Exc % | Electric Inclusion | Security Deposit | Lease Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM 9 | 50TH | 9,248 | AMERICAN PRECIOUS METAL EXHAN | 03/17/12-07/31/22 | 07/17/12-07/16/16 | 342,176.00 | 28,514.67 | 37.00 | 342,176.00 | 11/12 | 0.79900 | 2012 | 0.86000 | METERED | 171,188.00 | TENANT PAYS 100% OF ELECTRICITY. 1 FIVE YEAR EXTENSION TERM OPTION AFTER 5 YEARS/ OPTION WITHIN THE FIRST 18 MOS OF LEASE TO EXPAND TO 49TH OR 51ST FLOORS (OR BOTH) IF IS SENT 1 YEAR FROM RENT COMMENCEMENT |
| | | | | | 07/17/16-07/16/19 | 369,920.00 | 30,826.67 | 40.00 | | | | | | | | |
| | | | | | 07/17/19-07/31/22 | 397,664.00 | 33,138.67 | 43.00 | | | | | | | | |
| COM 11 | 58TH | 7,461 | BAYTREE ASSOCIATES INC. | 11/28/95-04/30/12 | 01/01/08-04/30/02 | 244,512.00 | 20,376.00 | 32.77 | | 07/08 | 0.591 | 2007 | 0.703 | METERED | NONE | SETTLEMENT AGREEMENT OF 9,703.88 12/01/09-4/1/09 TO PAY OFF ARREARS. ALWAYS IN DEFAULT |
| | | 1ST AMENDMENT | 3/7/2012 | | 05/01/02-04/30/07 | 307,435.00 | 30,619.58 | 49.25 | | | | | | | | DEAL PENDING WHEREBY OWNER ISSUES PERSONAL GUARANTY IN ORDER TO EXTEND LEASE. |
| | | | | | 05/01/07-04/30/10 | 389,981.00 | 32,474.25 | 52.23 | | | | | | | | STIPULATION SIGNED 2/29/12. MR. GARDNER AGREES TO PAY $360,308.44 ARREARS IN FULL BY 12/31/12 |
| | | | | | 05/01/10-04/30/12 | 412,614.00 | 34,384.50 | 55.30 | | | | | | | | |
| | | | AMENDMENT | | 03/01/12-04/30/2015 | 382,050.00 | 31,837.50 | 51.21 | 382,050.00 | 2012/2012 | | 2012 | | | | |
| COM 15 | 48TH | 9,285 | BROKERAGE & MANAGEMENT CORP | 07/01/10-7/31/22 | 08/01/11-06/30/17 | 370,520.04 | 30,876.67 | 40.00 | 370,520.04 | 10/11 | 0.801 | 10/11 | 0.852 | METERED | 277,890.00 | 277,890.00 LANDLORD TI EXPENSE |
| | | | | | 07/01/17-06/30/22 | 396,309.04 | 33,192.42 | 43.00 | | | | | | | | |
| COM 46 | 27TH | 7,987 | BUREAU VAN DIJK | 01/26/11-09/30/18 | 05/28/11-12/25/13 | 263,571.00 | 21,964.25 | 33.00 | 263,571.00 | 10/11 | 0.591 | 2011 | 0.735 | METERED | 267,532.00 | |
| | | | | | 12/26/13-03/16/16 | 287,532.00 | 23,961.00 | 36.00 | | | | | | | | |
| | | | | | 03/27/16-09/30/18 | 311,493.00 | 25,957.75 | 39.00 | | | | | | | | |
| | 55TH | 9,248 | CENEGENICS LLC | 1 MONTH FREE | 0.00 | 0.00 | 0.00 | 0.00 | AVG 11/12 AND | 0.79900 | NONE | NONE | 30,056.00 | 925,992.00 | LC NORTHERN TRUST AUTO RENEW FINAL EXPIRATION 7/1/22 |
| | | * assumes rent 6/1/12 | 1ST YEAR | 314,650.00 | 26,221.33 | 34.00 | 167,329.00 * | 13-Dec | | | | | | | TI COST 108,664.00 |
| | | | 2ND YEAR | 460,090.00 | 38,341.58 | 49.82 | | | | | | | | | |
| | | APPROX. 12/01/12 | 3RD YEAR | 469,565.92 | 39,130.49 | 50.77 | | | | | | | | | |
| | | | 4TH YEAR | 478,610.32 | 39,884.19 | 51.75 | | | | | | | | | |
| | | | 5TH YEAR | 487,835.44 | 40,652.95 | 52.75 | | | | | | | | | |
| | | | 6TH YEAR | 497,245.24 | 41,437.10 | 53.77 | | | | | | | | | |
| | | | 7TH YEAR | 506,843.08 | 42,236.92 | 54.81 | | | | | | | | | |
| | | | 8TH YEAR | 517,274.16 | 43,106.51 | 55.93 | | | | | | | | | |
| | | | 9TH YEAR | 528,018.60 | 43,984.88 | 56.94 | | | | | | | | | |
| | | | 10TH YEAR | 538,503.96 | 44,733.66 | 58.05 | | | | | | | | | |
| COM 37 | 17TH | 4,706 | COASTAL TRADE SECURITIES | 03/06/12-02/28/17 | 06/05/12-06/04/14 | 141,180.00 | 11,765.00 | 30.00 | 141,180.00 | 11/13 | 0.40700 | 2012 | 0.433 | 15,294.50 | 70,590.00 | SECURITY TO BE REDUCED BY $11,765 AFTER EXP. OF 2ND YEAR OF TERM. NO EVENT SECURITY |
| | | | | | 06/05/14-06/30/17 | 155,298.00 | 12,941.50 | 33.00 | | | | | | | | TO BE LESS THAN $58.625 /ELECTRIC $3.25 PSF |
| COM 45 | 7TH-12TH | 198,236.00 | CONTINENTAL CASUALTY COMPANY | 09/05/96-03/31/14 | 03/01/99-02/28/02 | 4,781,712.00 | 398,476.00 | 24.00 | 6,375,016.00 | 01/02 | 17.235 | 1999 | 18.326 | METERED | | NONE ON FILE |
| | | | | | 03/01/02-02/28/06 | 6,279,896.92 | 435,063.91 | 26.50 | 76,387.48 * | | | | | | | * SUB LEASE RENT ENTERED INTO AGREEMENT 2/6VG3 ENDS SIMULANEOUSLY W/ COM 45 LEASE |
| | | | | | 03/01/05-02/28/09 | 5,976,983.92 | 464,588.80 | 28.00 | | | | | | | | SUB LEASE RENT FOR 11TH FL (WHICH WE LEASE TO HAKS ENGINEERING, 33,425 SQ.FT) |
| | | | | | 03/01/08-09/01/11 | 5,977,140.00 | 498,095.00 | 30.00 | | | | | | | | |
| | | | | | 10/01/14-03/31/14 | 6,375,015.96 | 531,301.33 | 32.00 | | | | | | | | |
| COM 77 | 16TH | 6,845 | CORE STAFFING SERVICES | 05/14/10-09/30/17 | 08/01/10-11/30/13 | 187,040.04 | 15,586.67 | 32.00 | 188,554.62 | 09/11 | 0.50560 | 2010 | 0.538 | METERED | 65,000.00 | LANDLORD TI 309,785.00 |
| | | | | | 12/01/13-09/30/17 | 205,575.04 | 17,131.25 | 35.17 | | | | | | | | |
| COM 47 | 3RD,12TH 14TH | 76,399 | COUNTRYWIDE INSURANCE COMPAN | 03/01/11-08/31/21 | 09/01/11-09/30/14 | 1,909,974.96 | 159,164.58 | 25.00 | 1,909,974.96 | 2011 | 5.19500 | 2011 | 6.98500 | METERED | 376,831.00 | TENANT'S PROPORTIONATE SHARE FOR RE TAX SHALL INCREASE TO 8.315% AS OF 4/01/2014. SQ.FT. TO INCREASE TO 108,341 4/1/14 |
| | | | | | 10/01/14-08/31/18 | 2,708,525.04 | 225,710.42 | 25.00 | | | | | | | | TENANTS PROPORTIONATE SHARE OFPESCOMFEE SHALL INCREASE TO 9.305% AS OF 4/01/2014 |
| | | | | | 09/01/19-08/31/21 | 2,978,377.52 | 248,251.46 | 27.50 | | | | | | | | TENANTS RENTED SQUARE FEET SHALL INCREASE TO 108,341 AS OF 4/01/14 |
| | | | | | | | | | | | | | | | | 12TH FL LANDLORD SHARE OF WORK COST SHALL BE 2,185,620.00 (1,527,580 TO BE USED ANYTIME 638,940 TO BE USED AFTER 4/1/14) TENANT IS USING THE FIRST ALLOTMENT AS RENT CREDIT OFFSETTING CHARGES 9/11 THROUGH 9/31/2012 BASE, RENT AND ADD'TL |
| COM | 40TH FL | 9,317 | CSA GROUP NY | LICENSE AGREEMENT | 12/16/12-02/25/13 | 12/1/12-02/25/13 | 100,749.00 | 33,580.00 | 43.25 | 57,150.00 | N/A | N/A | N/A | N/A | N/A | 33,580.00 | CASH DEPOSIT: ELECTRIC INCLUDED IN LICENSE FEE |
| | | | | MTM THEREAFTER | | | | | | | | | | | | |
| COM 74 | 42, 43 | 13,619 | DIRECT ACCESS PARTNERS | 12/17/09-12/31/19 | 06/25/10-02/28/15 | 449,427.00 | 37,452.25 | 33.00 | 449,427.00 | 2010 | 1.178 | 2010 | 1.253 | METERED | 337,070.00 | LC |
| | | | | | 03/01/15-12/31/19 | 490,284.00 | 40,857.00 | 36.00 | | | | | | | | |
| COM 66 | 21ST+ 22ND | 54,509 | DUANE READE | 10/01/12-03/31/28 | 04/01/13-06/31/13 | 942,126.02 * | 90,354.17 | | 933,187.53 | 11/12 | 4.714 | 2012 | 5.012 | METERED | NONE | REDUCTION IN FIRST 6 MOS IS A RENT CREDIT IN LIEU OF TI |
| | | | | | 06/01/13-02/28/17 | 1,444,260.00 | 120,354.17 | 26.50 | | | | | | | | |
| | | | | | 03/01/17-02/28/21 | 1,607,750.00 | 133,979.17 | 29.50 | | | | | | | | |
| | | | | | 03/01/21-03/31/28 | 1,825,750.00 | 152,145.83 | 33.50 | | | | | | | | |
| | | | | | 6 months free rent | | | | | | | | | | | |
| COM 51 | 25TH FL | 4,417 | EMAG SOLUTIONS LLC | 12/01/10-02/28/13 | 12/01/10-11/30/11 | 154,595.04 | 12,882.92 | 35.00 | 145,761.00 | 11/12 | 0.34200 | 2010 | 0.405 | 11,982.70 | 28,675.54 | |
| | | | | | 12/01/11-10/31/12 | 145,761.00 | 12,146.75 | 33.00 | | | | | | | | |
| | | | | | 11/01/11-02/28/13 | 145,761.00 | 12,146.75 | 33.00 | | | | | | | | |

CAPITALONE-00254446

STREET
2013 RENT ROLL
(as of 01/03/13)

## OFFICE SPACE

| Unit No. | Floor No. | Square Feet | Tenant | Lease Terms | *denotes expiring this year | | | R/E Tax Base Year | R/E Tax % | Operating Esc Base Year | Operating Esc % | ELECTRIC INCLUSION | Security Deposit | LEASE NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM 50 | 30TH FL | 8,313 | EUROCLEAR BANK SA | 02/21/08-07/31/18 | 07/21/08-07/31/11<br>08/01/11-07/31/14<br>08/01/14-07/31/18 | 457,215.00<br>473,841.00<br>490,497.50 | 38,101.25<br>39,486.75<br>40,872.25 | 55.00<br>57.00<br>59.00 | 473,841.00 | 05/08 | 0.71000 | 2008 | 0.76000 | METERED | 114,303.75 | |
| COM 00 | 33RD FL | 3,057 | FRANK XU LLP AND CATHAY INSTITUTE INC. | 01/17/13-12/31/19<br>pending rev.resume<br>Subs comp 1/17/13 | 3/17/13-12/31/13<br>01/01/14-12/31/14<br>01/01/15-12/31/15 | 106,995.00<br>110,204.85<br>113,510.99 | 8,916.25<br>9,183.74<br>9,459.25 | 35.00<br>36.05<br>37.13 | 84,550.55 | 12/13 | 0.02840 | N/A | N/A | 9,936.16 | 80,245.25 | CASH, AS LONG AS TENANT IS IN GOOD STANDING SECURITY CAN BE REDUCED BY $17,832.50 AFTER THE 3RD YEAR OF LEASE;$17832.50 AFTER THE 4TH YEAR OF LEASE AND $8,916.25 AFTE 5TH YEAR OF LEASE. |
| | | | | 2 MOS. FREE RENT<br>Assumes 3/17/12<br>rent start | 01/01/16-12/31/16<br>01/01/17-12/31/17<br>01/01/18-12/31/18<br>01/01/19-12/31/19 | 116,916.33<br>120,423.82<br>124,036.53<br>127,757.63 | 9,743.03<br>10,035.32<br>10,336.36<br>10,646.47 | 38.25<br>39.39<br>40.57<br>41.79 | | | | | | | | |
| COM 41 | 45TH FL | | FREEDOM HOLDINGS GROUP LLC<br>8,870 OLD SQ.FOOTAGE | 03/01/09-02/28/19 | 03/01/09-02/29/12<br>03/01/12-02/28/15<br>03/01/15-02/28/19 | 487,850.00<br>505,390.00<br>523,329.00 | 40,654.17<br>42,132.50<br>43,610.75 | 55.00<br>57.00<br>59.00 | | 08/09 | 0.76700 | 08/09 | 0.61000 | METERED | 281,609.00 | LETTER OF CREDIT<br>TENANT HAS SIGNED A FIRST AMENDMENT TO MOVE TO THE 33RD FLOOR (4,144.00)<br>SIGNED 3/28/12, WILL COMMENCE WHEN SPACE IS TURNED OVER TO TENANT AND THEY ARE VACATED CURRENT FLOOR. |
| | 33RD | 4,144 | *FREEDOM HOLDINGS GROUP LLC* | FIRST AMEND. SIGNED 3/28/12 | 03/01/12-3/28/15 | 236,208.00 | 19,684.00 | 57.00 | 236,208.00 | 08/09 | 0.369 | 08/09 | 0.391 | METERED | SAME | *Second Amendment (5/22/12) LL Cost approx 67K to be charged back to Tenant;Tenant will pay extra 22,991.77 July and August and has paid 21,236.46 in June;When work is done McLalenint will reconcile and any expenses under the 67K cap be credited to the tenants account* |
| | | | | 6/1/2012 substantial completion | 03/01/15-02/28/19 | 244,496.00 | 20,374.67 | 58.00 | | | | | | | | |
| | | | | Second Amendment signed 5/22/12 (see notes as to terms) | 03/01/15-02/28/19 | 244,496.00 | 20,374.67 | 59.00 | | | | | | | | |
| COM 32 | 5TH FL | 20,240.00 | GDS PUBLISHING INC | 09/24/09-09/30/16 | 12/23/09-02/29/13<br>03/01/13-09/30/16 | 647,580.08<br>688,180.04 | 53,573.34<br>57,348.67 | 37.00<br>34.00 | 681,412.70 | 10/11 | 1.75 | 2010 | 1.85 | METERED | 323,540.00 | LC HSBC AUTO RENEWAL NOT BEYOND 7/31/18;TO BE REDUCED BY 53,573 AFTER 12 MOS AND AN ADDITIONAL 53,573 AFTER 24 MONTHS NOT TO BE REDUCED LESS THAN 215,804.00 |
| COM 34 | 11TH FL | 34,875 | HAKS ENGINEERING & LAND SURVEYORS | 05/01/06-12/31/19 | 12/01/06-11/30/09<br>12/01/09-11/30/13<br>12/01/13-11/30/16<br>12/01/16-12/31/20 | 852,393.00<br>919,215.00<br>986,067.00<br>1,169,910.00 | 71,030.25<br>76,601.25<br>82,172.25<br>97,492.50 | 24.37<br>26.26<br>28.19<br>33.45 | 924,769.00 | 06/07 | 2.89200 | 2007 | 3.07500 | METERED | 246,519.75 | |
| COM 63 | 4TH FL | 10,675.00 | HAKS ENGINEERING & LAND SURVEYORS | 08/20/10-12/31/20 | 12/01/10-12/19/15<br>12/20/15-12/31/19 | 341,600.04<br>376,290.04 | 28,466.67<br>31,354.17 | 32.00<br>35.25 | 341,600.04 | 10/11 | 0.923 | 10 | 0.992 | METERED | 59,403.13 | |
| COM10 | Ent 37th<br>pat 36th | 12,134 | HALPERIN BATTAGLIA RAICHT, LLC | 01/17/13-03/31/23<br>suite comp 1/17/13<br>pending revised<br>resume<br>3 mos free | 04/01/13-03/31/18<br>04/01/18-03/31/23 | 467,159.00<br>533,561.00 | 38,929.92<br>41,963.42 | 38.50<br>41.50 | 329,806.96 | AVG 12/13 AND<br>13/14 | 1.050% | 2013 | 1.117% | METERED | 467,159.00 | LC - SIGNATURE BANK AUTO RENEW FINAL EXPIRATION 3/31/23<br>IN THE EVENT TENANT IB NOT A DEFAULT LC MIGHT BE REDUCED ON THE 3RD,4TH,5TH ANNIVERSARY BY 77,859.85; IN NO EVENT WILL SECURITY BE LESS THAN $233,579.22;NULL AND VOID IF TENANT DEFAULTS AT ANYTIME PRIOR TO 12/31/18<br>TENANT WILL PAY FOR LANDLORD TO FURNISH AND INSTALL INTERNAL STAIRCASE BEWTEEN 36TH AND 37TH FLOORSBY CERTIFIED CHECK UPON ACCEPTANCE OF LANDLORD BID;WILL ALSO BE RESPONSIBLE FOR COST OF REMOVAL UPON VACATING SPACE |
| COM 31 | 41ST FL | 8,676 | THE HILTON HOTELS CORP<br>ASSUMES EXTENSION | 07/01/03-08/30/13 | 07/01/04-06/30/06<br>07/01/06-06/30/09<br>07/01/09-06/30/13 | 292,974.00<br>310,730.04<br>319,596.00 | 24,414.50<br>25,894.17<br>26,634.00 | 33.00<br>36.00<br>36.00 | 319,596.00 | 02/03 | 0.76500 | 2003 | 0.617 | METERED | NONE | |
| COM 53 | 26TH FL | 28,912 | HURON CONSULTING SERVICES LLC | 09/10/11-07/31/22 | 07/11/12-07/10/17<br>07/11/17-07/31/22 | 777,924.00<br>866,360.00 | 64,827.00<br>72,030.00 | 27.00<br>30.00 | 777,924.00 | 11/12 | 2.49000 | 2012 | 2.85 | METERED | 380,794.00 | SECURITY WILL BE REDUCED BY $83,465.75 AT THE END OF THE 3RD,4TH AND 5TH YRS OF LEASE<br>LANDLORD II $1,735,720 (PAID $850K TO TENANT TO DATE) |
| COM 42 | 15TH FL | 16,209.00 | IBIS WORLD INC | 12/11/11-02/28/22 | 02/19/12-05/18/12<br>05/19/12-05/18/17<br>05/19/17-02/28/22 | 226,827.44<br>543,020.00<br>591,628.50 | 18,885.87<br>45,250.00<br>49,302.38 | 13.95<br>33.50<br>36.50 | 543,020.00 | 2011 | 1.402 | 2011 | 1.491 | METERED | 271,500.00 | UNION BANK LC / AUTO RENEWAL UNTIL 3/14/16<br>SECURITY TO BE REDUCED BY 45,250 AT THE END OF THE 3RD YR AND 4TH YEAR<br>BUT IN NO EVENT TO BE LESS THAN $181,000.00 |
| COM 62 | 34TH FL | 12,562 | ICF CONSULTING GROUP INC | 08/01/11-01/31/22 | 02/01/13-09/30/16<br>01/01/16-01/31/22 | 427,107.96<br>464,793.06 | 35,592.33<br>38,732.83 | 34.00<br>37.00 | 427,107.96 | 2011 | 1.98700 | 2011 | 1.13500 | METERED | 108,777.00 | |

CAPITALONE-00254447

**2013 RENT ROLL**
*(as of 01/09/12)*

## OFFICE SPACE

| Unit No | Floor No | Square Feet | Tenant | Lease Terms | | | | | R/E Tax Base Year | R/E Tax % | Operating Esc. Base Year | Operating Esc. % | Electric Inclusion | Security Deposit | Lease Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM 3 | 17TH FL | 4,808 | JASKIM INC. | 11/16/09-07/31/20 | 12/1/2009-11/30/19 (STORAGE SPACE) | 4,080.00 | 340.00 | | 4,080.00 | 2010 | 0.416 | 2010 | 0.442 | METERED | 193,526.50 | SECURITY TO BE REDUCED BY 32,254.75 END OF 2ND YEAR AND SAME AMT END OF 4TH YEAR NOT LESS THAN 129,019; EFFECTIVE 9/1/13 TENANT MAY CANCEL LEASE W/6X MOS NOTICE AND FEE OF 84,140.00 |
| | | | | | 03/01/13-08/31/15 | 168,270.96 | 14,022.33 | 35.00 | 168,270.96 | | | | | | | |
| | | | | | 09/01/15-07/31/20 | 182,704.00 | 15,225.33 | 38.00 | | | | | | | | |
| COM 61 | 17TH | 12,797 | JOHN CARRIS INVESTMENTS LLC | 08/12/11-03/31/22 | 3/12/12-02/25/17 | 422,301.00 | 35,191.75 | 33.00 | 387,106.25 | 11/12 | 1.16700 | 2011 | 1.177 | METERED | 527,575.25 | LC AT THE END OF THE 2ND YEAR AND 5TH YEAR THE SECURITY WILL BE REDUCED BY 105,575.25 (211,150.50) BUT IN NO EVENT WILL THE SECURITY BE LESS THAN 316,725.75 CURRENT LC CAN NOT BE EXTENDED BEYOND 04/30/21 |
| | | | | | 05/01/17-03/31/22 | 460,692.00 | 38,391.00 | 36.00 | | | | | | | | |
| | | | | | *FREE RENT* | | | | | | | | | | | |
| | | | | | 3/1/2013 | (35,191.75) | | | | | | | | | | |
| | | | | | 3/1/2014 | (35,191.75) | | | | | | | | | | |
| | | | | | 3/1/2015 | (35,191.75) | | | | | | | | | | |
| | | | | | (IF NOT IN DEFAULT) | | | | | | | | | | | |
| COM 37 | 30TH | 3,725 | LANE MC VICKER LLC | 08/01/11-08/31/17 | 10/01/11-07/31/14 | 128,618.00 | 10,718.00 | 34.50 | 128,618.00 | 11/12 | 0.32300 | 2011 | 0.34300 | METERED | 42,872.00 | SECURITY TO BE REDUCED BY 10,715 AFTER 9/30/13 IF TENANT NOT IN DEFAULT; IN NO EVENT LESS THAN 32,154 SHALL BE HELD AS SECURITY |
| | | | | | 08/01/14-08/31/17 | 139,800.00 | 11,650.00 | 37.50 | | | | | | | | |
| COM 16 | 33RD FL | 3,689 | LAW OFFICES OF EDWARD M. ROSENSTEEL | 02/15/12-06/30/17 | 08/01/12-06/30/17 | 118,048.00 | 9,837.33 | 32.00 | 118,048.00 | 12/13 | 0.319 | 2012 | 0.339 | 11,959.20 | 59,024.00 | |
| COM 25 | 23RD FL | 19,967 | LESLIE E. ROBERTSON ASSOCIATES | 04/05/12-02/29/26 *SUBS COMP 4/6/2012* | 10 MONTHS FREE RENT | | | | 494,153.25 | 2012 | 1.727 | 2012 | 1.836 | METERED | 269,554.50 | TENANT HAS DEPOSITED $275k W/ GEORGE ROSS ESCROW ACCOUNT TO COVER THE COST OF KNOWN EXTRAS; SECURITY TO BE REDUCED 44,925.75 3RD, 4TH AND 5TH YEARS IN NO EVENT LESS THAN 134,777.25 |
| | | | | | 02/05/13-02/05/18 | 539,109.00 | 44,925.75 | 27.00 | | | | | | | | |
| | | | | | 02/06/18-02/05/23 | 599,010.00 | 49,917.50 | 30.00 | | | | | | | | |
| | | | | | 02/06/23-02/29/26 | 608,894.50 | 66,741.21 | 33.50 | | | | | | | | |
| COM 40 | 36TH FL | 5,554 | MASSCOMM INC. d/b/a MASS COMMUNICATIONS | 11/15/12-04/30/23 *SIGNED 7/11/12* | 8 MOS FREE | 0.00 | 0.00 | 0.00 | 114,797.00 | 12/13 | 0.00481 | 2013 | 0.51100 | 18,055.52 | 91,541.00 | LC TO BE TENANT HAS NOT DEFAULTED AT ANY TIME BETWEEN 4/30/13 AND 4/30/18 THIS SECURITY AMOUNT WILL BE REDUCED BY (N$14,156.67 ON 4/30/18 AND $14,156.67 ON APRIL 30,2018. IN NO EVENT SHALL SECURITY BE LESS THAN $56,626.66 |
| | | | | | 05/15/13-05/14/15 | 183,281.68 | 15,273.60 | 33.00 | | | | | | | | |
| | | | | | 05/15/15-05/14/18 | 205,497.89 | 17,124.83 | 37.00 | | | | | | | | |
| COM 8 | 33RD | 2,825 | MURPHY & O'CONNELL | 01/01/06-04/00/14 | 04/01/06-06/30/06 | 60,000.00 | 5,000.00 | 23.76 | 68,286.00 | 06/09 | 0.14700 | 2006 | 0.15700 | METERED | 21,330.00 | LC EXPIRES 6/30/12 AUTO RENEW AMENDMENT REDUCED BASE RENT 8/1/11 |
| | | | | | 07/01/06-04/30/11 | 85,200.00 | 7,100.00 | 33.74 | | | | | | | | |
| | | | | | 05/01/11-04/30/14 | 68,286.00 | 5,685.00 | 27.04 | | | | | | | | |
| NEW | 26TH FL | 15,354 | NEWMAN MYERS KREINES GROSS HARRIS PC | 7/21/12-12/31/22 | 01/01/13-12/31/17 | 429,912.00 | 35,826.00 | 28.00 | 292,912.00 | 12/13 | 1.326 | 2012 | 1.412 | METERED | 322,434.00 | LC JP MORGAN CHASE 1 YEAR AUTO RENEW FINAL EXP 1/31/23; TO BE REDUCED BY 107,476 ON 1/1/18 TENANT HAS GIVEN LL A CHECK FOR $138,500.00 TO COVER THE ESTIMATED COST OF ADDITIONAL IF THE ADDITIONAL WORK IS LESS THAN 138k THE TENANT MAY UTILIZE THE EXCESS FOR FF&E AND ANY UNUSED BALANCE WILL BE RETURNED TO TENANT IF THE WORK IS IN EXCESS OF 138k TENANT MUST REIMBURSE LL |
| | | | | | 01/01/18-12/31/22 | 491,328.00 | 40,944.00 | 32.00 | | | | | | | | |
| | | | | | *$138k RENT ABATEMENT TO BE TAKEN IN 2013 (RECEIVED AS T1 REIMB 2012)* | | | | | | | | | | | |
| COM 1 | 38TH FL | 5,310 | NYG CAPITAL LLC | 01/13/10-08/30/15 | 08/08/10-08/30/15 | 180,540.00 | 15,045.00 | 34.00 | 180,545.00 | 2010 | 0.4563 | 2010 | 0.6884 | METERED | 135,405.00 | |
| COM 75 | 38TH FL | 2,886 | OAKWOOD ASSET MGMT LLC | 12/31/09-03/31/15 | 03/01/10-03/31/15 | 68,838.00 | 5,736.50 | 53.00 | 68,838.00 | 10 | 0.1805 | 10 | 0.1919 | METERED | 17,209.50 | |
| COM 5 | 26TH-29TH | 27,858 | OFFICE SPACE SOLUTIONS INC | 08/08/06-05/31/17 | 06/01/07-07/31/07 | 448,104.96 | 37,342.08 | 19.20 | 940,372.00 | 06/07 | 2.303 | 00/07 | 2.544 | METERED | 255,636.49 | PER LEASE ONE SECURITY DRAW DOWN OF 85,278.83 OCCURRED 7/10; TWO OTHERS REMAIN SAME AMOUNT 5/11 AND 5/12; SECURITY IN NO EVENT CAN BE LESS THAN 255,636.49 LETTER OF CREDIT |
| | | | | | 08/01/07-05/31/11 | 807,396.00 | 71,449.83 | 31.00 | | | | | | | | |
| | | | | | 06/01/11-05/31/14 | 940,372.00 | 78,364.33 | 34.00 | | | | | | | | |
| | | | | | 06/01/14-05/31/17 | 1,023,348.00 | 85,279.83 | 37.00 | | | | | | | | |
| COM 29 | 25TH | 6,100 | ORACLE AMERICA INC *ASSUMES EXTENSION* | 04/01/08-03/31/13 | 04/01/08-03/31/10 | 308,299.92 | 25,691.66 | 50.00 | 332,954.00 | 08/09 | 0.53 | 2008 | 0.56 | METERED | | f/k/a SUN MICROSYSTEMS |
| | | | | | 04/01/10-03/31/13 | 332,954.00 | 27,747.00 | 54.00 | | | | | | | | |
| COM 83 | 49TH | 9,263 | PUBLIC FINANCIAL MANAGEMENT INC | 7/13/12-12/31/22 | FIVE MONTHS FREE | | | | 370,520.00 | 11/13 | 0.8012 | 2012 | 0.852 | METERED | 277,890.00 | SUSQUEHANNA BANK LC 1 YR AUTO RENEWING LC CAN BE REDUCED 30,876.67 AT THE END OF YRS 1 AND 2 BUT SECURITY CAN NOT BE LESS THAN 182,200.00 |
| | | | | | 12/13/12-12/31/17 | 370,520.00 | 30,876.67 | 40.00 | | | | | | | | |
| | | | | | 12/13/17-12/31/22 | 389,046.00 | 32,420.50 | 42.00 | | | | | | | | |
| COM 78 | 31ST | 3,816 | PRODIGY NETWORK NY LLC | 01/06/12-01/31/22 | 01/06/12-01/04/17 | 126,569.92 | 10,548.86 | 35.00 | 126,569.92 | 11/12 | 0.313 | 2011 | 0.333 | 11,751.38 | 42,186.67 | |
| | | | | | 01/05/17-01/04/22 | 141,024.00 | 11,752.00 | 39.00 | | | | | | | | |
| COM 24 | 52ND | 9,246 | PXI INVESTMENT LTD | 08/00/23 | 3 MOS FREE RENT | 0.00 | 0.00 | 0.00 | 305,184.00 *(AVG OF 12/13 AND 13/14)* | 12/14 | 0.80% | 2013 | 0.85% | METERED | 203,459.00 | 105% SECURITY REDUCED BY 33,900.33 AFTER 77 MONTHS AND AGAIN AFTER 69 MONTHS AND AGAIN AFTER IN NO EVENT WILL SECURITY AMOUNT BE LESS THAN 203,459.00 THIS REDUCTION IS ONLY TO OCCUR IF TENANT HAS NOT EXCERSISED ITS SECOND RIGHT OF |
| | | | | | 09/01/13-01/31/14 | 406,912.00 | 33,909.33 | 44.00 | | | | | | | | |
| | | | | | 02/01/14-01/31/14 | 0.00 | 0.00 | 44.00 | | | | | | | | |
| | | | | | 02/01/14-12/31/14 | 406,912.00 | 33,909.33 | 44.00 | | | | | | | | |
| | | | | | 01/01/14-01/31/15 | 0.00 | 0.00 | 44.00 | | | | | | | | |
| | | | | | 02/01/15-01/31/17 | 406,912.00 | 33,909.33 | 44.00 | | | | | | | | |
| | | | | | 02/01/17-01/31/23 | 443,904.00 | 36,992.00 | 48.00 | | | | | | | | |

CONFIDENTIAL

CAPITALONE-00254448

2013 RENT ROLL
(as of 01/01/13)

## OFFICE SPACE

| Unit No | Floor No | Square Feet | Tenant | Lease Terms | (denotes expiring this year) Dates/Rent | | | RE Tax Base Year | RE Tax % | Operating Exp Base Year | Operating Exp % | ELECTRIC INCLUSION | Security Deposit | LEASE NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM 23 | 63RD | 3,416 | RCL ADVISORS | 05/01/07-04/30/17 | 05/01/07-09/31/10 | 174,216.00 | 14,518.00 | 51.00 | 184,464.00 | 2007 | 0.2955 | 2007 | 0.3142 | METERED | 148,034.00 | |
| | | | | | 01/01/10-12/31/13 | 164,464.00 | 15,372.00 | 54.00 | | | | | | | | |
| | | | | | 01/14/14-04/30/17 | 194,712.00 | 16,226.00 | 57.00 | | | | | | | | |
| COM 80 | 45TH | 9,372 | RG MICHAELS | 05/01/11-06/31/21 | 09/01/11-08/31/16 | 310,449.90 | 25,870.83 | 33.13 | 310,449.96 | 11/12 | 0.911 | 2011 | 0.902 | METERED | 77,912.50 | LC issued by JP Morgan Chase Bank |
| | | | | | 09/01/16-03/31/21 | 337,069.90 | 28,088.33 | 35.96 | | | | | | | | Expires 06/31/21; renew in one year increments starting 5/31/12 |
| COM 59 | 30TH | 5,433 | ROSABANCA & ASSOCIATES | 12/02/11-02/28/19 | 12/02/11-12/08/15 | 201,019.38 | 16,751.62 | 37.00 | 201,019.38 | 2010 | 0.469 | 2010 | 0.499 | 17,658.87 | 60,806.00 | LC FROM OLD SPACE/TO BE REVISED TO 100,510.50 |
| | | | | | 12/17/15-02/28/19 | 222,318.38 | 18,526.53 | 40.92 | | | | | | | | |
| COM 45 | 32ND | 3,450 | ROSEN GREENBERG BLAHA LLP | 01/01/10-02/28/15 | 02/01/10-12/31/10 | 10,925.00 | | 38.00 | 155,250.00 | 10/11 | 0.2954 | 2010 | 0.3173 | METERED | NONE | |
| | | | | | 1/1/2011 FREE MONTH | | | | | | | | | | |
| | | | | | 02/01/11-12/31/11 | 138,000.00 | 11,500.00 | 40.00 | | | | | | | | |
| | | | | | 01/01/12-12/31/12 | 144,900.00 | 12,075.00 | 42.00 | | | | | | | | |
| | | | | | 01/01/13-02/28/15 | 155,250.00 | 12,937.50 | 45.00 | | | | | | | | |
| COM 70 | 35TH | 8,256 | SOLOMON BLUM | 08/01/00-07/31/20 | 2/1/2000 STORAGE | 9,000.00 | 750.00 | | 9,000.00 | 10/11 | 0.717 | 2010 | 0.7023 | METERED | 69,512.00 | Was TENANT ESCROW ACCOUNT / G ROSS |
| | | | | | 2/01/01-01/31/04 | 314,943.96 | 26,245.33 | 38.00 | 243,114.63 | | | | | | | amendment in 2010 reduced psaf |
| | | | | | 02/01/04-12/31/08 | 331,520.04 | 27,626.67 | 40.00 | | | | | | | | |
| | | | | | 01/01/07-07/31/10 | 349,085.98 | 29,091.33 | 42.12 | | | | | | | | |
| | | | | | 08/01/10-07/31/15 | 265,215.98 | 22,101.33 | 32.00 | | | | | | | | |
| | | | | | 09/01/15-07/31/20 | 290,079.96 | 24,173.33 | 35.00 | | | | | | | | |
| | | | | | FREE RENT | | | | | | | | | | |
| | | | | | 8/11 | | (22,101.33) | | | | | | | | |
| | | | | | 8/12 | | (22,101.33) | | | | | | | | |
| | | | | | 8/13 | | (22,101.33) | | | | | | | | |
| | | | | | 8/14 | | (22,101.33) | | | | | | | | |
| | | | | | 8/15 | | (24,173.33) | | | | | | | | |
| | | | | | 8/16 | | (24,173.33) | | | | | | | | |
| COM 12 | 15TH | 12,966 | SS&C TECHNOLOGIES HOLDINGS INC. | 01/07/12-10/31/22 | 11/07/12-09/30/17 | 337,848.00 | 28,154.00 | 28.00 | 337,848.00 | 11/12 | 1.042 | 2011 | 1.189 | METERED | 112,616.00 | |
| | | | | | 10/07/17-10/31/22 | 388,112.00 | 32,176.00 | 32.00 | | | | | | | | |
| COM 35 | 5TH | 7,500 | STAR ALLIANCE GROUP LLC | 12/15/09-12/31/14 | 12/15/09-12/31/14 | 240,000.00 | 20,000.00 | 32.00 | 240,000.00 | 2010 | 0.649 | 2010 | 0.69 | METERED | 120,000.00 | STIPULATION AGREEMENT SIGNED 8/5/11. PAYS EXTRA 14,555.15 A MONTH UNTIL 177,061.74 (ARREARS BAL. AT 8/5/11) IS PAID OFF. PAID THAT STIP AS AGREED. CURRENTLY WORKING ON ANOTHER STIP AGREEMENT FOR NEW ARREARS |
| COM 39 | 27TH | 1,377 | TACHLEES INTERNATIONAL | 08/31/12-11/30/17 | 3 MONTHS FREE | 0.00 | 0.00 | 0.00 | 48,195.00 | 2012 | 0.12% | NONE | N/A | 4,151.00 | 12,048.75 | NO OPERATING OR MFEE INCREASES PER LEASE. |
| | | | | | 12/01/12-11/30/13 | 48,195.00 | 4,019.75 | 35.00 | | | | | | | | |
| | | | | | 12/01/13-11/30/14 | 49,369.87 | 4,116.69 | 35.87 | | | | | | | | |
| | | | | | 12/01/14-11/30/15 | 50,524.87 | 4,219.57 | 36.77 | | | | | | | | |
| | | | | | 12/01/15-11/30/16 | 51,900.74 | 4,325.06 | 37.68 | | | | | | | | |
| | | | | | 12/01/16-11/30/17 | 53,194.26 | 4,433.19 | 38.63 | | | | | | | | |
| COM 14 | 43RD & 44TH | 14,497 | TELSTRA INC | 10/01/10-9/30/20 | 10/01/10-09/30/15 | 536,388.96 | 44,699.08 | 37.00 | 536,388.96 | 10/11 | 1.254 | 2010 | 1.333 | METERED | 536,389.00 | LC AUTO RENEW EXP 11/30/15 |
| | | | | | 10/01/15-09/30/20 | 579,879.90 | 48,323.33 | 40.00 | | | | | | | | |
| COM 78 | 30TH | 4,384 | THE CLANCY LAW FIRM PC | 02/23/10-02/28/17 | 05/01/10-08/31/13 | 149,055.96 | 12,421.33 | 34.00 | 154,902.28 | 09/10 | 0.379 | 2010 | 0.403 | METERED | 24,852.82 | SECURITY WAS TO BE 74,528.00NEVER SENT THE 1/2 THEY OWE. ONE LC IN THE AMOUNT OF 37,263.99 G ROSS ; 24,852.82 IS IN CASH STIPULATION SIGNED AUGUST 2012; 4 PAYMENTS OF 28,341.02 (10/15/12,1/15/13,4/15/13 AND 7/15/13 MUST PAY CURRENT MONTH ON THE 15TH. |
| | | | | | 09/01/13-02/28/17 | 168,564.92 | 13,882.91 | 38.00 | | | | | | | | |
| COM 4 | 24TH | 26,427 | THE GLOBAL ALLIANCE FOR TB DRUG DEV | 09/13/07-12/31/17 | 01/13/08-12/31/10 | 1,114,567.50 | 92,880.79 | 39.31 | 1,142,785.04 | 07/08 | 2.03 | 2008 | 2.10 | METERED | 852,338.75 | LC AUTO RENEWAL NOT BEYOND 12/31/17 |
| | | | | | 1/01/11-12/31/13 | 1,149,785.04 | 95,815.42 | 40.45 | | | | | | | | |
| | | | | | 01/01/14-12/31/17 | 1,184,982.50 | 98,748.54 | 41.69 | | | | | | | | |
| COM 92 | 6TH | 36,921 | THE HARRY FOX AGENCY INC | 05/23/12-05/31/26 | ONE YEAR FREE RENT | 996,867.00 | 0.00 | 27.00 | 902,943.67 | 12/13 | 3.1938 | 2012 | 3.396 | METERED | 747,650.25 | LC W/ SIGNATURE BANK. AUTO RENEW 1 YEAR INCREMENTS UNTIL 6/1/26 AFTER 5TH YEAR CAN BE REDUCED TO 498,433.50 |
| | | | | | 05/23/13-05/22/17 | | 83,072.25 | | | | | | | | |
| | | | | | 05/23/17-05/22/22 | 1,107,630.00 | 92,302.50 | 30.00 | | | | | | | | |
| | | | | | 05/23/22-05/31/26 | 1,218,393.00 | 101,532.75 | 33.00 | | | | | | | | |
| COM 52 | 25TH | 4,269 | THE JUDGE GROUP | 05/09/08-05/31/18 | 10/01/08-09/30/11 | 217,719.00 | 18,143.75 | 51.00 | 230,526.00 | 2008 | 0.398 | 2008 | 0.393 | METERED | 51,111.00 | LC AUTO RENEW |
| | | | | | 10/01/11-09/30/15 | 230,526.00 | 19,210.50 | 54.00 | | | | | | | | |
| | | | | | 10/01/15-05/31/18 | 243,333.00 | 20,277.75 | 57.00 | | | | | | | | |

CONFIDENTIAL

CAPITALONE-00254449

2013 RENT ROLL
(as of 01/08/13)

## OFFICE SPACE

*denotes expiring this year*

| Unit No. | Floor No. | Square Feet | Tenant | Lease Terms | | | | R/E Tax Base Year | R/E Tax % | Operating Esc. Base Year | Operating Esc. % | ELECTRIC INCLUSION | Security Deposit | LEASE NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM 48 | 17TH | 6,964 | TOPEKA CAPITAL MARKETS INC EXP. SPACE (2,069) SUBS COMP April 6, 2012 | 02/11/11-05/30/21 | 6/12/11-06/30/12 07/08/12-06/11/16 06/12/16-06/30/21 | 101,995.00 229,912.00 258,784.00 | 13,490.42 19,191.00 20,692.00 | 20.27 28.77 31.35 | 229,912.00 | 10/11 | 0.424 0.602 | 11 | 0.451 0.541 | METERED | 118,995.00 | LC AUTO RENEW THRU 11/11/20 EXP. SPACE COMMENCEMENT 7/5/12(PENDING G.ROSS LETTER) EXP. SPACE RENT STEPS/% FOR RE TAX AND OP ESC KICK IN 7/5/12 (per amendment 30 days after subs comp) |
| COM 7 | 32ND | 2,682 | UBS FINANCIAL SERVICES LLC | 03/01/99-02/28/14 | 03/01/99-02/31/02 03/01/02-06/01/04 07/01/04-02/09/09 03/01/09-02/28/14 | 83,142.00 88,506.00 107,280.00 96,552.00 | 6,928.50 7,375.50 8,940.00 8,046.00 | 31.00 33.00 40.00 36.00 | 96,552.00 | 04/05 | 0.232 | 2004 | 0.247 | METERED | NONE | PER THIRD LEASE MOD NO RE TAX/ OPERATING ESC/ MFEE ESC |
| COM 64 | 17TH | 3,412 | UNITED ADVISORS LLC | 06/01/11-05/31/16 | 06/01/11-05/31/16 | 114,302.04 | 9,525.17 | 33.50 | 114,302.04 | 11.12 | 0.295 | 2011 | 0.314 | METERED | 47,625.84 | |
| COM 79 | 18 & 19 | 61,082 | WEIDLINGER ASSOCIATES INC | 10/31/11-01/31/18 | 02/01/13-01/31/18 02/01/11-01/31/23 02/01/23-01/31/13 02/01/23-01/31/33 | 1,649,214.00 1,832,460.00 2,015,706.00 2,260,034.04 | 137,434.50 152,705.00 167,975.50 188,336.17 | 27.00 30.00 33.00 37.00 | 1,511,779.50 | 2013 | 5.284 | 2013 | 5.612 | METERED | 824,607.00 | TI CONTRIBUTION $3,970,330.00 LC $1,918,606.17 to be paid July 16, 2012 |
| | | | | RENT ABATEMENTS | 14-Feb 15-Feb 16-Feb 17-Feb 18-Feb | (123,744.00) (123,744.00) (123,744.00) (123,744.00) (123,744.00) | | | | | | | | | |
| COM 72 | 18TH FL | 20,586 | XO COMMUNICATIONS LLC | 03/05/10-03/31/07 | 01/04/11-12/31/14 01/01/15-12/31/18 01/01/19-03/31/22 | 617,580.00 679,338.00 741,098.00 | 51,465.00 56,611.50 61,758.00 | 30.00 33.00 36.00 | 898,115.00 | 2010 | 1.751 | 2010 | 1.864 | METERED | 257,325.00 | LC BANK OF AMERICA RENEW THRU 2/29/12 LC CAN BE REDUCED BY 102,930 AT THE END OF THE 1ST AND 2ND YEAR AND 64,465 AT THE END OF THE THIRD YEAR LC NOT TO BE LESS THAN 202,860.00 LC DECREASED BY 205,890.00 7/9/12 IN ACCORDANCE WITH THEIR LEASE. |
| | | | | RENT ABATEMENTS | 1/1/2012 1/1/2013 12/30/2014 1/1/2015 | (51,465.00) (51,465.00) (51,465.00) (36,611.50) | | | | | | | | | |
| COM 17 | 5TH FL | 6,288 | XCITEX SOLUTIONS PLUS LLC | 10/25/10-10/01/20 | 02/25/11-10/31/16 11/11/16-10/31/20 | 201,216.00 220,080.00 | 16,768.00 18,340.00 | 32.00 35.00 | 201,216.00 | 10/11 | 0.5439 | 10/11 | 0.5784 | METERED | 67,072.00 | LC TO BE REDUCED IN THREE INCREMENTS BY 16,768 NOT TO BE LESS THAN 50,304 TWO REDUCTIONS ALREADY TAKEN: NEXT 5/13 |
| COM 38 | 27TH FL | 3,054 | ZAREMBA BROWNELL & BROWN PLLC | 01/27/10-01/31/25 | 11/28/10-11/30/15 12/01/15-11/30/20 12/01/20-01/31/25 | 136,390.00 150,292.00 162,114.00 | 11,532.50 12,521.00 13,509.50 | 36.00 38.00 41.00 | 136,390.00 | 2010 | 0.342 | 2010 | 0.364 | METERED | 89,195.00 | LC AUTO RENEW TO 11/30/24; CAN REDUCE AT END OF YEAR 3 BY 11,532.50 AND 11,532.50 AT END OF YEAR 5 BUT LC CAN NOT BE LESS THAN 46,130.00 |
| COM 81 | 27TH FL | 2,109 | ZAREMBA BROWNELL & BROWN PLLC | 06/16/11-01/31/25 | 04/18/12-04/30/17 05/01/17-04/30/22 05/01/22-01/31/25 | 73,710.00 80,026.00 86,348.00 | 6,142.50 6,669.00 7,195.50 | 35.00 38.00 41.00 | 73,710.00 | 11 | 0.182 | 2011 | 0.194 | METERED | 36,855.00 | LC CAN BE REDUCED BY 6,142.50 AT THE END OF THE THIRD YEAR AND 5TH YEAR. SECURITY CAN NOT BE LESS THAN 24,750 |

TOTAL OCCUPIED OFFICE SPACE SQ.FT: 905,102
TOTAL VACANT OFFICE SQ.FT: 209,933
TOTAL OFFICE SQ.FT: 1,115,035

PART OF COM 45 PER AGRMNT/SUB LEASED BY 40 WALL TO HAKS AT 33,428: (33,900.00)

GRAND TOTAL OFFICE RENT 2013: 26,389,519.33

130,829.91 11,052,307.04

CAPITALONE-00254450

48 WALL STREET LLC
2013 RENT ROLL

## RETAIL SPACE

| Unit No. | Floor No. | Square Feet | Tenant | Lease Terms | | | | 2013 ANNUALIZED | R/E Tax Base Year | R/E Tax % | Operating Esc. Base Year | Operating Esc. % | ELECTRIC INCLUSION | Security Deposit | LEASE NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COM 10 | B/MEZZ | 23,310 | DUANE READE | 07/09/11-01/06/22 | 01/07/12-01/06/17 | 1,425,000.00 | 118,750.00 | 61.13 | 1,425,000.00 | 10/11 | 2.16000 | N/A | N/A | METERED | NONE | 100% METERED(NO LL % INCREASE) |
| | | | | | 1/07/17-01/06/22 | 1,567,500.00 | 130,625.00 | 67.25 | | | | | | | | |
| | | | | | 01/07/22-01/06/27 | 1,724,250.00 | 143,687.50 | 73.97 | | | | | | | | |
| | | | | | 01/07/27-01/01/32 | 1,896,675.00 | 158,056.25 | 81.37 | | | | | | | | |
| COM 20 | MAIN | 800 | KENJO | 02/01/98-08/31/12 | 09/01/98-08/31/99 | 65,000.04 | 5,416.67 | 106.33 | 104,060.00 | 97/98 | 0.05200 | N/A | N/A | METERED | 25,000.00 | AS PER 3RD AMENDMENT; 4/1/10-8/31/13 (41 MONTHS) REPAY 292.69 A MONTH FOR $12,000.00 DEFERRAL) |
| | | | | | 09/01/99-08/31/01 | 75,000.00 | 6,250.00 | 125.00 | | | | | | | | LC extended through June 30, 2013 |
| | | | | | 09/01/01-01/31/03 | 80,625.00 | 6,718.75 | 134.38 | | | | | | | | |
| | | | | | 02/01/03-05/31/04 | 56,625.00 | 4,718.75 | 94.38 | | | | | | | | |
| | | | | | 09/01/04-08/31/07 | 86,000.04 | 7,166.67 | 143.33 | | | | | | | | |
| | | | | | 09/01/07-08/31/10 | 94,599.96 | 7,883.33 | 157.67 | | | | | | | | |
| | | | | ASSUMES EXT. | 09/01/10-08/31/13 | 104,060.04 | 8,671.67 | 173.43 | | | | | | | | |
| COM 25 | BSMT | 1900 | SAV CAFE | 04/01/87-12/31/08 | 03/01/58-09/30/00 | 48,000.00 | 4,000.00 | 25.26 | 12,000.00 | 97/98 | 0.164 | N/A | N/A | METERED | NONE | MONTH TO MONTH (VERBAL) AS PER GEORGE ROSS |
| | | | | | 10/01/00-01/31/01 | 60,000.00 | 5,000.00 | 31.58 | | | | | | | | |
| | | | | | 02/01/01-09/30/04 | 42,000.00 | 3,500.00 | 22.11 | | | | | | | | |
| | | | | | 10/01/04-03/31/08 | 72,000.00 | 6,000.00 | 37.89 | | | | | | | | |
| | | | | | 04/01/08-CURRENT | 12,000.00 | 1,000.00 | 6.32 | | | | | | | | |
| NEWSTAND | | 791 | VACANT | | | | | | | | | | | | | |
| 2M WEST | | 9,447 | VACANT | | | | | | | | | | | | | |
| RESTAURANT | | 14,500 | VACANT | | | | | | | | | | | | | |

## RETAIL SQ. FOOTAGE

| | |
|---|---|
| Occupied Sq. Ft.¹ | 25,810.00 |
| Vacant Sq. Ft. | 24,735.00 |
| Total Sq. Ft.: | 50,545.00 |

2013 TOTAL BASE RENT:    1,541,060.00

CONFIDENTIAL

CAPITALONE-00254451

2013 RENT ROLL

| Square Feet | Tenant | Lease Terms | | Monthly | 2013 ANNUALIZED | R/E Tax Base Year | R/E Tax % | Operating Esc. Base Year | Operating Esc. % | ELECTRIC INCLUDED | Security Deposit | LEASE NOTES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| N/A | AT&T GRE LEASE ADMINISTRATION | 02/01/00-01/31/15 | | | 15,000.00 | | | | | | | |
| | | | 05/01/00-01/31/04 | 9,000.00 | 750.00 | N/A | N/A | N/A | N/A | METERED | NONE | THE THIRD RENEWAL TERM FEE WILL BE 1,500 A MONTH; THE THIRD RENEWAL PERIOD OPTION WOULD |
| | | | 02/01/05-09/30/10 | 12,000.00 | 1,000.00 | | | | | | | START 2/1/15-01/31/20 |
| | | | 10/01/10-01/31/15 | 15,000.00 | 1,250.00 | | | | | | | |
| N/A | COGENT COMMUNICATIONS INC. | 03/01/03-02/28/12 | 03/01/10-02/28/12 | 18,615.84 | 1,551.32 | 19,061.24 | N/A | N/A | N/A | N/A | NONE | NONE | |
| | 1ST AMENDMENT | 03/01/12-02/28/22 | 03/01/12-02/28/13 | 18,615.84 | 1,551.32 | | | | | | | |
| | | | 03/01/13-02/28/14 | 19,174.32 | 1,597.86 | | | | | | | |
| | | | 03/01/14-02/28/15 | 19,749.54 | 1,645.80 | | | | | | | |
| | | | 03/01/15-02/28/16 | 20,342.03 | 1,695.17 | | | | | | | |
| | | | 03/01/16-02/28/17 | 20,952.29 | 1,746.02 | | | | | | | |
| | | | 03/01/17-02/28/18 | 21,580.86 | 1,798.41 | | | | | | | |
| | | | 03/01/18-02/28/19 | 22,228.29 | 1,852.36 | | | | | | | |
| | | | 03/01/19-02/28/20 | 22,895.14 | 1,907.93 | | | | | | | |
| N/A | CYPRESS COMMUNICATIONS INC. | 03/01/97 - CURRENT | 07/01/10-CURRENT | 10,103.64 | 841.97 | 10,103.64 | N/A | N/A | N/A | N/A | METERED | NONE | MTM PER GEORGE ROSS |
| N/A | MCI WORLDCOM LEASE ADMIN | 04/21/97-04/30/07 | 04/01/06-04/30/02 | 7,200.00 | 600.00 | 9,000.00 | N/A | N/A | N/A | N/A | METERED | NONE | MTM PER GEORGE ROSS |
| | | | 05/01/02-CURRENT | 9,000.00 | 750.00 | | | | | | | |
| N/A | METRO PCS NEW YORK LLC | 09/05/08-09/14/13 | 09/05/08-09/04/09 | 50,000.00 | 4,166.67 | 56,275.44 | N/A | N/A | N/A | N/A | METERED | NONE | |
| | | | 09/05/09-09/04/10 | 51,500.00 | 4,291.67 | | | | | | | |
| | | | 09/05/10-09/04/11 | 53,045.00 | 4,420.42 | | | | | | | |
| | | | 09/05/11-09/04/12 | 54,636.35 | 4,553.03 | | | | | | | |
| | ASSUMES EXT. | | 09/05/12-09/04/13 | 56,275.44 | 4,689.62 | | | | | | | |
| N/A | NORTH AMERICAN MOBILE | 10/23/10-12/31/19 | 12/1/2010 | 24,000.00 | 2,000.00 | 28,486.12 | N/A | N/A | N/A | N/A | | | |
| | | | 2/1/2011 | 24,000.00 | 2,000.00 | | | | | | | |
| | | | 11/1/2012 | 27,675.00 | 2,306.25 | | | | | | | |
| | | | 11/1/2013 | 28,368.92 | 2,363.01 | | | | | | | |
| | | | 11/1/2014 | 29,078.12 | 2,423.01 | | | | | | | |
| | | | 11/1/2015 | 29,803.08 | 2,483.59 | | | | | | | |
| | | | 11/1/2017 | 30,548.16 | 2,545.68 | | | | | | | |
| | | | 11/1/2018 | 31,311.64 | 2,609.32 | | | | | | | |
| | | | 11/1/2019 | 32,094.60 | 2,674.55 | | | | | | | |
| | | | 11/1/2020 | 32,896.92 | 2,741.41 | | | | | | | |
| | | | 11/1/2022 | 33,719.40 | 2,809.95 | | | | | | | |
| | | | 11/1/2023 | 34,552.40 | 2,880.20 | | | | | | | |
| | | | 11/1/2024 | 35,426.40 | 2,952.20 | | | | | | | |
| | | | 11/1/2025 | 36,312.12 | 3,026.01 | | | | | | | |
| | | | 11/1/2027 | 37,219.92 | 3,101.66 | | | | | | | |
| | | | 11/1/2028 | 38,150.40 | 3,179.20 | | | | | | | |
| | | | 11/1/2029 | 39,104.10 | 3,258.68 | | | | | | | |
| N/A | SPRINT NATIONAL LEASE MGMT | 02/01/01-01/31/16 | 2/1/2001 | 21,600.00 | 1,800.00 | 46,911.12 | N/A | N/A | N/A | N/A | METERED | NONE | 4% ABOVE PRIOR YEAR ANNUAL |
| | | | 2/1/2002 | 22,464.00 | 1,872.00 | | | | | | | |
| | | | 2/1/2003 | 23,362.56 | 1,946.88 | | | | | | | |
| | | | 2/1/2004 | 24,297.00 | 2,024.76 | | | | | | | |
| | | | 2/1/2005 | 25,268.88 | 2,105.74 | | | | | | | |
| | | | 2/1/2006 | 26,279.76 | 2,189.98 | | | | | | | |
| | | | 2/1/2007 | 27,330.96 | 2,277.58 | | | | | | | |
| | | | 2/1/2008 | 28,424.28 | 2,368.69 | | | | | | | |
| | | | 2/1/2011 | 31,970.04 | 2,664.42 | | | | | | | |
| | | | 2/1/2012 | 33,251.88 | 2,770.99 | | | | | | | |
| | | | 11/1/2012 | 45,251.88 | 3,770.99 | | | | | | | added 4 antennas 11/1/12 |
| | | | 2/1/2013 | 47,061.96 | 3,921.83 | | | | | | | |
| | | | 2/1/2014 | 48,944.44 | 4,078.70 | | | | | | | |
| | | | 2/1/2015 | 50,902.22 | 4,241.85 | | | | | | | |
| N/A | TIME WARNER AxS OF NY | 04/01/97- | 9/1/1997 | 6,000.00 | 500.00 | 7,500.00 | N/A | N/A | N/A | N/A | METERED | N/A | MTM G.ROSS IS AWARE |
| | | | 4/1/2002 | 7,500.00 | 625.00 | | | | | | | |
| N/A | XO COMMUNICATIONS | 11/01/90-01/31/15 | 11/01/09-03/31/10 | 9,000.00 | 750.00 | 15,000.00 | N/A | N/A | N/A | N/A | METERED | N/A | THIRD EXTENSION OPTION IF WRITTEN NOTICE IS GIVEN BY 2/1/14 |
| | | | 04/01/10-01/31/15 | 15,000.00 | 1,250.00 | | | | | | | FOR AN ADDITIONAL TERM COMMENCING 2/1/15-1/31/2020 AT THE RATE OF $18,000.00 PER YEAR |
| N/A | YIPES ENTERPRISES SERVICES INC | 09/01/03-08/31/10 | 09/03/03-08/31/04 | 6,000.00 | 500.00 | 9,012.40 | N/A | N/A | N/A | N/A | METERED | N/A | MTM W/ 5% BUMPS EACH SEPTEMBER |
| | | | 09/01/04-08/31/05 | 6,300.00 | 525.00 | | | | | | | |
| | | | 09/01/05-08/31/06 | 6,615.00 | 551.25 | | | | | | | |
| | | | 09/01/06-08/31/07 | 6,945.72 | 578.81 | | | | | | | |
| | | | 09/01/07-08/31/08 | 7,293.00 | 607.75 | | | | | | | |
| | | | 09/01/08-08/31/09 | 7,657.65 | 638.14 | | | | | | | |
| | | | 09/01/09-08/31/10 | 8,040.53 | 670.04 | | | | | | | |
| | | | 09/01/10-08/31/11 | 8,442.56 | 703.55 | | | | | | | |
| | | | 09/01/11-08/31/12 | 8,864.69 | 738.72 | | | | | | | |
| | | | 09/01/12-08/31/13 | 9,307.92 | 775.66 | | | | | | | |

GRAND TOTAL 2013 T/S/F.COM    216,308.96

CAPITALONE-00254452

# TAB D

**From:**        Jeff McConney <jmcconney@trumporg.com>
**Sent:**        Thursday, December 10, 2015 12:25 PM
**To:**          Dave Guerrero (dave.guerrero@db.com)
**Cc:**          Oberlies, Patrick (Patrick.Oberlies@WeiserMazars.com)
**Subject:**     FW: Confirms Needed
**Attachments:** Deutsche Bank Loan Confirmation.pdf

Hi Dave,

It was good talking to you again.

Attached is a copy of the mortgage confirm that our accounting firms needs completed.  Can you please ask whoever completes it to send it directly to Patrick Oberlies, copied on this email?

The f/s are due to DB by 12/31 so if you can expedite this I'd appreciate it.

Thanks
Jeff


Jeffrey S. McConney
Senior Vice President/Controller
725 Fifth Avenue | New York, NY | 10022
p. 212.715.7231 | f. 212.832.5396
jmcconney@trumporg.com | Trump.com



-----Original Message-----
From: Oberlies, Patrick [mailto:Patrick.Oberlies@WeiserMazars.com]
Sent: Thursday, December 10, 2015 10:55 AM
To: Jeff McConney <jmcconney@trumporg.com>
Cc: Bender, Donald <Donald.Bender@WeiserMazars.com>; Schreiber, Christopher
<Christopher.Schreiber@WeiserMazars.com>; Stepnowski, Kevin <Kevin.Stepnowski@WeiserMazars.com>
Subject: Confirms Needed

Hi Jeff,

See attached.  Also need the insurance schedule from Aon used as a confirmation.



Patrick Oberlies, CPA | Senior Accountant, Real Estate Group



WeiserMazars LLP

1

DB-NYAG-022368

60 Crossways Park Dr. West
Woodbury, NY  11797
(P) 516-620-8741
(Email) patrick.oberlies@weisermazars.com www.weisermazars.com

-----------------------------
CONFIDENTIALITY NOTICE: The information contained in this communication may be privileged, confidential and protected from use and disclosure. If you are not the intended recipient, or responsible for delivering this message to the intended recipient, you are hereby notified that any review, disclosure, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by replying to the message and deleting it from your computer. Thank you for your cooperation. WeiserMazars LLP Please consider the environment before printing this document
-----------------------------

This e-mail message, and any attachments to it, are for the sole use of the intended recipients, and may contain confidential and privileged information.  Any unauthorized review, use, disclosure or distribution of this email message or its attachments is prohibited.  If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, while the company uses virus protection, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

FOIL CONFIDENTIAL TREATMENT REQUESTED                                                       DB-NYAG-022369

**TRUMP OLD POST OFFICE LLC**
**C/O THE TRUMP ORGANIZATION**
**725 FIFTH AVENUE**
**NEW YORK, NEW YORK 10022**

November 17, 2015

Deutsche Bank
345 Park Avenue – 14th Floor
New York, NY 10154
Attn: Emily S. Schroeder

Our auditors, WeiserMazars LLP, are now performing their audit of our financial statements. Please furnish directly to them the following information concerning Trump Old Post Office LLC's indebtedness to you as of August 31, 2015.

1. Unpaid principal balance
2. Interest rate and applicable fees payable under loan agreement
3. Terms for payment of principal
4. Date to which interest has been paid and interest paid from September 1, 2014 to August 31, 2015
5. Nature of loan and description or address of mortgaged premises
6. Amounts on deposit with you in escrow for, if applicable:
    a. Insurance
    b. Real estate taxes
    c. Other
7. Amounts paid during the period September 1, 2014 to August 31, 2015, if applicable:
    a. Insurance
    b. Taxes
    c. Other
8. Other amounts on deposit with you (for repairs, for example)
9. The nature of defaults, if any
10. Description of personal guarantees (if none, please indicate so)

After signing and dating your reply, please mail it directly to WeiserMazars LLP, 60 Crossways Park Drive West, Suite 301, Woodbury, NY 11797. A return envelope is enclosed for your reply. In addition, please respond via email to Kevin.Stepnowski@weisermazars.com with a copy of the confirmation that has been mailed the address mentioned above. A prompt reply will be greatly appreciated.

Very truly yours,

X

Donald J. Trump

                    DB-NYAG-022370

# TAB E

# 40 Wall Street LLC

725 Fifth Avenue, 26th Floor
New York, New York 10022

Allen Weisselberg
p. 212.715.7224 | f. 212.832-5396
weisselberg @trumporg.com

May 28, 2015

**VIA EXPRESS MAIL/USPS**
Capital One, N.A.
275 Broadhollow Road; P.O. Box 8914
Melville, New York 11747
Attn: Peter A. Welch, Senior Vice President

Re:  40 Wall Street

Dear Peter:

Reference is hereby made to that certain Second Amended, Consolidated and Restated Mortgage Note dated November 19, 2010 (the "Note") in the initial principal amount of $160,000,000, made by 40 Wall Street LLC, a New York limited liability company ("Borrower") in favor of Capital One, N.A. ("Lender").

Pursuant to Section 3 of the Note, this letter shall serve as notice that Borrower intends to prepay the outstanding principal balance of the Note, together with all accrued and unpaid interest then required, if any, on or about July 2, 2015. The undersigned is hereby requesting that Lender provide an assignment of the Note and the related mortgage documents to Borrower's new lender, in lieu of a release or satisfaction of such loan documents, and deliver to the assignee of the Note the originals of the Note together with the Original Note (as defined in the Note) and the originals of all promissory notes consolidated by the Original Note.

Please provide a formal "payoff letter" at your earliest convenience to Mr. Allen Weisselberg by mail at the address above and via e-mail to weisselberg@trumporg.com.

If Borrower determines to terminate the remaining balance of the notional amount of the transaction evidenced by the Swap Confirmation included in the Swap Agreement (as defined in the Note), then, at a later date, Borrower will separately provide notice of termination as required under Part 5 of the Schedule to the ISDA Master Agreement included in the Swap Agreement.

Please contact Mr. Weisselberg at (212) 715-7224 if you have any questions.

CONFIDENTIAL

**40 WALL STREET LLC,** a
New York limited liability company

**By: 40 Wall Street Member Corp.,** a
New York corporation, its managing
member

By: _____
Name:    Allen Weisselberg
Title:   Vice President and Treasurer

cc:

**VIA CERTIFIED MAIL,**
**RETURN RECEIPT REQUESTED**
Capital One, National Association
1680 Capital One Drive
McLean, Virginia 22102
Attn: Treasury Trading Operations

CONFIDENTIAL

11367

RETURN RECEIPT
REQUESTED

2210283407 0033

Capital One National Association
1680 Capital One Drive
Mclean, Virginia 22102
Attn: Treasury Trading Operations

7013 1710 0000 3759 8280

CERTIFIED MAIL







UNITED STATES
POSTAL SERVICE®

1000         22102

U.S. POSTAGE
PAID
NEW YORK,NY
10022
MAY 28, 15
AMOUNT

$6.49

00106437-07

CONFIDENTIAL

CAPITALONE-00351377

# TAB F

Message

| | |
|---|---|
| **From**: | noreply@salesforce.com [noreply@salesforce.com] |
| on behalf of | CCRRC Secretary [secretary@ccrrc.com] |
| **Sent**: | 8/22/2016 6:23:28 PM |
| **To**: | Eric Trump [etrump@trumporg.com] |
| **Subject**: | Hunter Safety Course |

8/22/2016

Dear Eric,

For those of you who wish to get your hunting license, we will be hosting the two day course at the club
!

The Connecticut Department of Environmental Protection Conservation Education and Firearms Safety Course
(hunter safety course) will be offered free of charge at the Cos Cob Revolver and Rifle Club on Sat. Oct.
1st and Sun. Oct. 2nd 2016 from 8 a.m. to 5 p.m.

To register please call the DEEP at (860) 424-3017 (Trish) or (860) 424-3015 (Samantha) starting Monday
August 22nd. When you call, identify yourself as a member of the club and say that Stan Esposito asked
you to call.

Jude Collins
CCRRC Recording Secretary
secretary@ccrrc.com

FOIL EXEMPT | HIGHLY CONFIDENTIAL                                                    TTO_01244980

# TAB G

Message

| | |
|---|---|
| **From:** | David Feder [dfeder@trumphotels.com] |
| **Sent:** | 6/4/2015 9:59:19 PM |
| **To:** | Rhona Graff [rgraff@trumporg.com] |
| **CC:** | Sonia Espinosa [sespinosa@trumphotels.com]; Jennifer Santini [jsantini@trumphotels.com] |
| **Subject:** | Re: FW: As Per Mr. Trump's request-Serena Williams Fund |
| | |
| **Flag:** | Follow up |

We`re researching and will back to you shortly.


**DAVID FEDER**
*Vice President and Managing Director*
dfeder@trumphotels.com
p. 305.591.6447 | f. 305.591.6480

TRUMP NATIONAL DORAL MIAMI
4400 NW 87th Avenue | Miami, FL | 33178
trumphotelcollection.com/miami/ | facebook.com/TrumpDoral | twitter.com/TrumpDoral

**NEW YORK:** CENTRAL PARK + SOHO  CHICAGO  LAS VEGAS  WAIKIKI  PANAMA  TORONTO  MIAMI | DORAL  IRELAND | DOONBEG
*Coming Soon* VANCOUVER  WASHINGTON D.C.  RIO DE JANEIRO  BAKU



On Thu, Jun 4, 2015 at 4:41 PM, Rhona Graff <rgraff@trumporg.com> wrote:

Hi David:


I have been approached by Serena Williams' people regarding an annual charity event, Serena's 5K run, which she hosts in the South Florida area in December. Serena recently did a huge favor for Mr. Trump by flying up to Trump National Washington to help inaugurate  the opening of our new tennis facility there. In return, Mr. Trump would like to do something very nice for her.


One of the ways would be to assist with a venue for the event's "Charity Gala" which is already scheduled for Friday, December 11th.  They had 200 people attending last year but anticipate possibly doubling that number this year.  Before we go any further, can you or someone on your team tell me if we have availability in one of the ballrooms for that night?


Thank you.


Rhona

FOIL EXEMPT | HIGHLY CONFIDENTIAL



**Rhona Graff**
Senior Vice President – Assistant to the President
725 Fifth Avenue | New York, NY | 10022
p. 212.832.2000 | p. 212.715.7209 | f. 212.755.3230

rgraff@trumporg.com | trump.com

---

**From:** Marc Wachter [mailto:marc@liveultimate.com]
**Sent:** Sunday, May 31, 2015 10:08 AM
**To:** Jenny Goldstock Wright
**Cc:** Rhona Graff; Michael Rose
**Subject:** Re: As Per Mr. Trump's request-Serena Williams Fund

Thank you Jenny!

Rhona, it is a pleasure to connect with you. Please let me know when you have time to get on a call with Michael Rose and myself to discuss the Serena Williams Run and Charity Gala.

Warmest regards,

Marc

Marc S. Wachter

    President & CEO



**LIVE ULTIMATE**

1691 Michigan Ave. Suite 310
Miami Beach , FL 33139
Office: (305) 538-8899

Fax: (305) 538-0065

www.LiveUltimate.com

On May 28, 2015, at 4:08 PM, Jenny Goldstock Wright wrote:

Rhona-

Apologies for the delaying in getting back to you with a definitive answer on Serena's 5k run to raise money for charity.  We now know she is going ahead with the run.  We are partnering, for the second year in a row, with Live Ultimate who will plan and execute the run as well as a pre-run evening event to raise funds for the Serena Williams Fund and her charitable partners.  The run will be on Sunday, December 13th and the pre-event on Friday, December 11th.  I am using this email to introduce you to Marc Wachter, the President of Live Ultimate and Michael Rose, a member of our Board of Directors.  They are both based in South Beach and will be spearheading the entire weekend.  I have told them about Mr. Trump's generous offer to contribute to Serena's charitable efforts is some way,including underwriting the Friday evening at one of his properties (if that makes sense for all)  and they will be contacting you directly to discuss options.  Thanks to all three of you!

Jenny

On Mon, May 11, 2015 at 12:02 PM, Rhona Graff <rgraff@trumporg.com> wrote:

HI Jenny:

Mr. Trump asked that I follow up on your e mail below.  Please call me at your convenience so we can further discuss.

Thank you.

Rhona

<image001.png>

**Rhona Graff**
Senior Vice
President – Assistant
to the President
 725 Fifth Avenue |
New York, NY | 10022
 p. 212.832.2000 | p.
212.715.7209 | f.
212.755.3230

rgraff@trumporg.com
| trump.com

**From:** Jessica Macchia
**Sent:** Monday, May 11, 2015 12:01 PM
**To:** Rhona Graff; Kelli Rose
**Subject:** Fwd: As Per Mr. Trump's request-Serena Williams Fund

Sent from my iPhone

Begin forwarded message:

> **From:** Jenny Goldstock Wright <jenny@wishboneconsultinggroup.com>
> **Date:** May 5, 2015 at 8:19:14 PM EDT
> **To:** Jessica Macchia <jmacchia@trumporg.com>
> **Subject: As Per Mr. Trump's request-Serena Williams Fund**
>
> Jessica-
>
> As Per Mr. Trump's request, attached please find basic information on the Serena Williams' Fund. There is a likely (not yet confirmed) event in

December, for which a specific ask of Mr. Trump may make the most sense. I was hoping to know before I sent this email, but as he was kind enough to follow up on Serena's charity last week, I did not want to delay further before responding.

In short, last year we teamed up with a group called Live Ultimate for the first Serena Williams Ultimate 5k run.  There was a fundraiser for Serena's charitable partners the night before hosted and underwritten by Marc Leder, CEO of Sun Trust in his Miami Beach home. If there is 2nd Serena Williams Ultimate Run and Fundraiser again this year, our ask would be if Mr. Trump could host/underwrite the fundraiser the night before the race at his hotel in Miami or a venue that works for him in the Miami Beach area.

We look forward to hearing initial thoughts.  If Mr. Trump is interested, I will be sure to circle back as soon as I have a definite "yes" from Serena on the run and fundraising event.

With Appreciation,


Jenny


--

Jenny Goldstock Wright

Principal

Wishbone Consulting Group

This e-mail message, and any attachments to it, are for the sole use of the intended recipients, and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution of this email message or its attachments is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. Please note that any views or opinions presented in this email are solely those of the author and do not necessarily represent those of the company. Finally, while the company uses virus protection, the recipient should check this email and any attachments for the presence of viruses. The company accepts no liability for any damage caused by any virus transmitted by this email.

...

Jenny Goldstock Wright

Principal

Wishbone Consulting Group

TTO_01150569

# TAB H

Message
_____

**From:**        Donna Kidder [FIRST ADMINISTRATIVE GROUP/CN=RECIPIENTS/CN=DKIDDER]
**Sent:**        5/5/2015 12:58:38 PM
**Subject:**     RE: 40 wall current leases and amendments
**Attachments:** image001.jpg


Thanks Jae.

Michael,

Please let me know everything is in order.


_____

**From:** Jae H. Cho
**Sent:** Tuesday, May 05, 2015 12:17 PM
**To:** Donna Kidder
**Cc:** Jack Weisselberg; Michael Bette; Jeff McConney; Allen Weisselberg
**Subject:** RE: 40 wall current leases and amendments

Donna,

Files has been sent to Jack and Michael.


_____

**From:** Donna Kidder
**Sent:** Monday, May 4, 2015 2:32 PM
**To:** Jae H. Cho
**Cc:** Jack Weisselberg; Michael Bette; Jeff McConney; Allen Weisselberg
**Subject:** FW: 40 wall current leases and amendments
**Importance:** High

Jae please find the link for 40 Wall lease agreements and amendments below to send to Ladder Capital.  If this does not work let me know.

Thanks.

_____

**From:** Cammie Artusa
**Sent:** Monday, May 04, 2015 2:29 PM
**To:** Donna Kidder
**Subject:** FW: 40 wall current leases and amendments

All copies of 40 Wall Street executed leases and amendments can be found in:

G:\40 Wall\40 Wall Street Executed Lease Agreements

FOIL EXEMPT | HIGHLY CONFIDENTIAL                                    TTO_04498386

**From:** Donna Kidder
**Sent:** Monday, May 04, 2015 2:15 PM
**To:** Cammie Artusa
**Subject:** RE: 40 wall current leases and amendments

Can you tell me the path? So I can have Jae send to prospective lender for due diligence?  This is great!!!

---

**From:** Cammie Artusa
**Sent:** Monday, May 04, 2015 2:13 PM
**To:** Donna Kidder
**Subject:** RE: 40 wall current leases and amendments

I have all of the pdf's for the current leases and amendments saved on the computer in a "bundle" folder on the G: drive : )

---

**From:** Donna Kidder
**Sent:** Monday, May 04, 2015 2:12 PM
**To:** Cammie Artusa
**Subject:** 40 wall current leases and amendments

Any chance you have all of the pdf's for the current leases and amendments saved on the computer in a "bundle" a folder or something to that effect? On the L:drive?

**Donna Kidder**
Assistant Controller
725 Fifth Avenue | New York, NY | 10022
p. 212.715.7225 | f. 212.832.5396
dkidder@trumporg.com | trump.com

FOIL EXEMPT | HIGHLY CONFIDENTIAL

TTO_04498387