# EXHIBIT H

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,

                Petitioner,

-against-

THE TRUMP ORGANIZATION, INC.; DJT HOLDINGS LLC; DJT HOLDINGS MANAGING MEMBER LLC; SEVEN SPRINGS LLC; ERIC TRUMP; CHARLES MARTABANO; MORGAN, LEWIS & BOCKIUS, LLP; SHERI DILLON; DONALD J. TRUMP; IVANKA TRUMP; AND DONALD TRUMP, JR.,

                Respondents.

Index No. 451685/20

Motion Seq. No.: ___

<u>Oral Argument Requested</u>

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS/MOVING PARTIES DONALD J. TRUMP, DONALD J. TRUMP, JR. AND IVANKA TRUMP'S MOTION TO QUASH SUBPOENAS OR, IN THE ALTERNATIVE, TO STAY ENFORCEMENT OF THE SUBPOENAS PENDING RESOLUTION OF THE CRIMINAL INVESTIGATION**

<u>PRELIMINARY STATEMENT</u>

This motion is brought because, in an unprecedented and unconstitutional maneuver, Letitia James, the Attorney General for the State of New York ("OAG" or "Attorney General"), has subpoenaed (the "Subpoenas") and seeks to take the depositions of Former President Donald J. Trump ("Mr. Trump"), his son, Donald J. Trump, Jr., and daughter, Ivanka Trump (hereinafter and for the puposes of this Motion collectively "Moving Parties"), as part of an ongoing, multi-year investigation into all aspects of the business dealings of Mr. Trump and his namesake company, The Trump Organization while, at the very same time, according to published reports,

## POINT I

### THE SUBPOENAS SHOULD BE QUASHED TO AVOID CIRCUMVENTING MOVING PARTIES' CONSTITUTIONAL AND STATUTORY RIGHTS

The Subpoenas should be quashed because they seek to compel testimony in furtherance of the OAG/DANY investigation and thereby deprive Moving Parties of the constitutional and statutory protections available to witnesses compelled to testify in a pending criminal case. The OAG's claimed "administrative" Subpoenas, generally referred to as an "office subpoena," may be challenged by a motion to quash. *Matter of Condon v. Inter-Religious Found. For Community Org., Inc.,* 18 Misc.3d 874, 882, 85 N.Y.S. 841 (N.Y. Co 2008), *citing Virag v. Hynes*, 54 N.Y.2d 437 (1981); see CPLR § 2304; *Matter of Brunswick Hosp. Ctr. V. Hynes*, 152 N.Y.2d 333, 339, 438 N.Y.S.2d 253 (1981) (motion to quash or vacate is proper and exclusive vehicle to challenge validity of subpoena or jurisdiction of issuing authority).

We recognize that, ordinarily, the OAG has the authority to conduct a civil investigation into whether any person has engaged in "repeated fraudulent illegal acts or otherwise demonstrate[d] persistent fraud or illegality in the carrying on, conducting or transaction of business." McKinney's Executive Law § 63(12). In the usual course, "the attorney general is authorized to take proof and make a determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules. Such authorization shall not abate or terminate by reason of any action or proceeding brought by the attorney general under this section." *Id.* See *Matter of Harlem Teams for Self-Help v. Department of Investigation of City of N.Y.,* 122 Misc.2d 1066, 1074, 472 N.Y.S.2d 967 (N.Y. Co. 1984).

But as the Court of Appeals detailed in *Virag v. Hynes*, there is a "fundamental distinction between a nonjudicial, office subpoena and a Grand Jury subpoena." *Virag v Hynes*,

12

54 N.Y.2d at 441. "An office subpoena is executed and the witness examined pursuant to it without direct judicial supervision." *Id.* Further, the civil office subpoena poses risks to any witness deciding between disclosing evidence in the civil investigation or invoking his or her constitutional right not to testify. Where a witness chooses not to testify in response to a civil subpoena, an adverse inference may be drawn in the civil action. *Kuriansky v. Bed-Stuy Health Care Corp.*, 135 A.D.2d 160, 178-79, 525 N.Y.S.2d 22 (2d Dep't 1988)("In New York, unlike the rule in a criminal case, a party's invocation of the privilege against self-incrimination in a civil case may be considered by the finder of the facts in assessing the strength of the evidence offered by the opposing party on the issue which the witness was in a position to controvert"), *citing Marine Midland Bank v. Russo Produce Co.*, 50 N.Y.2d 31, 427 N.Y.S.2d 961 (1980); *see Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 97-98 (2d Cir. 2012), *quoting Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551 (1976); *Keating v. Office of Thrift Supervision,* 45 F.3d 322, 326 (9th Cir.1995); *United States v. 4003–4005 5th Ave.,* 55 F.3d 78, 83 (2d Cir.1995); *LiButti v. United States,* 178 F.3d 114, 120 (2d Cir.1999)

But where the very same agency issuing the supposed "office" subpoena is also conducting a criminal investigation, the office subpoena is unavailable. "The law does not confer upon a prosecutor the power to employ a subpoena solely to conduct an investigation or to subpoena witnesses to attend his office or any other place where a grand jury or court is not convened." *Rodrigues v. City of New York,* 193 A.D.2d 79, 602 N.Y.S.2d 337, 342 (1st Dep't 1993). "It has long been recognized that District Attorneys may not issue subpoenas except through the process of the court, and they exercise the power to compel witnesses to produce physical evidence only before a Grand Jury or a court where a proceeding is pending." *People v. Natal,* 75 N.Y.2d 379, 385 N.Y.S.2d 650 (1993); *see* CPL § 610.20 ("a district attorney, or other

13

prosecutor where appropriate, as an officer of a criminal court . . . may issue a subpoena…for the attendance in such court or a grand jury thereof of any witness whom the people are entitled to call in such action or proceeding.")

By law, rather than having to risk an adverse inference, any witness compelled to testify in response to a grand jury subpoena receives transactional immunity for his or her testimony. McKinney's CPL § 190.40 ("A witness who gives evidence in a grand jury proceeding receives immunity …")  Thus, because transactional immunity is automatic, prosecutors are loath to use subpoena power to compel grand jury testimony from an individual whom it wishes to target in its investigation. *Matter of Gammarano v. Gold*, 51 A.D.2d 1012-1013 (2d Dep't 1976)(it is "factually impossible" for a grand jury witness to be a target of the District Attorney's investigation since grand jury subpoenas grant "automatic transactional immunity for his testimony"), *citing* CPL § 190.40.  The exception to the automatic grant of immunity occurs only when a target in a criminal case requests to appear before the grand jury voluntarily; in that event, the target receives no immunity.  *See* CPL § 190.50(5).

Here, DANY and the OAG are conducting a unified criminal investigation. The Attorney General herself acknowledged that OAG lawyers are part of the joint criminal investigative effort. While the OAG may also have tasked attorneys to a civil investigation, the very agency itself – the OAG – is front and center in the criminal investigation, so much so that Attorney General James boasted on national television that "we" indicted Mr. Weisselberg and two Trump companies. And there is no question that testimony provided to the OAG will be immediately available to that very same Office - the OAG – in its OAG/DANY investigation.  Under these unprecedented circumstances, where the OAG is part and parcel of the criminal grand jury investigation, it cannot circumvent the rules and protections embodied in Grand Jury practice.

The fact is that the OAG is one, singular agency running a criminal investigation. It may claim to split itself into two to avoid complying with grand jury practice, but this it cannot do. In more distant but analogous circumstances, courts have not permitted illusory and fanciful distinctions <u>between different agencies</u>, much less amongst a single agency. "Where the investigation has been converted from its original lawful purpose…to one of another purpose, i.e., to conduct an investigation to find criminal acts, the abuse of process would be sufficiently clear to warrant quashing these subpoenas." *Matter of Harlem Teams for Self-Help v. Department of Investigation of City of N.Y.*, 122 Misc.2d 1066, 472 N.Y.S.2d 967 (N.Y.Co. 1984). "Where there is evidence that the relevance of the materials sought [in an office subpoena] is not to an administrative investigation, but, 'in preparation or in aid of a criminal prosecution, not within the purview of [the agency's] jurisdictional powers, the subpoena will be quashed.'" *Id., quoting Matter of Temporary State Comm. on Living Costs & Economy v Bergman*, 80 Misc 2d 448, 453, 363 N.Y.S.2d 977 (N.Y. Co. 1975), *citing Matter of Grand Jury Proceedings*, 485 F.2d 85 (3d Cir. 1973). *See also People v. Rutter,* 202 A.D.2d 123, 131, 616 N.Y.S.2d 598 (1st Dep't 1994) (granting habeas relief on ineffective assistance grounds where prosecution had not timely disclosed exculpatory polygraph transcript in possession of Philadelphia police). *See United States v. Ferguson*, 478 F. Supp.2d 220, 238 (D. Conn. 2007) (prosecutor's duty to turn over *Brady* material in the possession of other agencies "is triggered by any joint investigation conducted between federal, state, and local agencies or across different federal agencies").

Here, we needn't pause to even question whether the OAG and DANY are running a joint investigation. *See Ferguson,* 478 F. Supp.2d at 238, *citing United States v. Risha,* 445 F.3d 298, 304 (3d Cir. 2006). The Attorney General has made crystal clear in myriad public statements and

15

actions that the OAG is a co-equal in the prosecutions to date and in the ongoing criminal grand jury investigation.

The OAG is engaged in a criminal investigation that has an active Grand Jury. It cannot issue subpoenas for testimony under the guise of a civil investigation that will immediately become available – to its own OAG/DANY criminal investigation. New York State's statutory and constitutional protections were not designed to be so easily avoided. The subpoenas are an obvious improper end-run around the rules.

Given the seemingly unprecedented nature of the OAG's actions, significant public policy concerns are at play. For this reason, the OAG cannot be permitted to co-mingle its criminal and civil investigations in such a way that will deprive Moving Parties of their constitutional rights. Doing so would set a truly dangerous precedent. Not only would it significantly erode the protections afforded to our citizens by the New York Constitution and related CPL rules, but it would also greatly expand the government's ability to investigate criminal defendants under the guise of a civil investigation. The Supreme Court has already expressed concern that "[p]rosecutors have available a terrible array of coercive methods to obtain information," such as "police investigation and interrogation, warrants, informers and agents whose activities are immunized, authorized wiretapping, civil investigatory demands, [and] enhanced subpoena power" and that the "misuse of those methods would unfairly harass citizens, give unfair advantage to [the prosecutor's personal interests], and impair public willingness to accept the legitimate use of those powers." *Young v. U.S. ex re. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). Thus, it is vital that the public "have assurance that those who would wield this [prosecutorial] power will be guided solely by their sense of public responsibility for the attainment of justice." *Id.* at 814.

These public policy considerations are all the more significant in the instant matter where the target of the government speech and action is a political figure, a former President of the United States, and the government actor is a state Attorney General who vehemently opposes him. Given the significant public attention that the subject investigation has received, and will continue to receive, there is a substantial risk that permitting the OAG to so clearly circumvent grand jury protections and otherwise exceed the bounds of its investigatory authority would "create an appearance of impropriety" which could ultimately "diminish faith in the fairness of the criminal justice system in general." *Id.* at 812.

Based on the foregoing, the subpoena must be quashed.

### POINT II

### ALTERNATIVELY, THE COURT SHOULD STAY ENFORCEMENT OF THE SUBPOENAS PENDING THE CONCLUSION OF THE CRIMINAL CASE

A court may, in its discretion, grant a stay of civil proceedings "in a proper case, upon such terms as may be just." CPLR 2201. For example, courts will commonly grant a stay of a civil proceeding when it overlaps with a pending criminal proceeding. Indeed, "although the pendency of a criminal proceeding does not give rise to an absolute right under the United States or New York State Constitutions to a stay of a related civil proceeding . . . there is no question that the court may exercise its discretion to stay proceedings in a civil action until a related criminal dispute is resolved." *Matter of Astor*, 62 A.D.3d 867, 868-869, 879 N.Y.S.2d 560 (2d Dep't 2009).[7]

Whether to grant a stay pending resolution of a related criminal action "is directed to the

---

[7] The Court in the criminal case, the Hon. Juan M. Merchan, has stated that the trial will be held in late July or August 2022. Thus, the stay contemplated by this motion is of limited and finite duration.

17

sound discretion of the trial court." *Britt v. Intl. Bus Services, Inc.*, 255 A.D.2d 143, 144 (1st Dep't 1998)(quotations omitted); *see also Securities and Exchange Com'n v. Dresser Industries, Inc.,* 628 F.2d 1372, 1375 (D.C. Cir. 1980)("a court may decide in its discretion to stay civil proceedings ... 'when the interests of justice seem[ ] to require such action'") (*quoting U.S. v. Kordel,* 397 U.S. at 12, n. 27, 90 S. Ct. at 770, n. 27); *Kashi v. Gratsos,* 790 F.2d 1050, 1057 (2d Cir.1986) ("[A] court *may* decide in its discretion to stay civil proceedings when the interests of justice seem to require such action")(emphasis in original). Where a stay is sought due to a pending criminal matter, the invocation of the Fifth Amendment privilege is a critical factor:

> Factors to consider include avoiding the risk of inconsistent adjudications, [duplication] of proof and potential waste of judicial resources. A compelling factor is a situation where a defendant will invoke his or her constitutional right against self-incrimination.

*Britt v. Intl. Bus Services, Inc.*, 255 A.D.2d 143, 144 (1st Dep't 1998); *see Zonghetti v Jeromack*, 150 A.D.2d 561, 563 (2d Dep't 1989); *DeSiervi v Liverzani*, 136 A.D.2d 527, 528 (2d Dep't 1988); *Puiatti v Panos*, 39 Misc.3d 1211(A), 2013 Slip. Op. 50566(U) at *4 (Duchess Co. 2013) (granting stay upon finding invocation of the Fifth Amendment right against self-incrimination to be a "compelling factor").

The Supreme Court has acknowledged that a stay or postponement of civil discovery pending the outcome of criminal proceedings is justified when the government brings a civil action "solely to obtain evidence for its criminal prosecution," *United States v. Kordel,* 397 U.S. 1, 11-12, 90 S.Ct. 763, 769-770 (1970), or where other circumstances suggest that parallel proceedings are unconstitutional or improper. *Id.* In this context, a stay is "most likely to be granted where the civil and criminal actions involve the same subject matter … and is even more appropriate when both actions are brought by the government." *Brock v Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y

1985). In such a scenario, a stay is warranted to guard against the "special danger that the government can effectively undermine rights that would exist in a criminal investigation by conducting a de facto criminal investigation using nominally civil means," *Sterling Bank v. A-I Hotels Int's Inc.*, 175 F.Supp.2d 573, 579 (S.D.N.Y. 2001), a maneuver which "undercuts" a defendant's constitutional rights. *Id.* at 120.

Turning to the instant matter, the OAG is intimately involved in a criminal investigation dealing with precisely the same subject matter as the Subpoenas. The OAG's role is highly prejudicial since it is in a position to use its civil investigation to improperly advance its criminal investigation. Indeed, since the OAG boasts about its criminal investigation, there is no question that testimony obtained by the OAG, will be used – by the OAG. Thus, the potential for abuse here is unique, both in the fact the OAG is deeply enmeshed in the criminal case, and because of Attorney General James's unusual and well-documented threats, noted above, including her self-proclaimed mission to "take on" the Trump family, deploy the law as a "sword" in discussing Mr. Trump, who she called "illegitimate" in 2018 (*see* **Exhibit EE**), and to make use of *"every area of the law* to investigate [him] … his businesses transactions … his family … [and] anyone in his orbit."

Thus, a stay is warranted here for all of the reasons previously discussed. It is not appropriate for an agency of the state government, particularly its highest law enforcement agency, to endeavor to circumvent Grand Jury rules used to protect our citizenry. Indeed, this is a rather transparent gambit. By attempting to play both sides, Ms. James is in a position to cherry pick her investigatory methods – civil or criminal – in a calculated manner to, for example, leverage a Fifth Amendment assertion and obtain an adverse inference. *See A-I Hotels Int's Inc.*, 175 F.Supp.2d at

19

579. It is not appropriate for any state actor – let alone the highest-ranking law enforcement official in the state – to endeavor to circumvent the grand jury procedural safeguards of our judicial system.

Were there no criminal case, the Moving Parties might well be inclined to testify. But there is a criminal investigation into the very same matters at issue in the Subpoenas being conducted by the very same office. Attorneys may well instruct witnesses to invoke Fifth Amendment rights solely because rights under CPL 190.40 have been circumvented. An adverse inference under these circumstances would be grossly unfair when this stratagem can easily be avoided by a stay pending completion of the criminal investigation.

Therefore, a stay is warranted here for all of the reasons set forth herein.

## CONCLUSION

For the forgoing reasons, it is respectfully requested that the Court quash the Subpoenas or, in the alternative, stay enforcement of the Subpoenas until the conclusion of the pending criminal case. Oral argument is respectfully requested.

Dated: January 3, 2022

Respectfully submitted,

Law Offices of Alan S. Futerfas
By: Alan S. Futerfas
565 Fifth Avenue, 7th Fl
New York, New York 10017

*Attorneys for Respondents/Moving Parties Donald J. Trump, Jr., and Ivanka Trump*

Fischetti & Malgieri
By: Ronald P. Fischetti
565 Fifth Avenue, 7th Fl
New York, New York 10017

20

Michael T. van der Veen
Van der Veen, Hartshorn and Levin
1219 Spruce Street
Philadelphia, PA 19107

Alina Habba
Habba Madaio & Associates LLP
112 West 34th St, 17th & 18th Floors
New York, New York 10120

*Attorneys for Respondent/Moving Party Donald J. Trump*