# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP and TRUMP
ORGANIZATION LLC,

*Plaintiffs*,

v.

LETITIA JAMES, in her official capacity
as Attorney General for the State of New
York,

*Defendant*.

Case No. 1:21-cv-1352 (BKS)(CFH)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
   *Attorney General*
   *State of New York*
28 Liberty Street
New York, NY  10005

*Attorney for Defendant Letitia James, in her
official capacity*

Andrew S. Amer,
  Special Counsel
Colleen K. Faherty,
  Assistant Attorney General
Kevin Wallace,
  Senior Enforcement Counsel

*of Counsel*

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ...................................................................................................................... 3

    A.  OAG'S INVESTIGATION AND THE NY PROCEEDING ........................................... 3

    B.  PLAINTIFFS' COMPLAINT ....................................................................................... 6

STANDARD OF REVIEW ........................................................................................................ 7

ARGUMENT ........................................................................................................................... 8

    I.  PLAINTIFFS FAIL TO DEMONSTRATE IRREPARABLE HARM ................... 8

    II.  PLAINTIFFS HAVE NO CLEAR OR SUBSTANTIAL LIKELIHOOD
        OF SUCCESS ON THE MERITS .................................................................... 11

        A. The Court Should Decline To Exercise Jurisdiction Over This Action In
           Deference To The Pending NY Proceeding ............................................... 12

        B. Plaintiffs' Claims Are Barred By *Res Judicata* ........................................... 14

        C. Plaintiffs Fail To Allege Facts That Plausibly Infer OAG's Investigation
           Is Without Legal Basis ............................................................................. 15

           1)   Plaintiffs Fail to State a First Amendment Claim ........................... 16

           2)   Plaintiffs Fail to State a Fourth Amendment Claim ....................... 17

           3)   Plaintiffs Fail to State a Due Process Claim .................................... 18

           4)   Plaintiffs Fail to State a Claim for Abuse of Process ...................... 19

    III.  THE BALANCE OF EQUITIES TIPS SHARPLY IN FAVOR OF
         CONTINUING A WELL-SUPPORTED INVESTIGATION INTO
         FRAUD AND MISCONDUCT COMMITTED AGAINST FINANCIAL
         INSTITUTIONS AND THE GOVERNMENT ................................................. 21

CONCLUSION ....................................................................................................................... 22

TABLE OF AUTHORITIES

**Cases**

*Blue v. Koren*, 72 F.3d 1075 (2d Cir. 1995) ...................................................................................17

*Brock v. Tolkow*, 109 F.R.D. 116 (E.D.N.Y. 1985) .......................................................................19

*Buechel v. Bain*, 97 N.Y.2d 295 (2001)..........................................................................................15

*Burgos v. Hopkins*, 14 F.3d 787 (2d Cir. 1994) .............................................................................15

*Chandler v. Graham*, No. 16-cv-0348, 2016 WL 4411407 (N.D.N.Y. Aug. 19, 2016) ..................... 10, 11

*Charter Commc'ns, Inc. v. Jewett*, No. 5:21-cv-959, 2021 WL 5332121 (N.D.N.Y. Nov. 16, 2021)............7

*Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343 (2d Cir.1995) ..................................15

*Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985) ..............................................................11

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ..........................12

*Conopco, Inc. v. Roll Int'l*, 231 F.3d 82 (2d Cir. 2000) .................................................................14

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir.1994)....................................................................................19

*Curiano v. Suozzi*, 63 N.Y.2d 113 (1984).......................................................................................20

*Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir.2001) ...............................................................16

*Department of Commerce v. New York*, 139 S. Ct. 2551 (2019) .....................................................7

*Donovan v. Lone Steer, Inc.*, 464 U.S. 408 (1984)........................................................................17

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ............................................................21

*Everhome Mortg. Co. v. Aber*, 195 A.D.3d 682 (2nd Dep't 2021)................................................21

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) .........................................13

*Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679 (S.D.N.Y. 2018) ...............................16

*Fernandez v. Turetsky*, No. 12-cv-4092, 2014 WL 5823116 (E.D.N.Y. Nov. 7, 2014)............................13

*Fortress Credit Opportunities I LP v. Netschi*, 59 A.D.3d 250 (1st Dep't 2009)................................19

*Gidatex, S.r.L. v. Campeniello Imports, Ltd.*, 13 F. Supp. 2d 417 (S.D.N.Y. 1998).....................11

*Hartman v. Moore*, 547 U.S. 250, 256 (2006) ...............................................................................16

*Hensel v. City of Utica*, 6:15-cv-374, 2016 WL 1069673 (N.D.N.Y. March 16, 2016) ..............................14

*Hoblock v. Albany Bd. of Elections*, 422 F.3d 77 (2d Cir. 2005) ....................................................14

*In re FDIC*, 58 F.3d 1055 (5th Cir. 1995) ........................................................................18

*In re Grand Jury of S. Dist.*, 508 F. Supp. 1210 (S.D. Ala. 1980) ................................................18

*In re Roemer v. Cuomo*, 67 A.D.3d 1169 (3rd Dep't 2009) ........................................................15

*Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F. Supp. 547 (E.D.N.Y. 1995) ........................................8

*Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19 (N.D.N.Y. 2003) ..........................................8

*KM Enters. v. McDonald*, 11-cv-5098, 2012 U.S. Dist. LEXIS 20469 (E.D.N.Y. Feb. 16, 2012),
  *aff'd*, 518 F. App'x 12 (2d Cir. 2013) ........................................................................9

*Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58 (2d Cir. 2020) ........................................13

*L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18 Civ. 1902, 2018 WL
  2390125 (E.D.N.Y. May 25, 2018) ..............................................................................7

*Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173 (2d Cir. 2020) ........................................7

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980) ................................................................18

*Matter of Abrams*, 62 N.Y.2d 183 (1984) ........................................................................14

*Matter of Campbell v New York City Transit Auth.*, 32 AD3d 350 (1st Dep't 2006) ................................19

*Matter of Haggerty v. Himelein*, 89 N.Y.2d 431 (1997) ......................................................18, 19

*Matter of La Belle Creole Int'l, S.A. v. Attorney General of the State of N.Y.*, 10 N.Y.2d 192 (1961) ..............4

*Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) ..........................12

*Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75 (1984) ..........................................14

*Mirka United, Inc. v. Cuomo*, No. 06-cv-14292, 2007 WL 4225487 (S.D.N.Y. Nov. 27, 2007) ..........................21

*Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275 (2d Cir. 2000) ..................................................14

*Moon 170 Mercer, Inc. v. Vella*, 146 A.D.3d 537 (1st Dep't 2017) ................................................15

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286 (2d Cir. 2012) ..................................8

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................................7

*NLRB v. Am. Med. Response, Inc.*, 438 F3d 188 (2d Cir. 2006) ....................................................17

*North Am. Soccer League, LLC v United States Soccer Fedn., Inc.*, 883 F3d 32 (2d Cir 2018)........................8

*NYP Holdings, Inc. v. McClier Corp.*, 83 A.D.3d 426 (1st Dep't 2011)........................................15

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-cv-0957, 2017 WL 6459464 (E.D.N.Y. Dec. 15, 2017) ...........................................................................................................................................12

*Otoe Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105 (2d Cir. 2014) ....................7

*People v. The Trump Organization*, No. 451685/2020, 2020 WL 5775887 (Sup. Ct., N.Y Cty. Sept. 23, 2020), *modified on reargument*, 2020 WL 5992323 (Sup. Ct., N.Y Cty. Oct. 7, 2020), *further modified on reargument*, 2020 WL 7360811 (Sup. Ct., N.Y Cty. Dec. 15, 2020).................................................................................................................................. 4, 5

*People v. Trump*, 62 Misc. 3d 500 (Sup. Ct., N.Y. Cty. 2018) ........................................................16

*Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577 (2d Cir.1989).......................................................7

*Purdie v. Supervisor, Admin. Mail Room, Auburn Corr. Facility*, No. 9:09-cv-951, 2010 WL 148639 (N.D.N.Y. Jan. 13, 2010).................................................................................................................10

*Sadowy v. Sony Corp. of Am.*, 496 F. Supp. 1071 (S.D.N.Y. 1980) ...................................................20

*Salinger v. Colting*, 607 F.3d 68 (2d Cir. 2010)......................................................................21

*Savage v. Gorski*, 850 F.2d 64 (2d Cir. 1988)........................................................................9

*Savino v. City of N.Y.*, 331 F.3d 63 (2d Cir. 2003) ............................................................... 19, 20

*Scarbrough v. Evans*, No. 909-cv-0850, 2010 WL 1608950 (N.D.N.Y. Apr. 20, 2010) ...........................10

*Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43 (2d Cir. 2012) ................... 9, 10

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ...............................................................12

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27 (2d Cir. 1995)......................................8

*Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995)..............................................11

*Trump v. Vance*, 977 F.3d 198 (2d Cir. 2020) ................................................................... 13, 14

*Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622 (1994) ..............................................................17

*U.S. v. Morton Salt Co.*, 338 U.S. 632 (1950)......................................................................17

*U.S. v. O'Brien*, 391 U.S. 367 (1968)..............................................................................17

*United States v. Peskin*, 527 F.2d 71 (7th Cir. 1975) .............................................................18

*Ward v. New York University*, No. 99-cv-8733, 2000 WL 1448641 (S.D.N.Y. Sept. 25, 2000).............16

*Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270 (1970) .......................................................................15

*Weinberger v. Romero-Barcelo,* 456 U.S. 305 (1982) .................................................................21

*Weiss v. Hunna*, 312 F.2d 711 (2d Cir.1963) ............................................................................20

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) .......................................................................12

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) ..........................7, 21

*Younger v. Harris*, 401 U.S. 37 (1971) ....................................................................................12

**Statutes**

28 U.S.C. § 1738 ......................................................................................................................14

N.Y. CPLR § 2308 .....................................................................................................................15

N.Y. Exec. Law § 63(12) ....................................................................................................3, 4, 17

**Rules**

N.D.N.Y Local Rule 65.1 .............................................................................................................1

N.D.N.Y. Local Rule 7.1(a)(2) ....................................................................................................1

N.D.N.Y. Local Rule 7.1(b) .....................................................................................................3, 9

**Treatises**

Prosser, Torts (2d ed. 1955) ......................................................................................................20

## PRELIMINARY STATEMENT

This case, a recent gambit by Plaintiffs during a multi-year investigation with which they repeatedly profess to be cooperating, presents no emergency requiring the extraordinary relief of a preliminary injunction. For the past 34 months, the Office of the New York Attorney General ("OAG") has been investigating allegations of fraud and misrepresentation by Donald J. Trump, the Trump Organization LLC, and their affiliates (the "Investigation"). And since August 2020, a New York state court judge has been presiding over a special proceeding commenced by OAG to oversee compliance with subpoenas issued by OAG in the Investigation (the "NY Proceeding"). During this nearly three-year period, the Trump Organization has produced over 900,000 documents, brought in more than a dozen current and former employees for testimony, and submitted to judicial oversight and third-party supervision of its subpoena compliance under a stipulated court order in the NY Proceeding. Mr. Trump also personally authorized the production of his personal income tax returns to OAG. Against this backdrop, Mr. Trump and the Trump Organization have commenced this lawsuit asserting that the Investigation has been without basis from the start, and (without having conferred in advance) they move to enjoin OAG from continuing the Investigation pending the resolution of this case, or alternatively bar the Attorney General from being involved in any way in OAG's Investigation.[1]

Plaintiffs fail to satisfy any of the requirements for obtaining the extraordinary relief of preliminarily enjoining on an emergency basis an ongoing and well-advanced law enforcement investigation – a showing of irreparable harm, a clear or substantial likelihood of success on the merits,

---

[1] Pursuant to Local Rules 65.1 and 7.1(a)(2), prior to filing this motion, Plaintiffs were supposed to first make a good faith effort "to resolve or reduce all differences relating to the non-dispositive issue," and then if unable to arrive at a mutually satisfying resolution, request a conference before the Court. L. R. 7.1(a)(2). They did neither.

and a balance of the equities and public interest tipping in their favor.

Plaintiffs fail to demonstrate they will suffer any irreparable harm if there is no preliminary injunction. As a threshold matter, Plaintiffs' proof of irreparable harm consists merely of the bare allegations in their complaint, which are legally insufficient. There is no evidentiary showing – no sworn testimony from Mr. Trump or anyone else within the Trump Organization – particularizing how the continuation of OAG's Investigation will cause Plaintiffs any cognizable harm, much less irreparable harm. Moreover, even if Plaintiffs could plausibly claim some potential harm based on Mr. Trump having to testify under oath in response to OAG's subpoena (which is not the case), such harm would be purely speculative and not imminent because the import of any testimony is uncertain since there is no way to know what Mr. Trump will say under oath until he testifies. And Plaintiffs' years of professed cooperation with the Investigation and long delay in bringing this action to challenge the Investigation undercuts any claim of irreparable harm.

Nor do Plaintiffs have a clear or substantial likelihood of success on the merits. To demonstrate such a strong likelihood of success, Plaintiffs would have to show that: (i) the Court should not abstain in deference to the NY Proceeding under any one of three well-settled and applicable abstention doctrines; (ii) they can overcome the jurisdictional bar against federal courts hearing cases brought by state-court losers seeking collateral review of state court final orders; *and* (iii) their claims as pleaded are sufficient to establish they are clearly or substantially likely to win. Plaintiffs cannot meet any of these requirements, much less all of them – as they must to prevail on this motion. For the reasons demonstrated in the Attorney General's brief in support of her motion to dismiss, the Court should abstain from hearing this case in deference to the NY Proceeding under the *Younger, Colorado River,* and *Wilton* abstention doctrines. Additionally, the Court should decline to exercise jurisdiction under the *Rooker-Feldman* doctrine because Plaintiffs improperly seek here to collaterally attack final orders issued in the NY Proceeding that necessarily determined the Investigation is being

conducted by OAG in good faith and with reasonable basis. Moreover, Plaintiffs' complaint fails to state a claim because they are barred by *res judicata* from relitigating the good faith basis for the Investigation, which has already been determined in the NY Proceeding, and their allegations otherwise do not plausibly infer no valid justification exists for the Investigation.

Finally, the public interest tips sharply in favor of OAG, which has uncovered (as shown in OAG's 113-page supplemental petition recently filed in the NY Proceeding) considerable evidence of fraudulent or misleading conduct engaged in by Mr. Trump and the Trump Organization. In light of that evidence—which concerns conduct in which financial institutions, insurance companies, and even the federal government are potential victims—it is plain that the public interest is far better served by denying the extraordinary relief sought here that would halt OAG's Investigation. Plaintiffs offer no factual basis to contend otherwise.

## BACKGROUND

The facts relevant to the Court's consideration of this preliminary injunction application are the same as those set forth in the Declaration of Colleen K. Faherty, dated January 26, 2022, submitted in support of Defendant's motion to dismiss (Dkt. No. 16) ("Faherty Dec."), which is incorporated by reference.[2] OAG provides a brief summary below for the Court's convenience.

### A. OAG's Investigation and the NY Proceeding

New York Executive Law § 63(12) allows the Attorney General to bring a proceeding "[w]henever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business." N.Y. Executive Law ("Exec. Law") § 63(12). The Attorney General "is authorized to take proof and make a

---

[2] Pursuant to Local Rule of Practice 7.1(b), "[d]ocuments that are on file with the Court in the same action should not be attached as exhibits to the motion papers, but rather should be referenced to the appropriate docket number."

determination of the relevant facts and to issue subpoenas in accordance with the civil practice law and rules." Exec. Law § 63(12). A basis for a subpoena under § 63(12) exists if there is a "reasonable relation to the subject-matter under investigation and to the public purpose to be achieved." *Matter of La Belle Creole Int'l, S.A. v. Attorney General of the State of N.Y.*, 10 N.Y.2d 192, 196 (1961).

OAG opened the Investigation into the Trump Organization in March 2019, after Michael Cohen, a former senior executive of the Trump Organization and Special Counsel to Mr. Trump, produced to Congress copies of Donald J. Trump's financial statements for 2011, 2012, and 2013. *See* Faherty Dec. at ¶ 3 and Ex. B at 38 (H. Hrg. 116-03 (Feb. 27, 2019)). In the Investigation, OAG has issued dozens of subpoenas and has taken testimony to obtain information material to these matters. *Id.* at ¶ 3. In fact, prior to filing this action, Mr. Trump and the Trump Organization purported to be cooperating with the Investigation on various matters as it proceeded, producing many current and former Trump Organization employees and agents for examination under oath, and eventually producing over 900,000 documents, including while under judicial supervision. *Id.,* Ex. C at 15; Plaintiffs' Memorandum of Law (Dkt. No. 6-2) ("Pls. MOL") at Pls. MOL at 3.

In August 2020, to resolve certain disputes that had arisen during the Investigation, OAG commenced the NY Proceeding to compel the production of documents and testimony "relevant to its ongoing investigation into potential fraud or illegality by respondent the Trump Organization and related entities," including whether "the Trump Organization improperly inflated the value of certain of its assets on various financial statements to obtain tax and other financial benefits." *People v. The Trump Organization*, No. 451685/2020, 2020 WL 5775887, at *1 (Sup. Ct., N.Y. Cty. Sept. 23, 2020) ("*Trump I*"), *modified on reargument*, 2020 WL 5992323 (Sup. Ct., N.Y. Cty. Oct. 7, 2020) ("*Trump II*"), *further modified on reargument*, 2020 WL 7360811 (Sup. Ct., N.Y. Cty. Dec. 15, 2020) ("*Trump III*").

In *Trump I*, the state court (Justice Arthur Engoron) ordered that: (i) Eric Trump had to appear to provide testimony in response to OAG's subpoena by no later than October 7, 2020; (ii) additional

examination of two outside lawyers representing the Trump Organization had to be conducted no later than October 23, 2020; and (iii) the Trump Organization and counsel had to produce documents in accordance with the court's rulings on various privilege assertions. *Trump I* at *1-2. Justice Engoron further provided that the court "will maintain jurisdiction over this special proceeding, and any of the parties may contact the Court in real time to obtain any necessary rulings as the depositions proceed." *Trump I* at *1. In *Trump II*, the court modified *Trump I* to require an outside lawyer to produce responsive documents for *in camera* review rather than to OAG in the first instance.[3] *Trump II* at *1. In *Trump III*, the court determined that communications with, and documents in the possession of, a certain "non-party, non-lawyer" were not privileged and must be produced together with a revised privilege log. *Trump III* at *3-4. The decision also set forth the legal standard to be applied going forward for any other documents for which the Trump Organization or others claim privilege under *United States v. Kovel*, 296 F.2d 918 (1961). *Trump III* at *3.

More recently, on September 2, 2021, Justice Engoron entered an order on the consent of OAG and the Trump Organization resolving numerous disputes concerning the Trump Organization's collection and production of documents in response to OAG's subpoenas. *See* Faherty Dec., Ex. C ("September 2021 Order"). Pursuant to the September 2021 Order, the Trump Organization was required to provide a report detailing its efforts to "preserve, collect, and produce hard-copy and electronic documents responsive to the OAG subpoenas," work diligently to comply with its production obligations, and if reasonably deemed necessary by OAG, appoint an independent third-party eDiscovery firm "to oversee the identification, collection, and review of electronically

---

[3] Justice Engoron made *in camera* rulings with respect to numerous privilege assertions, and the Trump Organization itself praised Justice Engoron's "careful and deliberate document-by-document rulings." *Id.*, Ex. E at 7 (NYSCEF Dkt. No. 293).

stored information" responsive to OAG's subpoenas.[4] *Id.* at 2.

Finally, Donald J. Trump, Donald Trump, Jr., and Ivanka Trump (collectively "Trump Respondents") submitted to Justice Engoron's continued exercise of jurisdiction in the NY Proceeding by filing a motion to quash testimonial subpoenas that OAG served on them last month. *Id.*, Ex. H. Justice Engoron has scheduled oral argument on that motion, and OAG's cross-motion to compel, for February 17, 2022. *Id.* at ¶ 11.

**B. Plaintiffs' Complaint**

In their complaint (Dkt. No. 1 ("Compl.")), Plaintiffs allege that the Attorney General violated their First, Fourth, and Fourteenth Amendment rights and that her conduct in pursuing the Investigation otherwise constitutes an abuse of process. More specifically, Plaintiffs allege that during her time as New York's Public Advocate in 2017 and while campaigning for Attorney General in 2018, the Attorney General tweeted and made public comments concerning Mr. Trump, including that "New Yorkers need a fighter who will take on Donald Trump…," Compl. ¶ 33, that "Trump 'should be scared' about her upcoming term," *id.* ¶ 42, and that she promised to "fight back" against "this illegitimate president," *id.* ¶ 48. Plaintiffs further allege that once elected, the Attorney General promised to "ensure that the man occupying the Oval Office is held accountable to … any and everything he has done." *Id.* ¶ 65. The complaint characterizes additional public statements issued by the Attorney General as targeting Mr. Trump; however, such statements concern litigation brought by OAG on behalf of the State of New York, such as the suit challenging the 2020 census count that was decided by the Supreme Court against the Trump Administration, *Department of Commerce v. New York*,

---

[4] On November 1, 2021, OAG advised the Trump Organization that OAG deemed it necessary to retain a third-party eDiscovery firm pursuant to the September 2021 Order, and the Trump Organization eventually complied with that request. *Id.*, Ex. G.

139 S. Ct. 2551 (2019). *See, e.g.,* Compl. ¶ 84 n. 65.

Despite acknowledging that they have previously "produced over 8 million pages of documents in response" to OAG's subpoenas during the course of the Investigation, *id.* ¶ 88, Plaintiffs seek to permanently enjoin the Investigation, or alternatively enjoin the Attorney General "from being involved in any manner in any civil or criminal actions against Plaintiffs." *Id.* at p.29.

## STANDARD OF REVIEW

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs bear the burden of establishing that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20; *Otoe Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014). The final two factors – the balance of the equities and the public interest – "merge when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18 Civ. 1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Plaintiffs contend that an injunction may be granted where the movant can show, in lieu of a likelihood of success on the merits, "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation." *See* Pls. MOL at 4. However, this alternative showing does not apply where, as here, the movant "challenge[s] 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" *Otoe Missouria Tribe*, 769 F.3d at 110 (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir.1989)); *see also Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 176-77 (2d Cir. 2020) (noting that "likelihood of success on the merits" must be shown when "governmental action taken pursuant to statute" is challenged); *Charter Commc'ns, Inc. v. Jewett*, No. 5:21-cv-959, 2021 WL 5332121, at *3 (N.D.N.Y. Nov. 16, 2021) (same).

Plaintiffs also ignore that by requesting an order requiring OAG to halt its Investigation or, in the alternative, requiring the Attorney General to recuse herself, *see* Pls. MOL at 2, they seek to "alter the status quo by commanding some positive act" – and, therefore, the higher standard for a mandatory injunction applies. *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995). Plaintiffs' contention that the injunction they request would simply "ensure the status quo is preserved," Pls. MOL at 23, is incorrect. A court must ascertain the status quo by looking at the "the last actual, peaceable uncontested status which preceded the pending controversy." *North Am. Soccer League, LLC v United States Soccer Fedn., Inc.*, 883 F3d 32, 37 (2d Cir 2018) (cleaned up). Here, the "last actual, peaceable uncontested status which preceded the pending controversy" was Plaintiffs' compliance with OAG's subpoenas in the long running Investigation, including Mr. Trump's voluntary production of his personal tax returns, and the filing of motions in the NY Proceeding to quash and compel enforcement of the recent subpoena served on Mr. Trump. Plaintiffs' request to enjoin the Investigation, which if granted would require OAG to take affirmative steps to halt the Investigation, clearly seeks to *alter* the status quo, not maintain it. Plaintiffs seeking a mandatory injunction to alter the status quo must show "a clear or substantial likelihood of success on the merits." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012); *see also North Am. Soccer League,* 883 F.3d at 37; *Tom Doherty Assocs.,* 60 F.3d at 34; *Parish v. Kosinski*, No. 517-cv-344, 2017 WL 11557866, at *6 (N.D.N.Y. May 2, 2017).

Finally, "bare allegations, without more, are insufficient for the issuance of a preliminary injunction." *Kadant, Inc. v. Seeley Mach., Inc.*, 244 F. Supp. 2d 19, 40 (N.D.N.Y. 2003) (quoting *Ivy Mar Co., Inc. v. C.R. Seasons Ltd.*, 907 F. Supp. 547, 558 (E.D.N.Y. 1995)).

## ARGUMENT

## I.    PLAINTIFFS FAIL TO DEMONSTRATE IRREPARABLE HARM

Demonstrating irreparable harm is "the single most important prerequisite for the issuance of

a preliminary injunction." *Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012). Irreparable harm requires showing that an "actual and imminent" injury will occur that "cannot be remedied if a court waits until the end of trial to resolve the harm." *Id.,* 468 F. App'x at 45. A bare assertion of a constitutional injury, without evidence "convincingly show[ing]" the existence of noncompensable damages, is insufficient to trigger a finding of irreparable harm. *KM Enters. v. McDonald*, 11-cv-5098, 2012 WL 540955, at *3 (E.D.N.Y. Feb. 16, 2012) (citing *Savage v. Gorski*, 850 F.2d 64, 68 (2d Cir. 1988)), *aff'd*, 518 F. App'x 12 (2d Cir. 2013).

As a threshold matter, Plaintiffs' attempt to establish irreparable harm is legally insufficient. Plaintiffs rely on mere conclusory allegations in their complaint that "politically-motivated investigations have violated their constitutional rights under the First, Fourth, and Fourteenth Amendments" and then assert "[i]rreparable harm must be presumed by law" based on these allegations. Pls. MOL at 7. Noticeably absent is any evidence in support of this assertion.[5] There is no sworn testimony from Mr. Trump or anyone else within the Trump Organization attesting to whether and how the Investigation is preventing Plaintiffs from engaging in any protected First Amendment activity, and it is not readily apparent, given Mr. Trump's frequent public statements and appearances, how Plaintiffs could plausibly establish any such chill.[6] Similarly, there is no evidence identifying other irreparable harm Plaintiffs are suffering as a result of the alleged abuse of process and violations of their Fourth and Fourteenth Amendment rights. This glaring omission is fatal to Plaintiffs' motion

---

[5] The Court's Local Rule 7.1(b) requires a "supporting affidavit when necessary to establish and provide factual and procedural background relevant to the motion" and, per rule 7.1(b)(2), any such "affidavit . . . must contain factual and procedural background that is relevant to the motion the affidavit supports." Plaintiffs' submission of a cursory attorney declaration that simply references and attaches the complaint violates these rules.

[6] *See, e.g.,* Newsweek, *Donald Trump Arrives for Texas Rally as Jan. 6 Probe Closes in on Family, Inner Circle*, January 29, 2022, available at https://www.newsweek.com/donald-trump-arrives-texas-rally-jan-6-probe-closes-family-inner-circle-1674306.

because they must "substantiate [their] allegations of irreparable harm with evidence" rather than bare allegations. *Chandler v. Graham*, No. 16-cv-0348, 2016 WL 4411407, at *2 (N.D.N.Y. Aug. 19, 2016); *see also Scarbrough v. Evans*, No. 909-cv-0850, 2010 WL 1608950, at *3 (N.D.N.Y. Apr. 20, 2010) (denying motion for preliminary injunction because "[p]laintiff's allegations, standing alone, are not sufficient to entitle him to preliminary injunctive relief"); *Purdie v. Supervisor, Admin. Mail Room, Auburn Corr. Facility*, No. 9:09-cv-951, 2010 WL 148639, at *4 (N.D.N.Y. Jan. 13, 2010) (same).

But even if Plaintiffs' bare allegations were sufficient to meet their evidentiary burden on this motion (they are not), they fall far short of establishing irreparable harm. Even liberally construed, the complaint does not identify which of Mr. Trump's viewpoints have been targeted or are in danger of being suppressed, what speech or other constitutionally protected activity Mr. Trump would otherwise engage in but cannot because of the Investigation, or for what protected speech the Investigation supposedly retaliates against him. *See, e.g.*, Compl. ¶ 120 (citing broadly to "Trump's political views, beliefs, and affiliations, and those acts he has taken in furtherance of his political career" which are "a form of political speech subject to constitutional protection."). Similarly, Plaintiffs fail to identify any aspect of the ongoing Investigation or the OAG subpoenas that has or will cause irreparable harm based on a purported abuse of process or violation of their due process or Fourth Amendment rights. Indeed, Plaintiffs' ongoing efforts in purported compliance with OAG's subpoenas to date, judicial supervision of those efforts by Justice Engoron, and Plaintiffs' failure to raise any of their federal claims in the NY Proceeding belies any notion that Plaintiffs have or will suffer any cognizable harm as a result of the Investigation, much less irreparable harm. And to the extent Mr. Trump claims he will suffer injury from having to testify under oath or produce documents in response to OAG's recent subpoena, such purported injury is purely speculative, rather than "actual and imminent," since the impact of any such evidence is uncertain without any evidentiary showing by Plaintiffs of what Mr. Trump will say under oath at any future examination or what documents he will produce. *Singas*, 468

F. App'x at 45.

Finally, the timing of Plaintiffs' action undermines any claim of irreparable harm. A delay in bringing suit "may, 'standing alone, . . . preclude the granting of preliminary injunctive relief,' because the 'failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (citations omitted); *see also Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985) ("Delay in seeking enforcement of [preliminary injunction] rights . . . tends to indicate at least a reduced need for such drastic, speedy action."). The Trump Organization waited years to bring this suit – doing so only after Mr. Trump's testimony was sought despite having produced since 2019 over 900,000 documents and brought in more than a dozen current and former employees for examination. Indeed, many of the statements Plaintiffs rely on as support for the Attorney General's purported "animus" are years old, including many that pre-date the start of the Investigation. *See, e.g.,* Compl. ¶¶ 16-17, 22-23, 27, 36-51. Plaintiffs' delay in initiating this lawsuit warrants denial of their preliminary injunction application. *See Citibank, N.A.*, 756 F.2d at 277 (ten-week delay in seeking injunction held to preclude relief); *Gidatex, S.r.L. v. Campeniello Imports, Ltd.*, 13 F. Supp. 2d 417, 419 (S.D.N.Y. 1998) (noting that "courts typically decline to grant preliminary injunctions in the face of unexplained delays").

## II. PLAINTIFFS HAVE NO CLEAR OR SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs' failure to submit any evidence in support of their motion beyond bare allegations similarly prevents them from satisfying the "likelihood of success" requirement. Plaintiff must do more than merely meet the "plausibility" pleading standard to establish a clear or substantial likelihood of success on the merits. S*ee Chandler*, 2016 WL 4411407, at *2 (denying request for preliminary injunction where plaintiff "failed to substantiate any allegations . . . to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims"); *Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17-

11

cv-0957, 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) (noting the standard required to prevail

on a motion for a preliminary injunction "is higher than one to overcome a motion to dismiss").

But even if Plaintiffs' bare allegations were considered "evidence" in support of their motion

(which they are not), they fail to establish a clear or substantial likelihood of success on the merits for

multiple reasons.

### A.  The Court Should Decline To Exercise Jurisdiction Over This Action In Deference To The Pending NY Proceeding

**First**, for the reasons set forth in detail in OAG's Memorandum of Law in Support of

Defendant's Motion to Dismiss (Dkt. No. 15) ("Def. MTD Br."), which is incorporated by reference

in the interests of brevity, the Court should abstain under any one of three abstention doctrines and

dismiss this action:

- Abstention under *Younger v. Harris*, 401 U.S. 37 (1971), is warranted because: (i) the NY Proceeding satisfies the circumstances for abstaining under *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) – it is both a civil enforcement proceeding and a civil proceeding that implicates New York's interest in enforcing the orders and judgments of its courts; (ii) the additional factors identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982), also weigh in favor of abstention because the NY Proceeding implicates an important state interest and affords Plaintiffs an adequate opportunity to raise their federal claims asserted here; and (iii) the narrow "bad faith" exception to *Younger* abstention does not apply because Plaintiffs cannot show that OAG has no reasonable expectation of obtaining a favorable outcome in the NY Proceeding. *See* Def. MTD Br. at Point I.A.

- Abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), is warranted because all of the factors weigh in OAG's favor:  (1) abstention would avoid piecemeal litigation; (2) the cases involve property under the state court's control; (3) the NY Proceeding was filed first (by 16 months) and this case is only in the initial pleading stage; (4) the state court forum is convenient, while this forum is inconvenient and has no apparent connection to the subject matter of the Investigation; (5) state law governs whether OAG's Investigation is lawful, an essential element of each of Plaintiffs' claims; and (6) the NY Proceeding is adequate to protect Plaintiffs' rights. *See* Def. MTD Br. at Point I.B.

- Abstention under *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), is warranted because Plaintiffs can satisfactorily resolve all of their federal claims in the NY Proceeding and their filing of this suit in this forum – far from where evidence, witnesses, and ongoing proceedings are located – smacks of forum shopping. *See* Def. MTD Br. at Point I.C.

**Second**, the Court should decline to exercise jurisdiction over Plaintiffs' claims under the *Rooker-Feldman* doctrine, which bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005); *see Kosachuk v. Selective Advisors Grp., LLC*, 827 F. App'x 58, 61 (2d Cir. 2020).

Here, the Trump Organization and Mr. Trump are state-court losers subject to *Rooker-Feldman*. The Trump Organization was a party to the September 2021 Order. Faherty Dec., Ex. D. Since at least 2020, when the NY Proceeding was commenced, the Trump Organization has been wholly owned by DJT Holdings Managing Member LLC, which was owned and controlled by The Donald J. Trump Revocable Trust, a trust created and operating under the laws of New York, of which Mr. Trump is the sole beneficiary. Faherty Dec. ¶ 9; *Trump v. Vance*, 977 F.3d 198, 203–04 (2d Cir. 2020) ("The Trump Organization is owned by The Donald J. Trump Revocable Trust, of which the President is the grantor and beneficiary.") Accordingly, Mr. Trump is a "state-court loser" along with the Trump Organization because they were "essentially one and the same," or "alter egos," at the time Justice Engoron entered the September 2021 Order. *Kosachuk*, 827 F. App'x at 61.

Moreover, this action invites the Court to reject the September 2021 Order compelling the Trump Organization to comply with ongoing subpoena obligations by expressly seeking "to immediately cease or, at a minimum, appropriately limit all ongoing investigations of Plaintiffs" (Compl. at p.29). *See Fernandez v. Turetsky*, No. 12-cv-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil*, 544 U.S. at 284). Nor does it matter that the specific claims raised here have not been raised by Plaintiffs in the NY Proceeding because a federal court is barred from considering claims, whether or not raised in state court, that assert injury based on a state court order and seek reversal of that order. *See Hensel v. City of Utica*, 6:15-cv-374, 2016 WL 1069673, at *4

(N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)). Accordingly, the *Rooker-Feldman* doctrine applies to bar this action. *See* Def. MTD Br. at Point II.

### B.  Plaintiffs' Claims Are Barred By *Res Judicata*

But even if the Court concludes that it should exercise jurisdiction over this action, it should nevertheless hold that Plaintiffs have no clear or substantial likelihood of success on the merits because the final orders in the NY Proceeding preclude them from challenging the validity of the Investigation, and in any event, their allegations do not plausibly infer that the Investigation is without any valid basis, regardless of motive, as the law requires.

Under New York law, the doctrine of *res judicata* applies where: (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.[7] *See Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 285 (2d Cir. 2000).

First, there were multiple final orders issued by Justice Engoron in the NY Proceeding that adjudicated on the merits the lawfulness of OAG's Investigation. *See, supra*, at 4-6. These orders were final and appealable court judgments that resolved discrete issues raised in the NY Proceeding in their entirety and therefore have preclusive effect. *See Matter of Abrams*, 62 N.Y.2d 183, 192 (1984).

Second, Mr. Trump was in privity with the Trump Organization at the time these final orders were issued by Justice Engoron because his interests were adequately represented by the Trump Organization and Eric Trump in the NY Proceeding (as well as by his own personal tax counsel), not least because Mr. Trump owns and controls the Trump Organization, *see Vance*, 977 F.3d at 203–04,

---

[7] Pursuant to 28 U.S.C. § 1738, the federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81 (1984); *see Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 87 (2d Cir. 2000).

and his interests are fully aligned with the interests of the Trump Organization and Eric Trump. *See NYP Holdings, Inc. v. McClier Corp.*, 83 A.D.3d 426, 427–28 (1st Dep't 2011); *Buechel v. Bain*, 97 N.Y.2d 295, 305 (2001) (finding privity between law firm partners and their former colleague); *Moon 170 Mercer, Inc. v. Vella*, 146 A.D.3d 537, 537 (1st Dep't 2017) (finding privity between tenant and guarantor); *see also Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir.1995) (holding privity "is a functional inquiry in which the formalities of legal relationships provide clues but not solutions."). Moreover, Mr. Trump shares counsel with the Trump Organization in this action and the NY Proceeding (Alina Habba, Esq.), an indication that their interests are aligned with respect to OAG's Investigation. *See Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 278 (1970) ("It is of singular significance that the two actions were prosecuted simultaneously by the same law firm.").

Third, the lawfulness of the Investigation that is the focus of Plaintiffs' complaint here was front and center in the NY Proceeding and was necessarily decided by Justice Engoron's orders. Justice Engoron compelled compliance with OAG's subpoenas pursuant to CPLR § 2308, which by its very terms required him to find that "[OAG's] subpoena[s] were *authorized*." CPLR § 2308 (b) ("If the court finds the subpoena was authorized, it shall order compliance…") (emphasis added).

Because Plaintiffs had a full and fair opportunity to litigate the proprietary of OAG's Investigation in the NY Proceeding, they are precluded from raising the claims they assert in this action, all of which require as a predicate finding that OAG's Investigation is without legal basis, *see, infra*, at 16-20. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).

### C. Plaintiffs Fail To Allege Facts That Plausibly Infer OAG's Investigation Is Without Legal Basis

Finally, even if Plaintiffs were not precluded from relitigating the bona fides of OAG's Investigation, their allegations are insufficient to state a claim. OAG is entitled to a presumption that it is acting in good faith when commencing an investigation and issuing administrative subpoenas. *See, e.g.*, *Anheuser-Busch*, 71 N.Y.2d at 332; *In re Roemer v. Cuomo*, 67 A.D.3d 1169, 1171 (3rd Dep't 2009);

*American Dental Coop.*, 127 A.D.2d at 280. Even in the absence of this legal presumption, Michael Cohen's congressional testimony alleging Plaintiffs improperly inflated asset valuations provides strong and compelling evidence of OAG's good-faith basis for the Investigation pursuant to Executive Law § 63(12). *See, supra*, at 3-4. And the substantial evidence uncovered by OAG during the course of the Investigation, *see* Faherty Dec., Ex. I, leaves no possible doubt that OAG has continued to pursue the Investigation in good faith to the present day. Because Plaintiffs have not plausibly alleged that OAG's Investigation is without a good faith basis, which is a necessary element for each of their causes of action (as discussed below), they have no clear or substantial likelihood of success. *See People v. Trump*, 62 Misc. 3d 500, 509 (Sup. Ct., N.Y. Cty. 2018) (rejecting motion to dismiss based on alleged appearance of partiality or bias by the Attorney General, and rejecting argument "that animus and bias were the sole motivating factors for initiating the investigation and pursuing this proceeding"); *accord Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d 679, 707 (S.D.N.Y. 2018) (finding Attorney General's public statements provide no basis to "infer an improper purpose" but instead suggest only that she "believes that an investigation is justified").

### 1)     *Plaintiffs Fail to State a First Amendment Claim*

To plead a First Amendment claim, a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury. *See Curley v. Village of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). Plaintiffs' allegations that OAG's subpoenas and Investigation are "pretextual" (Compl. ¶ 129) and motivated to harass Mr. Trump because of his political views and his official acts as President (*id.* ¶ 125) are not only conclusory and therefore entitled to no weight, *Ward v. New York University*, No. 99-cv-8733, 2000 WL 1448641, at *5 (S.D.N.Y. Sept. 25, 2000), but are also legally insufficient even if credited, *Hartman v. Moore*, 547 U.S. 250, 256-58 (2006) (holding that to challenge prosecutorial action as retaliatory, a plaintiff must plead and prove that the action was

independently unjustified). Moreover, while Plaintiffs argue that the Investigation is being conducted "to silence a political opponent" (Pls. MOL at 10), Plaintiffs do not identify which of Mr. Trump's viewpoints have been "silenced," or otherwise identify for what particular protected speech the Investigation supposedly retaliates against him. Plaintiffs do not allege any First Amendment injury resulting from the Investigation. *See, supra*, at 10.

In any event, there is "no support whatever" for the notion that an allegation of "wrongful purpose or motive" is enough to defeat a legally compliant action by law enforcement. *U.S. v. O'Brien*, 391 U.S. 367, 383 (1968) (cleaned up); *accord Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 652 (1994).

### 2) *Plaintiffs Fail to State a Fourth Amendment Claim*

Because the recipient of an administrative subpoena may challenge it in court before complying, such subpoenas are limited by the general reasonableness standard of the Fourth Amendment, not by the probable cause requirement. *See Donovan v. Lone Steer, Inc.*, 464 U.S. 408, 415 (1984); *NLRB v. Am. Med. Response, Inc.*, 438 F3d 188, 192-93 (2d Cir. 2006). Under this standard, "it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *U.S. v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Here, OAG has issued subpoenas within OAG's statutory authority to investigate. *See* Exec. Law § 63(12); *see also*, *supra*, at 4. Plaintiffs' contention that OAG's subpoenas "are unconstitutional in their own right since they are overly broad, irrelevant and unduly burdensome to Plaintiffs," Pls. MOL at 12, has no relevance to the applicable legal standard, and is also belied by Plaintiffs own conduct in having "produced over eight million pages of documents in response to [OAG's] subpoenas," *id.* at 3. Plaintiffs' theory of a Fourth Amendment violation is also based on an alleged "improper purpose," Compl. ¶ 139, but "motive is irrelevant … because [such] claim must be based on a showing that the search in question was objectively unreasonable," *Blue v. Koren*, 72 F.3d 1075, 1081 (2d Cir. 1995).

### 3)      *Plaintiffs Fail to State a Due Process Claim*

On their Fourteenth Amendment claim, Plaintiffs assert that they have a due process right not to be investigated by a law enforcement agency that they claim has disagreed with their political views. But due process does not require administrative prosecutors to be "entirely neutral and detached." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980) (cleaned up). Moreover, judicial review of prosecutorial discretion is particularly deferential at the investigative stage, during which a prosecutor must be able to "investigate . . . wrongdoing free from interference by the courts." *In re Grand Jury of S. Dist.*, 508 F. Supp. 1210, 1214 (S.D. Ala. 1980).

Similarly, Plaintiffs' allegations that the Attorney General is not a "disinterested prosecutor" because she discussed the ongoing Investigation with members of the press or private citizens, Compl. ¶¶ 96-98, are likewise insufficient to state a due process claim, especially when those same comments – taken in context, that the Attorney General could neither confirm nor deny a direct question about the Investigation, Compl. ¶ 98 – demonstrate a *lack* of prejudgment. Put simply, allegations of political disagreement cannot insulate the subject of an ongoing investigation from law enforcement activity. *See In re FDIC*, 58 F.3d 1055, 1062 (5th Cir. 1995) (holding political considerations could not establish "bad faith or improper behavior" by agency officials); *United States v. Peskin*, 527 F.2d 71, 86 (7th Cir. 1975) (holding that choosing an investigative target for "political prominence" or newsworthiness, would "not [be] an impermissible basis for selection").

Finally, Plaintiffs assert that the Investigation violates due process because OAG is "working alongside, cooperating with the Manhattan District Attorney" on a parallel criminal investigation for which two assistant attorneys general have been "cross designated" as special assistant district attorneys. Pls. MOL at 17. Citing *Matter of Haggerty v. Himelein*, 89 N.Y.2d 431 (1997), Plaintiffs argue that OAG's involvement in the criminal investigation is unlawful because there is no executive order from the Governor granting the Attorney General superseding authority. *Id.* at 18-19. *Haggerty* cuts

against Plaintiffs' position. In *Haggerty*, the court held that where, as here, the District Attorney retains ultimate prosecutorial authority and the Attorney General "simply agree[s] to assist the district attorney by furnishing Assistant Attorneys–General to work with him and under his direction," no executive order granting superseding authority is required. 89 N.Y.2d at 436-37. There is "no provision of law . . . prohibiting the Attorney–General from providing the services of Assistant Attorneys–General to aid a county District Attorney in the prosecution of a criminal matter," nor is there "any jurisdictional bar to the appointment of a member of the Attorney–General's staff as an Assistant District Attorney to perform prosecutorial duties under the direction of the District Attorney." *Id.*

Additionally, Plaintiffs' contention that New York courts recognize a stay is warranted when there are parallel criminal and civil proceedings, Pls. MOL at 19, is both irrelevant and wrong. As recognized by the case on which Plaintiffs themselves rely, "defendants' constitutional rights will not be impaired by the denial of a stay." *Brock v. Tolkow*, 109 F.R.D. 116, 119 (E.D.N.Y. 1985). Moreover, "[t]he law is clear that a court is not required to stay a civil action until a pending related criminal prosecution has been terminated so that a party can avoid the difficulty of choosing between presenting evidence in his or her own behalf and asserting his or her Fifth Amendment rights." *Matter of Campbell v New York City Transit Auth.*, 32 AD3d 350, 352 (1st Dep't 2006); *see also Fortress Credit Opportunities I LP v. Netschi*, 59 A.D.3d 250, 250 (1st Dep't 2009) (holding that "[t]he assertion of the privilege against self-incrimination is an insufficient basis for precluding [civil] discovery").

### 4)    Plaintiffs Fail to State a Claim for Abuse of Process

To prove malicious abuse of process under § 1983, courts look to state law. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir.1994). Under New York law, a plaintiff must show the defendant "(1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003).

In evaluating the third element, the Second Circuit expressly distinguishes between a "malicious motive" and an "improper purpose"; only the latter suffices to meet the "collateral objective" prong. *See Savino*, 331 F.3d at 77 (holding a plaintiff must establish defendant had an improper purpose in instigating the action, regardless of motive); *Curiano v. Suozzi*, 63 N.Y.2d 113, 117 (1984) ("A malicious motive alone ... does not give rise to a cause of action for abuse of process."). "The purpose for which the process is used, once it is issued, is the only thing of importance." Prosser, Torts, at 667–68 (2d ed. 1955) (quoted by *Weiss v. Hunna*, 312 F.2d 711, 717 (2d Cir.1963)). Accordingly, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his …prosecution," but must instead "claim that they aimed to achieve a collateral purpose beyond or in addition to his…prosecution." *Savino*, 331 F.3d at 77. Here, Plaintiffs allege no facts that would plausibly infer such a collateral purpose exists.

Nor have Plaintiffs made a sufficient showing of special damages as they acknowledge they must do. Pls. MOL at 20. While they allege in conclusory fashion that they have incurred the "costs of defense and attorneys [sic] fees . . . in defending against" OAG's Investigation (Compl. ¶155), they submit no proof in the form of affidavit testimony or other evidence establishing that they are actually paying such costs and fees.[8] *See Sadowy v. Sony Corp. of Am.*, 496 F. Supp. 1071, 1079 (S.D.N.Y. 1980) (holding that "the bare assertion that legal fees have been expended cannot suffice" to prove special damages).

---

[8] *See* The Washington Post, *GOP Agrees To Pay Up To $1.6 Million Of Trump's Legal Bills In N.Y. Probes*, December 16, 2021, available at https://www.washingtonpost.com/politics/republican-party-trump-legal-bills-new-york-probe/2021/12/16/08af4524-5c3f-11ec-9c0e-a955f8a009c1_story.html.

III.   **THE BALANCE OF EQUITIES TIPS SHARPLY IN FAVOR OF CONTINUING A WELL-SUPPORTED INVESTIGATION INTO FRAUD AND MISCONDUCT COMMITTED AGAINST FINANCIAL INSTITUTIONS AND THE GOVERNMENT**

Preliminary injunctive relief may be awarded only if "the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.") (quoting *Weinberger*, 456 U.S. at 312).

The public interest is served by having OAG continue its Investigation into allegations of fraud and misrepresentation in Mr. Trump's financial statements provided to financial institutions and the government. *See Mirka United, Inc. v. Cuomo*, No. 06-cv-14292, 2007 WL 4225487, at *4 (S.D.N.Y. Nov. 27, 2007) (holding New York has an important interest in "investigating and preventing fraudulent conduct"). In contrast, Plaintiffs' argument that the public would be better served by halting the Investigation rests entirely on the demonstrably false premise that the Investigation is unlawful. With more than ample justification, OAG commenced the Investigation in March 2019 after Michael Cohen testified regarding financial malfeasance by Mr. Trump and the Trump Organization, Faherty Dec. at ¶ 3, and OAG has since uncovered substantial evidence establishing numerous misrepresentations in Mr. Trump's financial statements provided to banks, insurers, and the Internal Revenue Service. *Id.*, Ex. I at, *e.g.*, ¶¶ 32-224.[9] Given this evidence, methodically collected by OAG during the Investigation, Plaintiffs' attempt to frame the public interest inquiry here as one centered on preventing abuse of power is untenable.

---

[9] Rule 105(u) of the New York Civil Practice Law and Rules "provides that a verified pleading may be utilized as an affidavit." *Everhome Mortg. Co. v. Aber*, 195 A.D.3d 682, 692–93 (2nd Dep't 2021).

## CONCLUSION

For all of the foregoing reasons, the Court should grant the Defendant's motion to dismiss the complaint in its entirety, along with any other relief the Court deems necessary and appropriate.

Dated:   New York, New York
         January 31, 2022

LETITIA JAMES
Attorney General of the State of New York

By: _____ /s/ Andrew S. Amer _____

Andrew S. Amer (admitted *pro hac vice*)
  Special Counsel
Colleen K. Faherty
  Assistant Attorney General
Kevin Wallace
  Senior Enforcement Counsel
28 Liberty Street
New York, New York 10005
(212) 416-6127/6046/6376
andrew.amer@ag.ny.gov
colleen.faherty@ag.ny.gov
kevin.wallace@ag.ny.gov

*Attorney for Defendant Letitia James, in her official capacity*