**HABBA MADAIO & ASSOCIATES LLP**
Alina Habba, Esq.
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120 Telephone:
(908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs,*
*Donald J. Trump and Trump Organization LLC*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DONALD J. TRUMP and TRUMP ORGANIZATION LLC, <br><br> Plaintiffs, <br><br> v. <br><br> LETITIA JAMES, in her official capacity as Attorney General for the State of New York, <br><br> Defendant. | Civil Action No.: 1:21-cv-01352-BKS-CFH |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
        -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120 Telephone:
(908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs,*
*Donald J. Trump and Trump Organization LLC*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES....................................................................................................................ii

PRELIMINARY STATEMENT...........................................................................................................1

ARGUMENT............................................................................................................................................1

    I.     Plaintiffs Are Continuing to Suffer Irreparable Harm..................................................1

    II.    Plaintiffs' Likelihood of Success on the Merits ............................................................4

    III.   Balancing of the Equities Favors Plaintiffs ..................................................................5

CONCLUSION........................................................................................................................................7

**TABLE OF AUTHORITIES**

*Cullen v. Fliegner*

  18 F.3d 96, 104 (1994)……………………………………………………………1

*Lore v. City of Syracuse*,

  No. 00-CV-1833-HGM-DEP, 2001 WL 263051 at *6 (N.D.N.Y. 2001)…………………1

*Elrod v. Burns*

  427 U.S. 347, 373 (1976)…………………………………………………………….1

*In re Nwamu*,

  421 F. Supp. 1361, 1366 (S.D.N.Y. 1976)……………………………….……...4

*Jolly v. Coughlin*

  76 F.3d 468, 482 (2d Cir. 1996)……………………………………………………...1

*Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984)

  748 F.2d 804, 806 (2d Cir. 1984)……………………………………………………1

*Mirka United, Inc. v. Cuomo*,

  2007 WL 4225487 (S.D.N.Y. 2007)……………………………………………...6

*North Am. Soccer League, LLC v United States Soccer Fedn., Inc.*,

  883 F3d 32, 37 (2d Cir 2018)……………………………………………………….3

*Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*,

  60 F.3d 27, 34 (2d Cir. 1995)………………………………………………………..2

*Tough Traveler, Ltd. v. Outbound Prods.*,

  60 F.3d 964 (2d Cir. 1995)………………………………………………………….4

*Young v. U.S. ex re. Vuitton et Fils S.A.*,

  481 U.S. 787, 807 (1987)……………………………………………………………6

## ARGUMENT

### I. Plaintiffs Have Suffered Irreparable Harm

The plaintiffs, Donald J. Trump and Trump Organization (collectively, "Plaintiffs") have, and will continue to, suffer irreparable harm at the hands of the defendant, Letitia James ("Defendant"), and her ongoing investigation which is nothing more than a calculated attempt to circumvent the United States Constitution and deprive Plaintiffs of their fundamental civil liberties.

It is well established that a violation of constitutional rights constitutes a *per se* irreparable harm. *See, e.g., Lore v. City of Syracuse*, No. 00-CV-1833-HGM-DEP, 2001 WL 263051 at *6 (N.D.N.Y. 2001) ("[I]t is clear that violations of First Amendment rights are commonly considered *per se* irreparable injuries"); *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the loss of First Amendment freedoms unquestionably constitutes irreparable injury); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) (finding that the district court properly relied on the presumption of irreparable injury that flows from a violation of constitutional rights to issue a preliminary injunction); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("[w]hen an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"). Further, in the context of a federal plaintiff seeking court intervention in a state-level investigation, "[a] showing of bad faith or harassment establishes irreparable injury for the purposes of the *Younger* doctrine." *Cullen v. Fliegner*, 18 F.3d 96, 104 (1994) (citing *Bishop v. State Bar of Texas*, 736 F.2d 292, 294 (5th Cir. 1984); *Shaw v. Garrison*, 467 F.2d 113, 119-121 (5th Cir. 1972)). As set forth in Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, which is incorporated by reference hereto, Plaintiff has thoroughly established that the bad faith exception to *Younger* applies in the instant action.

Noticeably, in her opposition, Defendant fails to address the substance of the allegations against her. Rather, she neglects the robust factual record which is stacked against her and dismisses it out of hand. As outlined in the Complaint, Plaintiff has set forth a litany of statements showing that Defendant's investigation is driven by malice and political animus. Among other things, she has

1

frequently referred to Trump as an "illegitimate president" and vowed to "fight against [him] and his harmful administration," *id.* ¶ 34; pledged to use the law as a "sword" against him and proclaimed that "no one is above the law, including this illegitimate president…and so I look forward to going into the office of Attorney General every day . . .suing him . . . and then going home!"  *id.* ¶ 36; promised to "use every area of the law to investigate [Trump] and his business transactions" and "anyone in [Trump's] orbit." *Id.* ¶ 56; and stated "we're definitely going to sue him. We're going to be a real pain in the ass. He's going to know my name personally," *id.* ¶ 56.

In Pla, in the alternative, requiring that Defendant recuse herself from being involved in any capacity in the Investigation. Defendant dismisses out of hand the alternative relief that she recuse herself from being involved in the Investigation, stating that doing so will "alter the status quo by commanding some positive act." Def. MOL at 8. It is telling that Defendant views her recusal as an act that she must be commanded to do and not one to which she would consent voluntarily as proposed by Plaintiffs in their motion. Plainly, the only explanation why Defendant refuses to consider this alternative is that she wants the public to continue to see her personally involved the Investigation for her political gain and aggrandizement at the expense of Defendant and his constitutional rights.

Defendant goes so far as to assert that Plaintiff is seeking injunctive relief that would require her to recuse herself and the OAG to halt the Investigation which would "alter the status quo by commanding some positive act" – and, therefore, the higher standard for a mandatory injunction should apply, citing *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995); and *North Am. Soccer League, LLC v United States Soccer Fedn., Inc.*,  883 F3d 32, 37 (2d Cir 2018).

Both these cases are readily distinguishable because the injunctive relief sought here merely seeks a temporary cessation of the Investigation without requiring any affirmative action on the part of Defendant or OAG – not a mandatory injunction as was at issue in those cases. Courts refer to preliminary injunctions as prohibitory or mandatory. Prohibitory injunctions maintain the status quo

2

pending resolution of the case; mandatory injunctions alter it. *North Am. Soccer League, supra*, at 36. As clear from the illustrative cases discussed below, Plaintiffs are requesting this Court to grant a mandatory injunction as no affirmative conduct on the part of Defendant to alter the status quo is being sought in the injunctive relief requested.

In *Tom Doherty Assocs., supra*, at 34-35, the court held that higher standard for a mandatory injunction is applicable when the requested injunction would provide the plaintiff with all the relief that is sought and also could not be undone by a judgment favorable to defendant on the merits at trial. In that case, the court considered injunctive relief sought by plaintiff to alter the status quo to require defendant to license plaintiff the right to publish a juvenile storybook. Such relief, if granted, could not be undone if defendant prevailed on the merits at trial. The District Court entered a preliminary injunction which was affirmed by the Second Circuit. Here, such mandatory relief which cannot be undone if defendant prevails on the merits at trial is not an issue.

As for the decision in *North Am. Soccer League, supra,* at 37, Defendant argues pursuant to that decision a court must ascertain the status quo by looking at the "thelast actual, peaceable uncontested status which preceded the pending controversy" as part of its analysis under the heightened standard for a mandatory injunction. Def. MOL at 8. In that case, NASL sought a drastic permanent change in its business relationship with USSF regarding Federation-league sanctioning framework that had been renewed for years at the end of each season of play. This yearly renewal performed for years was "the last actual, peaceable uncontested status which preceded the pending controversy" considered by the court as the parties' pre-controversy position vis-à-vis the other, *Id.* at 38, as to whether a mandatory injunction was warranted. Here, Defendant is seeking to have this Court equate that years-long business relationship with 34 months of discovery by Plaintiffs. These are not at all comparable and, consequently, the injunctive relief sought here is merely prohibitory.

Defendant also argues that injunctive relief should not be available to Plaintiffs because of the delay in seeking an injunction undermines any claim of irreparable harm, citing *Tough Traveler, Ltd. v.*

3

*Outbound Prods.*, 60 F.3d 964 (2d Cir. 1995). In that case, unlike here, plaintiff had waited at least nine months after discovering the competing product before filing a complaint and then had delayed another four months before moving for a preliminary injunction. *Id.* at 968.

Here, the situation is starkly different. For the past 34 months Plaintiffs have cooperated with the Investigation conducted by Defendant's office during which time Plaintiffs have produced over 900,000 documents and brought in more than a dozen current and former employees to testify. Throughout that time, Plaintiffs exhausted all possible avenues of recourse against Defendant, including the filing of JCOPE complaint, ethics complaints, and motions to quash, all the while the Defendants demands for discovery grew progressively become more unreasonable and burdensome. Frankly, it defies logic to imply that Plaintiffs' compliance with a state-led investigation is somehow an admission that the investigation is legitimate. Indeed, compliance of this sort does not waive or endanger their ability to challenge the legitimacy of the investigation. It is well established under New York law, that compliance with the demands of a subpoena is compulsory, not consensual, since it is *required by law. See United States v. Simmonds*, 641 F. App'x 99, 104 (2d Cir. 2016) ("[W]here consent is granted only in submission to a claim of lawful authority, the consent is not considered voluntary."); *see also In re Nwamu*, 421 F. Supp. 1361, 1366 (S.D.N.Y. 1976) (finding compliance with a subpoena mere "acquiescence to a claim of lawful authority," not a "voluntary" consent to search.). Therefore, Plaintiffs have not delayed in the slightest and, rather, have diligently pursed all avenues to contest the baseless investigation.

Accordingly, Defendant's bad faith investigation is a continuing violation of Plaintiff's constitutional rights and, therefore, constitutes irreparable harm *per se*.

II.     **Plaintiffs' Likelihood of Success on the Merits**

In Defendant's opposition, she puts forth numerous arguments as to Plaintiffs' likelihood of success on the merits but, in doing so, she defers to her 30-page Memorandum of Law in Support of Defendant's Motion to Dismiss which states is "incorporated by reference." Def. Memo. at 12. In

4

response to these arguments—*Younger*, *Colorado River*, *Wilton*, *Rooker Feldman*, res judicata, and the merits of Plaintiffs' various claims—Plaintiffs will similarly rely upon their Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF Dkt. No. 21).

### III. Balancing of the Equities Favors Plaintiffs

Defendant's argument that the public would be better served by having her unfounded based on her bald assertion that it is "lawful" is a circular, self-serving argument which holds no weight. Defendant is an elected official who has a duty to place the public's interest above her own. As her actions have shown, that has not been the case and she must not be countenanced by this Court. As noted by the Supreme Court, "if a prosecutor uses the expansive prosecutorial powers to gather information for private purposes, the prosecutorial function has been seriously abused even if, in the process, sufficient evidence is obtained to convict a defendant." *Young v. U.S. ex re. Vuitton et Fils S.A.*, 481 U.S. 787, 811 (1987). In light of Defendant's conduct in pursuing a political agenda at the expense of Plaintiffs' basic constitutional rights, the balance of the equities to be considered in evaluating Plaintiffs' motion for injunctive relief is undoubtedly on the side of Plaintiffs.

Furthermore, Defendant's reliance on *Mirka United, Inc. v. Cuomo*, 2007 WL 4225487 (S.D.N.Y. 2007) is misplaced as the plaintiff in that matter sought a declaration that certain seizures by the OAG made during the course of a grand jury investigation pursuant to search warrants executed by a New York Supreme Court Justice were unconstitutional. These facts are clearly distinguishable from the instant action, which involves a years-long tirade against Plaintiffs which has resulted in significant prejudice and constitutional harm.

In opposing Plaintiffs' motion for injunctive relief Defendant maintains that she has uncovered "substantial evidence" establishing numerous misrepresentations in Plaintiff's financial statements provided to banks, insurers, and the Internal Revenue Service. Def. MOL at 21. Yet, Defendant fails to mention that, on the same day the OAG filed its Petition with the supposed "substantial evidence," it simultaneously released a press statement wherein it admitted that, despite

5

their onerous and burdensome investigation of Trump, his family and his businesses which has relentlessly carried on for more than *two years*, the OAG "has not yet reached a final decision" as to whether its findings "merit legal action."[1] Similarly, the OAG acknowledged that it "has reached no conclusions in this matter, and the investigation remains ongoing." *Id.* This investigation has purportedly been conducted in the public interest; however, the reality is that Defendant has wasted public taxpayer money in pursuit of her own political goals and in the hopes of promoting her own career and confirming her campaign rhetoric that she would 'take down' Plaintiffs.

Plaintiff is constitutionally entitled to a disinterested prosecutor and, instead, Defendant has an unabashed political bias against Plaintiffs. *See Marshall v. Jericho, Inc.*, 446 U.S. 238, 249-250 (1980) (noting that due process prohibits a prosecutor from "injecting a personal interest, financial or otherwise, into the enforcement process."); *see also Young v. U.S. ex re. Vuitton et Fils S.A*, 581 U.S. 787, 807 (1987) (stating that a "disinterested prosecutor," or one who is not "influenced by improper motives," is required by due process); *Berger v. United States*, 295 U.S. 78, 88 (1935) ("It is as much [the prosecutor's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."). Furthermore, Defendant's unauthorized participation in the Manhattan District Attorney's criminal proceedings exceeds the clearly delineated statutory authority of the Office of the Attorney General.

Taken as a whole, Defendants actions offend all prosecutorial standards and ethics, are based in a prejudicial and biased application of the law, and severely deprive Plaintiffs of their rights under the First, Fourth and Fourteenth Amendment. As a result, there is no question that the balance of the equities weighs heavily in favor of Plaintiffs.

---

[1] "Attorney General James Takes Action to Force Donald J. Trump, Donald Trump Jr., and Ivanka Trump to Comply with Ongoing Investigation into Trump Organization's Financial Dealings," January 18, 2022, https://ag.ny.gov/press-release/2022/attorney-general-james-takes-action-force-donald-j-trump-donald-trump-jr-and.

## CONCLUSION

For the foregoing reasons, Plaintiffs, Donald J. Trump and Trump Organization LLC, respectfully requests this Court grant its motion.

Dated: February 16, 2022
      New York, New York

Respectfully submitted,

_____
Alina Habba, Esq.
**HABBA MADAIO & ASSOCIATES LLP**
1430 U.S. Highway 206, Suite 240
Bedminster, New Jersey 07921
    -and-
112 West 34th Street, 17th & 18th Floors
New York, New York 10120
Telephone (908) 869-1188
Facsimile: (908) 450-1881
E-mail: ahabba@habbalaw.com
*Attorneys for Plaintiffs,*
*Donald J. Trump and Trump Organization LLC*