# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF NEW YORK

DONALD J. TRUMP and TRUMP
ORGANIZATION LLC,

<em>Plaintiffs</em>,

v.

LETITIA JAMES, in her official capacity
as Attorney General for the State of New
York,

<em>Defendant</em>.

Case No. 1:21-cv-1352 (BKS)(CFH)

# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF DEFENDANT'S MOTION TO DISMISS

LETITIA JAMES
   *Attorney General*
   *State of New York*
28 Liberty Street
New York, NY  10005

*Attorney for Defendant Letitia James, in her*
*official capacity*

Andrew S. Amer,
 Special Counsel
Colleen K. Faherty,
 Assistant Attorney General
Kevin Wallace,
 Senior Enforcement Counsel

*of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

ARGUMENT.......................................................................................................................2

1.  THE NARROW BAD FAITH EXCEPTION TO *YOUNGER* DOES NOT
    APPLY.................................................................................................................2

2.  PLAINTIFFS MISAPPLY ALL OF THE *COLORADO RIVER* FACTORS ...............4

3.  *WILTON* APPLIES WHERE, AS HERE, PLAINTIFFS SEEK
    DECLARATORY AND INJUNCTIVE RELIEF.................................................6

4.  PLAINTIFFS' EFFORT TO NULLIFY STATE COURT ORDERS
    COMPELLING THEIR COMPLIANCE WITH OAG SUBPOENAS IS
    PRECLUDED BY THE *ROOKER-FELDMAN* DOCTRINE.......................................7

5.  JUSTICE ENGORON'S ORDERS HAVE PRECLUSIVE EFFECT...........................8

6.  PLAINTIFFS' ALLEGATIONS DO NOT REASONABLY IMPLY OAG'S
    INVESTIGATION IS UNLAWFUL.................................................................9

CONCLUSION.................................................................................................................10

TABLE OF AUTHORITIES

**Cases**

*Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988) ....................................4

*Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205 (2d Cir. 1985) ............5

*Brunswick Hosp. Center, Inc. v. Hynes*, 52 N.Y.2d 333 (1981) ............................................9

*Clay v. Schwebler*, No. 13-cv-1314, 2015 WL 6438919 (N.D.N.Y. Oct. 22, 2015) ..................10

*Cullen v. Fliegner*, 18 F.3d 96 (2d Cir. 1994) ...................................................................3

*De Cisneros v. Younger*, 871 F.2d 305 (2d Cir. 1989).........................................................5

*Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191 (2d Cir. 2002) ................................4

*Dick v. City of New York*, 11 A.D.3d 239 (1st Dep't 2004).................................................9

*Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357 (2d Cir. 2003) .........................................7

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ............................8

*Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk County*, 805 F.3d 425 (2d Cir. 2015)...........................................................................................................2

*Fals-Stewart v. Connors*, No. 07-cv-0225, 2007 WL 9777970 (W.D.N.Y. Aug. 27, 2007).........9

*Hartman v. Moore*, 547 U.S. 250 (2006) .....................................................................10

*Johnson v. D.A. Off., Staten Island*, No. 18-cv-1205, 2018 WL 1135475 (E.D.N.Y. Feb. 28, 2018).........................................................................................................................2

*Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88 (2d Cir. 2013)...........................................................................................................................7

*Kelley C. ex rel. Serina C. v. Kim M.*, 278 A.D.2d 893 (4th Dep't 2000) ..............................9

*Low v. Trump University*, LLC, 881 F.3d 1111 (9th Cir. 2018) .........................................3

*Matter of Abrams*, 62 N.Y.2d 183 (1984)......................................................................8

*Matthews v. Barr*, 927 F.3d 606 (2d Cir. 2019) ..............................................................7

*Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84 (2d Cir. 2012)...........................................................................................................................7

*People v. Trump*, 66 Misc. 3d 200 (Sup. Ct., N.Y. Co. 2019)............................................4

*Popovic v. United States*, 997 F. Supp. 672 (D. Md. 1998), *aff'd*, 175 F.3d 1015 (4th Cir. 1999) .............10

*Schorr v. DoPico*, 686 F. App'x 34 (2d Cir. 2017)..........................................................................................4

*SEC v. O'Brien,* 467 U.S. 735 (1984) ...........................................................................................................10

*Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69 (2013) ...................................................................................2

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950) ...............................................................................10

**Statutes**

N.Y. CPLR § 2308.......................................................................................................................................... 4, 9

## PRELIMINARY STATEMENT

The premise of Plaintiffs' entire case is that OAG's Investigation has no legitimate basis and is being pursued in retaliation for Mr. Trump's political views.[1] As established in the Attorney General's opening brief, the good-faith basis for commencing and continuing the Investigation is beyond reproach; Justice Engoron already determined that the Investigation was lawful, and substantial evidence gathered from the Investigation – described in detail in OAG's 113-page supplemental petition filed in the NY Proceeding (which Plaintiffs ignore) – provides ample justification for compelling compliance with OAG's subpoenas. And if these undisputed facts were not sufficient to warrant dismissal of Plaintiffs' case, two recent developments put the matter to rest.

On February 9, 2022, Mazars USA LLP, Plaintiffs' longtime accountants who prepared Mr. Trump's financial statements that are the focus of OAG's Investigation, determined that the statements covering the period 2011 to 2020 "should no longer be relied upon" and that Plaintiffs "should inform any recipients thereof" that they "should not be relied upon." Reply Declaration of Colleen K. Faherty, dated February 23, 2022 ("Faherty Reply Dec."), Ex. A at 1. And on February 17, 2022, Justice Engoron issued a decision and order in the NY Proceeding denying Mr. Trump's motion to quash OAG's subpoena seeking his documents and testimony and granting OAG's cross-motion to compel compliance ("February 17 Decision"). *Id.*, Ex. B at 8. Most relevant here, Justice Engoron reaffirmed his earlier ruling that the Investigation "was lawful," and held, after reviewing all of the same public statements by the Attorney General that Plaintiffs rely on here, that "OAG has a sufficient basis for continuing its investigation, which undercuts the notion that this ongoing investigation is based on personal animus, not facts and law," and that the failure of OAG to investigate "would have been a blatant dereliction of duty." *Id.*, Ex. B at 2, 6; Ex. C at 25-31 (discussing the same public

---

[1] This reply memorandum of law uses the same defined terms as those used in the Memorandum of Law in Support of Defendant's Motion to Dismiss (Dkt. No. 15) ("Def. MOL").

statements by the Attorney General that Plaintiffs rely upon here).

But the Court need not delve into the bona fides of the Investigation to conclude that this action should be dismissed. Plaintiffs offer no justification for why they commenced this action at this late date in this forum, rather than raising their claims in the ongoing NY Proceeding. It is hard to imagine a stronger case for abstention in deference to a pending state court action than the one presented here. This action should be seen for what it is – blatant forum shopping by state-court losers to collaterally attack unfavorable state court orders, including one to which the Trump Organization consented. In his press release immediately following the February 17 Decision, Mr. Trump made clear his disdain for the NY Proceeding: "I can't get a fair hearing in New York because of the hatred of me by Judges and the judiciary. It is not possible!" *Id.*, Ex. D. The Court should not countenance Plaintiffs' forum-shopping tactics.

## ARGUMENT

### 1.  The Narrow Bad Faith Exception To *Younger* Does Not Apply

Plaintiffs do not dispute that the NY Proceeding satisfies two of the circumstances described in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). Instead, they argue that the bad faith exception to *Younger* recognized in *Falco v. Justices of the Matrimonial Parts of Supreme Court of Suffolk County*, 805 F.3d 425, 427 (2d Cir. 2015), applies. *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Dkt. No. 21) ("Pls. MOL") at 5-11. The narrow bad faith exception to *Younger* has hardly ever been applied, *see Johnson v. D.A. Off., Staten Island*, No. 18-cv-1205, 2018 WL 1135475, at *2 (E.D.N.Y. Feb. 28, 2018), and should not be applied here.

First, Plaintiffs argue that the Attorney General had no reasonable expectation of obtaining a favorable outcome "when she commenced her investigation against Plaintiffs." Pls. MOL at 5. It is unclear how the "reasonable expectation of a favorable outcome" prong of the bad faith exception could ever apply to an *investigation* that has no "outcome" (as opposed to a court action), so Plaintiffs'

2

formulation of the inquiry makes no sense. The proper inquiry is whether OAG had a reasonable expectation of a favorable outcome *in the NY Proceeding* when it commenced that action. *See Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994). There can be no real dispute that OAG reasonably expected a favorable outcome because that is precisely what it has repeatedly obtained, including last week when Mr. Trump was ordered by Justice Engoron to comply with OAG's subpoena. *See* Def. MOL at 4-6; Faherty Reply Dec., Ex. B at 8. As Justice Engoron aptly noted in the February 17 Decision: "In the final analysis, [the] Attorney General commences investigating a business entity, *uncovers copious evidence of possible financial fraud*, and wants to question, under oath, several of the entities' principals, including its namesake. She has the clear right to do so." *Id.* at 8 (emphasis added).

Second, Plaintiffs also argue that the narrow bad faith exception applies because OAG commenced the Investigation for a "retaliatory, harassing and bad faith purpose." Pls. MOL at 8. But it is undisputed that OAG commenced the Investigation based on Michael Cohen's Congressional testimony disclosing regular use of inflated asset valuations to obtain financial benefits for the Trump Organization. As Justice Engoron recently found when ordering Mr. Trump to comply with OAG's subpoena, "[f]or OAG not to have investigated [the Trump Organization], and not to have subpoenaed [Mr. Trump], would have been a blatant dereliction of duty" in light of the "sworn congressional testimony by former Trump associate Michael Cohen that [Plaintiffs] were 'cooking the books.'" Faherty Reply Dec., Ex. B at 6. Moreover, Justice Engoron expressly determined that "the impetus for the investigation was not personal animus" or any other ill motive on the part of Attorney General James, noting that "Donald J. Trump was hardly a stranger to" OAG investigations – "predecessors had investigated Donald J. Trump's 'University' and 'Foundation' and achieved significant settlements both times." *Id.* at 4, 6.[2] These determinations are binding on Plaintiffs for the

---

[2] A 2013 civil investigation against Trump University for fraud led to a 2016 settlement involving payments totaling $25 million. *Low v. Trump University*, LLC, 881 F.3d 1111, 1114-15 (9th Cir. 2018). Another civil investigation led to a 2018 enforcement action that resulted in the dissolution of The

same reason that prior orders in the NY Proceeding have preclusive effect, *see* Def. MOL at 23-26.

"[A] state proceeding that is legitimate in its purposes," like the NY Proceeding, "will not warrant the application of the bad faith exception." *Schorr v. DoPico*, 686 F. App'x 34, 37 (2d Cir. 2017) (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002)).

### 2. Plaintiffs Misapply All Of The *Colorado River* Factors

Plaintiffs erroneously rely on *Alliance of American Insurers v. Cuomo*, 854 F.2d 591 (2d Cir. 1988), to support their contention that the NY Proceeding is not a parallel state court action as required for *Colorado River* abstention. *Alliance* is simply inapplicable, however, given the facts of this proceeding. In that case, the court held that two pending state court actions were not parallel proceedings under *Colorado River* because: (i) the plaintiffs before the court were "not participants in the state cases, and conversely" the plaintiff in the state cases was "not a plaintiff" in the federal case; and (ii) "the issues engendered in the state actions [were] dissimilar to those presented" in the federal case. 854 F.2d at 603. Here, Plaintiffs are parties to the NY Proceeding and both actions involve the lawfulness of OAG's Investigation.

Plaintiffs' contention that this action and the NY Proceeding involve "separate issues" because the NY Proceeding involves the "enforceability" of OAG's subpoenas while this action involves "issues that are constitutional in nature" is a distinction without a difference. Pls. MOL at 13. The enforceability of OAG's subpoenas before the state court in the NY Proceeding encompasses the same question as the lawfulness of OAG's Investigation that Plaintiffs are raising here; to compel compliance with subpoenas pursuant to CPLR § 2308 in the NY Proceeding, the state court must find that the "subpoena[s] were *authorized*," *i.e.*, that they are part of a lawful investigation. CPLR § 2308 (b) ("If the court finds the subpoena was authorized, it shall order compliance…") (emphasis

---

Donald J. Trump Foundation. *See People v. Trump*, 66 Misc. 3d 200, 201-05 (Sup. Ct., N.Y. Co. 2019).

added). And the absence in the NY Proceeding of Plaintiffs' constitutional claims raised here is solely by Plaintiffs' design, not necessity. The New York Supreme Court is a court of plenary jurisdiction, competent to hear and decide constitutional claims in a challenge to a subpoena, *see* Def. MOL at 14-15, as evidenced by Mr. Trump's own decision to raise an Equal Protection Clause claim in support of his failed motion to quash in the NY Proceeding, *see* Faherty Reply Dec., Ex. C at 23 (arguing OAG's Investigation is in violation of "the Equal Protection Clauses of the Federal and New York States [sic] Constitutions and requires that the subpoenas be quashed"). Accordingly, Mr. Trump's contention that issues "that are constitutional in nature" cannot "be appropriately raised in an Article 4 special proceeding," Pls. MOL at 13, is demonstrably wrong.

Plaintiffs' analysis of the remaining *Colorado River* factors is similarly unpersuasive. The parallel actions here are a classic case of "piecemeal litigation" that *Colorado River* abstention is intended to avoid. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985). Plaintiffs have purposely chosen to split their claims between the two actions, asserting some state and federal constitutional arguments in the NY Proceeding and other state and federal constitutional arguments here, giving rise to the possibility of "inconsistent and mutually contradictory determinations." *De Cisneros v. Younger*, 871 F.2d 305, 308 (2d Cir. 1989) (cleaned up).

As to the factor that considers jurisdiction over a *res*, the NY Proceeding has assumed control over the Trump Organization's production of documents maintained in the company's New York City office, including Mr. Trump's own documents that Justice Engoron has now compelled him to produce. *See* Defs. MOL at 6-7; Faherty Reply Dec., Ex. B at 8. Plaintiffs' arguments concerning the order of filing, relative progress made, and the forums' convenience defy all logic. Plaintiffs assert it does not matter that the NY Proceeding pre-dates this action by 18 months because OAG "has made little headway in concluding its investigation." Pls. MOL at 15. But the undisputed record confirms that the Trump Organization has: (i) produced many current and former employees and agents for

examination under oath; (ii) eventually produced over 900,000 documents; and (iii) continues to produce documents under the supervision of the New York court, which has now compelled Mr. Trump to produce documents and appear for examination. Beyond that, OAG's 113-page supplemental petition with hundreds of supporting exhibits establishes that OAG has "uncover[ed] copious evidence of possible financial fraud." Faherty Reply Dec., Ex. B at 8. OAG has indeed made substantial "headway" in the Investigation aided by the NY Proceeding.

Equally puzzling is Plaintiffs' reliance on the pandemic and virtual appearances to suggest there is nothing inconvenient about the Northern District. The pandemic restrictions in New York are easing, all of the attorneys in this case have offices in (and therefore presumably live near) New York City, and the Court already scheduled an *in-person* Rule 16 Initial Conference for March 21, 2022 in Albany, although it was recently adjourned without date pending the resolution of this motion, *see* Dkt. Nos. 2, 20. Plaintiffs fail to articulate any justification for filing this case in the Northern District.

Finally, Plaintiffs' arguments on the remaining two factors are also without merit. As for consideration of which law – state or federal – provides the rule of decision on the merits, Plaintiffs ignore that the state law inquiry is paramount here because whether OAG's Investigation is lawful is a necessary element for each of Plaintiffs' causes of action in this case that must be determined under New York law. Def. MOL at 26-27. Nor can Plaintiffs be heard to dispute that the NY Proceeding is adequate to protect Plaintiffs' rights. They both previously invoked the state court's jurisdiction in the NY Proceeding to protect their rights in response to OAG's subpoenas, and Mr. Trump had no difficulty raising in state court (albeit unsuccessfully) "issues that are constitutional in nature" (Pls. MOL at 13) – namely, his selective prosecution equal protection claim.

### 3. *Wilton* Applies Where, As Here, Plaintiffs Seek Declaratory And Injunctive Relief

As the Second Circuit has squarely held, the assertion of injunctive relief in addition to declaratory relief does not foreclose the application of *Wilton* abstention. *See Dow Jones & Co. v. Harrods*

*Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003). Plaintiffs contend *Dow Jones* is no longer good law because two more recent Second Circuit decisions – *Kanciper v. Suffolk Cty. Soc'y for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88 (2d Cir. 2013), and *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84 (2d Cir. 2012) – purportedly establish that *Wilton* does not apply to cases involving claims for injunctive relief. Pls. MOL at 17. Putting aside that the panels in *Kanciper* and *Niagara Mohawk* were bound to follow the holding in *Dow Jones*,[3] those later two decisions are not in conflict with *Dow Jones*. In both *Kanciper* and *Niagara Mohawk*, the court declined to apply *Wilton* because the plaintiff was also seeking *damages*, which is not the case here. *Kanciper*, 722 F.3d at 93 (holding *Wilton* did not apply because plaintiff was seeking damages caused by defendant's conduct); *Niagara Mohawk*, 673 F.3d at 106 (same).

**4.   Plaintiffs' Effort To Nullify State Court Orders Compelling Their Compliance With OAG Subpoenas Is Precluded By The *Rooker-Feldman* Doctrine**

Plaintiffs do not dispute that they are state-court losers subject to the *Rooker-Feldman* doctrine. Rather, they maintain the doctrine does not apply because they are not collaterally attacking in this action the orders issued by Justice Engoron in the NY Proceeding. Pls. MOL at 19. But they are. The relief they seek in this case is a preliminary and permanent injunction barring OAG from proceeding with the Investigation. Such relief, if granted by this Court, would conflict with Justice Engoron's orders compelling Plaintiffs' compliance with OAG's subpoenas, including the September 2021 Order – consented to by the Trump Organization and pursuant to which the Trump Organization continues to produce documents under court supervision – and the recent February 17 Decision requiring Mr. Trump to produce documents by March 3, 2022, and appear for a deposition by March 10, 2022. Plaintiffs are most definitely "inviting district court review and rejection" of Justice

---

[3] *See Matthews v. Barr*, 927 F.3d 606, 614 (2d Cir. 2019) ("In our Circuit, panels are 'bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of our Court or by the Supreme Court.'") (cleaned up).

Engoron's prior orders enforcing OAG's subpoenas, which is precisely what the doctrine prevents. *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 281 (2005).

Plaintiffs also argue that Justice Engoron's orders are not "final" as required by the doctrine, but that argument is wrong. These orders are final and appealable court judgments that resolved discrete issues raised in the NY Proceeding in their entirety. *See Matter of Abrams*, 62 N.Y.2d 183, 192 (1984). Notwithstanding what they argue in their brief, Plaintiffs concede by their conduct that Justice Engoron's orders are final and appealable; during oral argument on Mr. Trump's motion to quash in the NY Proceeding, his lawyer made clear that Mr. Trump intended to take an immediate appeal from any adverse decision. Faherty Reply Dec., at ¶ 6.

### 5. Justice Engoron's Orders Have Preclusive Effect

As demonstrated in the Attorney General's opening brief, Plaintiffs' complaint fails to state a claim because Plaintiffs are barred by *res judicata* from establishing that OAG's Investigation is unlawful, which is a necessary element of each of their causes of action. *See* Def. MOL at 23-26. Indeed, since that initial brief, Justice Engoron again determined (with preclusive effect) based on his "*in camera* review of the thousands of documents responsive to OAG's prior subpoenas ... [that] OAG has a sufficient basis for continuing its investigation, which undercuts the notion that this ongoing investigation is based on personal animus, not facts and law." Faherty Reply Dec., Ex. B at 5.

Plaintiffs argue that *res judicata* cannot apply because the NY Proceeding "has yet to even issue a final adjudication as to the limited discovery issues before it," Pls. MOL at 21, and they did not have a full and fair opportunity to litigate their claims. Tellingly, Plaintiffs do not (because they cannot) dispute that their interests were adequately represented in the NY Proceeding – indeed, both the Trump Organization and Mr. Trump are parties to the state court action – and that at no point did they appeal any of Justice Engoron's prior orders, which necessarily found that OAG's investigation was lawful. Faherty Reply Dec., Ex. B at 2 (noting the court's prior determination that

"OAG's investigation, undertaken pursuant to New York executive Law § 63(12), was lawful."). Moreover, as stated above, Plaintiffs concede by their stated intent to file an immediate appeal from the February 17 Decision that the prior orders in the NY Proceeding were final appealable judgments that have preclusive effect. *See, supra*, at 8. Plaintiffs' failure to appeal the prior orders – and concession now that those orders were appealable – precludes them from relitigating the lawfulness of the Investigation. *See, e.g., Brunswick Hosp. Center, Inc. v. Hynes*, 52 N.Y.2d 333, 339 (1981); *Dick v. City of New York*, 11 A.D.3d 239, 240 (1st Dep't 2004) (holding failure to appeal gives rise to finality); *Kelley C. ex rel. Serina C. v. Kim M.*, 278 A.D.2d 893, 893 (4th Dep't 2000) ("Petitioner never appealed from the prior order, and thus res judicata bars these proceedings.").

Additionally, Plaintiffs contend that their participation in the Investigation cannot have preclusive effect because any such "cooperation" was entirely compelled by OAG's subpoenas. Pls. MOL at 21-22. Plaintiffs' contention is without merit. OAG's administrative subpoenas are not self-executing, so Plaintiffs were under no compulsion to comply with the subpoenas absent a court order. *See* CPLR § 2308(b)(1) ("if a person fails to comply with a subpoena which is not returnable in a court, the issuer…may move in the supreme court to compel compliance"). Moreover, voluntary compliance with a subpoena does waive a party's right to challenge at a later date "its validity or the jurisdiction of its issuer" because "[a]ny other rule would open the door to never-ending challenges to the validity of subpoenas, perhaps even years after initial issuance and compliance." *Brunswick Hosp.,* 52 N.Y.2d at 339.

### 6. Plaintiffs' Allegations Do Not Reasonably Imply OAG's Investigation Is Unlawful

Plaintiffs' allegations of constitutional violations are legally insufficient because the Attorney General has not yet moved beyond the investigative stage to commence any enforcement action. The law is clear that Plaintiffs have "no constitutional right not to be investigated." *See Fals-Stewart v. Connors*, No. 07-cv-0225, 2007 WL 9777970, at *3 (W.D.N.Y. Aug. 27, 2007) (citing *SEC v. O'Brien,*

467 U.S. 735, 742 (1984)); *see also, Popovic v. United States*, 997 F. Supp. 672, 678 (D. Md. 1998), *aff'd*, 175 F.3d 1015 (4th Cir. 1999) ("to the extent that a government agency is performing an investigative [function], . . . an individual is not entitled to the protections usually associated with the judicial process."). Moreover, Plaintiffs fail to explain how the complaint is "facially plausib[le]" when they allege only unspecified injury. *Clay v. Schwebler*, No. 13-cv-1314, 2015 WL 6438919, at *2, *5 (N.D.N.Y. Oct. 22, 2015) (Sannes, J.) (adopting report and recommendation in its entirety).

In any event, concerning their First, Fourth, and Fourteenth Amendment claims, Plaintiffs' allegations that the Attorney General has attacked "[Mr.] Trump's political views" and "that she vehemently disfavors the policies and ideologies of the former President" are insufficient to state a claim because one cannot reasonably infer from these allegations that OAG's Investigation is *solely* a pretext to harass, unrelated to any responsible law enforcement activity. *See Hartman v. Moore*, 547 U.S. 250, 256-58 (2006). Nor would Plaintiffs have any good faith basis to amend their complaint to assert that the Investigation has as its sole purpose to harass Mr. Trump; as found by Justice Engoron, OAG's Investigation has uncovered "copious evidence of possible financial fraud," and the thousands of documents produced in response to OAG's subpoenas establish OAG has more than sufficient factual and legal basis for continuing the Investigation. Faherty Reply Dec., Ex. B at 5, 8.

Particularly given the recent decision by Plaintiffs' longtime accountants to disavow the reliability of a decade's worth of Mr. Trump's financial statements, *id.*, Ex. A at 1, the good faith basis of OAG's Investigation cannot seriously be questioned. *See United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Indeed, as Justice Engoron underscored in his recent decision, for OAG not to have investigated "would have been a blatant dereliction of duty." Faherty Reply Dec., Ex. B at 6.

## CONCLUSION

For the reasons stated above and in Defendant's moving brief, the Court should grant the Defendant's motion to dismiss, along with any other relief the Court deems appropriate.

Dated:   New York, New York
         February 23, 2022

LETITIA JAMES
Attorney General of the State of New York

By: _____/s/ Andrew S. Amer_____

Andrew S. Amer (admitted *pro hac vice*)
  Special Counsel
Colleen K. Faherty
  Assistant Attorney General
Kevin Wallace
  Senior Enforcement Counsel
28 Liberty Street
New York, New York 10005
(212) 416-6127/6046/6376
andrew.amer@ag.ny.gov
colleen.faherty@ag.ny.gov
kevin.wallace@ag.ny.gov

*Attorney for Defendant Letitia James, in her official capacity*