

Alina Habba, Esq.
Managing Partner
ahabba@habbalaw.com
Admitted to practice in NJ, NY & CT

April 15, 2022

**Via PACER**
Hon. Brenda K. Sannes, U.S.D.J.
United States District Court, Northern District of New York

Re:   *Donald J. Trump, et al. v. Letitia James, in her official capacity as Attorney General*
      Civil Case No.: 1:21-cv-01352-BKS-CFH

Dear Judge Sannes,

As you are aware, this office represents the plaintiff, Donald J. Trump ("Mr. Trump") and the Trump Organization LLC (the "Trump Organization") (collectively, "Plaintiffs"), in the above-captioned action. In accordance with Your Honor's directive, please accept this supplemental letter brief in further support of Plaintiffs' motion for a preliminary injunction and in further opposition to Defendant's motion to dismiss. This supplemental letter brief is submitted to: (1) address Defendant's argument that the orders issued in the New York proceeding, including the February 17, 2022 order denying the motion to quash, are final appealable judgments that have preclusive effect; and (2) explain, with supporting authority, why Plaintiffs were unable to raise the constitutional issues and/or relief sought in this action in the state proceeding. For the reasons stated herein, in addition to those set forth in Plaintiffs' moving and opposition papers, Plaintiffs' motion for a preliminary injunction should be granted and Defendant's motion to dismiss should be denied.

**ARGUMENT**

**I.     The State Proceeding Is Not the Proper Forum for the Instant Action**

Given the limited scope and purpose of the State Proceeding[1], which was initiated as an Article 4 special proceeding designed to deal solely with issues concerning subpoena compliance, Plaintiffs did not have a full and fair opportunity to litigate their constitutional claims arising under the First,

---

[1] All capitalized terms herein shall have the same meaning and shall be defined in the same manner and context as they appear and are pleaded in Plaintiffs' preceding motion papers.

1

Fourth and Fourteenth Amendment. Further, given the principles of federalism and comity implicated in this action involving a state investigation that was commenced in bad faith against a then-sitting President, state court is not an appropriate forum to obtain the relief sought herein, namely, an order declaring the investigation as unconstitutional and permanently enjoining it from continuing forward. For these reasons, this action is properly situated in federal court.

### A. *Plaintiffs Lacked an Adequate Opportunity to Litigate Their Constitutional Claims in the Limited Purpose State Proceeding*

The OAG commenced the State Proceeding on August 24, 2020 with the filing of an Order to Show Cause and Verified Petition seeking to enforce its rights under Executive Law § 63(12) against the Trump Organization and several others (Mr. Trump had not yet been named as a respondent). *See* Exec. Law § 63(12) (authorizing the Attorney General to file an "action or proceeding" seeking "an order enjoining the continuance of such business activity or of any fraudulent or illegal acts [and] directing restitution and damages[.]").

The OAG chose to bring the State Proceeding as a limited-purpose special proceeding under CPLR Article 4. *See Matter of People ex rel. Spitzer*, 27 A.D.3d 104, 106 (3d Dep't 2005) ("Under Executive Law § 63, the Attorney General may utilize CPLR 409(b) to seek injunctive relief[.]"). A special proceeding is designed to be expeditious in nature and has a limited scope and purpose. *See, e.g. People v. Apple Health.,* 206 A.D.2d 266 (1st Dep't 1994) ("A special proceeding, as authorized by Executive Law § 63(12), is intended as an expeditious means for the Attorney General to prevent further injury and seek relief for the victims of business fraud."). As represented in the Verified Petition, the OAG's sole purpose for initiating the State Proceeding was to "present to the [State] Court various privilege assertions that are overbroad and unfounded." *See People v. Trump Organization*, Index No. 451685/2020 at *3 (NYSCEF Doc. No. 181).

Importantly, in an Article 4 special proceeding, a respondent has "profoundly restrict[ed] procedural remedies" available to him. *Zenila Realty v. Masterandrea*, 123 Misc.2d 1, 5 (N.Y. Civ. Ct.

1984). To start, a respondent is not entitled to engage in *any* discovery without leave of court. CPLR § 408. Indeed, discovery is "disfavored in a special proceeding and is permitted only on leave of court upon a showing of 'ample need' . . . or 'unusual circumstances.'" *People by James v. N. Leasing Sys., Inc.*, 193 A.D.3d 67, 73-74 (1st Dep't 2021) (citations omitted). Leave of court is similarly required for joinder, interpleader, third-party practice and intervention. *See* CPLR § 401; *see also Masterandrea*, 123 Misc.2d at 5. Even the standard of review is modified – Article 4 proceedings are subject to the same standards that apply to a motion for summary judgment. *See* CPLR § 409(b).

Wary of these significant procedural restraints, the Trump Organization submitted a letter the State Court on August 26, 2020—a mere two days after the OAG's filing of the Verified Petition— asking the Court to reassign the matter to the Commercial Division. *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 184). The Court rejected the Trump Organization's request, noting that "*the gravamen of this special proceeding is fact finding in nature – to gather evidence and compel discovery – it is not about proving the underlying alleged violations or schemes or fraud that respondents are alleged to have engaged in.*" *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 190) (emphasis added). Shortly thereafter, on September 4, 2020, the Trump Organization submitted another letter to the Court asking to bifurcate certain issues and pointed to various constitutional concerns including the lack of "fundamental due process." *See People v. Trump Organization*, Index No. 451685/2020 (NYSCEF Doc. No. 200). The OAG filed a letter in response, arguing that the Trump Organization had "no right to delay or refuse subpoena compliance." *Id.* The Court rejected the Trump Organization's requested for bifurcation and, as a result, the Trump Organization was relegated to proceeding in the Article 4 proceeding and was obligated to file its Answer to the Verified Petition mere days later.

The scope of the State Proceeding was, and remains, exceedingly narrow. Indeed, in a proceeding to compel compliance with or challenge a subpoena, a "motion to quash or vacate . . . is

the proper and exclusive vehicle to challenge the validity of the subpoena or the jurisdiction of the issuing authority." *Matter of Brunswick v. Hynes*, 52 N.Y.2d 333 (1981).  In such a proceeding, the OAG is not even required to "disclose the details of [its] investigation" beyond those necessary to establish its "authority, the relevance of the items sought, and some factual basis for [the] investigation." *Matter of American Dental Coop., Inc. v. Attorney-Gen.*, 127 A.D.2d 274, 280 (1st Dep't 1987). In this particular context, even a "a plausible argument that the purposes of the subpoenas are to harass, embarrass, and manipulate related public events and media publicity does not justify suppression of the subpoenas as a matter of law[.]" *Cunningham v. Nadjari*, 39 N.Y.2d 314, 318 (1976).

Given the severely restricted nature of the OAG's Article 4 special proceeding—only amplified by the State Court's ruling that the proceeding was limited to non-substantive "fact finding" issues—the Trump Organization did not have a full and fair opportunity to litigate its constitutional claims in that forum. *See e.g., Davidson v. Capuano*, 792 F.2d 275, 278 (1986) ("Where 'formal barriers' to asserting a claim existed in the first forum, it would be 'unfair to preclude [the plaintiff] from a second action in which he can present those phases of the claim which he was disabled from presenting in the first.'"); *Barrington v. New York*, 806 F. Supp. 2d 730, 741-42 (S.D.N.Y. 2011) ("[A] plaintiff who makes use of a limited state proceeding does not sacrifice claims to broader relief available under Section 1983 in federal court . . . nothing in *res judicata* doctrine requires a plaintiff to choose between the limited right the State has given him and the more expansive right Congress has given him to vindicate violations of the Constitution[.]"). Indeed, had the Trump Organization attempted to assert its constitutional claims in the State Proceeding—which it seemingly would have been prohibited from doing per the State Court's earlier ruling—it would not have even been entitled to obtain *any* discovery, rendering it practically impossible to effectively prosecute its claims.

Moreover, the Trump Organization had an extremely tight window—mere days—wherein it had an opportunity to put forth counterclaims against the OAG, yet the investigation has continued

to expand in an oppressive manner since that time. *See* CPLR § 403.  Not asserting its constitutional claims at the inception of the State Proceeding does not bar the Trump Organization from subsequently pursuing them at a later time. Indeed, since New York does not have a compulsory counterclaim rule, the Trump Organization was entitled to reserve its constitutional claims to be asserted in a separate, more appropriate forum with expansive procedural rules, including entitlement to comprehensive discovery.[2] *See Wax v. 716 Realty, LLC*, 151 A.D.3d 902, 904 (2d Dep't 2017) ("[B]ecause New York does not have a compulsory counterclaim rule, a defendant who fails to assert a counterclaim is not barred by the doctrine of *res judicata* from subsequently commencing a new action on that claim unless the claim would impair the rights or interests established in the first action.") (citing *Henry Modell v. Minister*, 68 N.Y.2d 456, 462 n 2 (1986)).

As for Mr. Trump, he was added to the State Proceeding long after its commencement. The OAG filed its Amended Verified Petition—its initial pleading against Mr. Trump—on January 19, 2022. *See generally* Faherty Dec., Ex. I (ECF Doc. No. 16-9). Critically, the instant action had *already been filed* at that time – it was filed nearly a month earlier on December 20, 2021. *See generally* Compl. In fact, at the time the instant action was filed, the State Proceeding was not even active; it had been *disposed* nearly a year earlier and remained that way for nearly a year. *See People v. Trump Organization*, Index No. 451685/2020 at *1 (N.Y. Sup. Ct., Jan. 29, 2021) (NYSCEF Doc. No. 313) (marking disposition of State Proceeding as "case disposed"); *compare to People v. Trump Organization*, Index No. 451685/2020 at *1 (N.Y. Sup. Ct., Jan. 20, 2022) (NYSCEF Doc. No. 631) (ordering the clerk to "restore this case to active status.").  Thus, Mr. Trump had not yet been presented with the opportunity to plead any counterclaims in the State Proceeding when the instant action was commenced in December 2020. *See* CPLR § 403. As a result, Mr. Trump was under no obligation to

---

[2] Plaintiffs acknowledges that additional factors may prevent a party from subsequently asserting a claim in a different forum at a later time, including the various abstention doctrines and *res judicata*; however, as fully addressed herein and in Plaintiffs' motion papers, none of those doctrines are applicable in the instant matter.

intervene in the State Proceeding in the hopes that the state court would remove his claims to a proper forum. *See* 692 F.2d 275, 281 ("To require a[] [special proceedings] petitioner, on penalty of later preclusion, to knowingly assert a claim that is improper, in the hope that the state court in its discretion might sever the claim out and convert it to a civil action, would be unfair and illogical.").  Instead, he was entitled to institute his own action against the OAG, which is precisely what he did.

Therefore, Plaintiffs' constitutional claims are properly before this Court.

**B.** ***The Supreme Court Has Expressly Held that Federal Court is the Proper Forum for the Relief Sought Herein***

The Supreme Court's decision in *Trump v. Vance,* 140 S.Ct. 2412 (2020) is instructive as to which forum, state or federal, is the appropriate venue for the relief sought in the instant action.

*Trump v. Vance* not only involved the same named plaintiff—Mr. Trump—but it also dealt with a nearly identical set of underlying facts as are present here – a state-level prosecutor who was "investigating [a president] and his businesses" through the issuance of subpoenas. *Id.* at 2426. While finding that a President was not wholly immune from such proceedings, the Supreme Court cautioned that "state prosecutors may have political motivations" and could utilize "harassing subpoenas" as a political weapon against a President. *Id.* at 2428. In direct reference to this concern, the Supreme Court noted that "[a]ny effort to manipulate a President's policy decisions or to retaliate against a President for [his] official acts through issuance of a subpoena . . . is an unconstitutional attempt to influence a superior sovereign[.]" *Id.* at 2428 (cleaned up). Of particular concern to the Supreme Court was the threat of state officials "engaging in arbitrary fishing expeditions and initiating investigations out of malice or an intent to harass." *Id.* at 2428.

Mr. Trump was serving as President of the United States when the OAG commenced its investigation into him and his businesses in March 2019. As detailed at length in the Complaint, Ms. James is a political rival of Mr. Trump and an outspoken critic of him and his political views. From the outset, it has been clear that her 'investigation' is purely politically – she is not pursuing justice but

merely advancing her own political agenda. Ms. James has repeatedly and unrelentingly harassed Plaintiffs with her baseless fishing expeditions—commenced under the guise of a legitimate investigation—which she has gleefully turned it into a public spectacle to tarnish Plaintiffs' reputation. In commencing her politically-motivated investigation against Plaintiffs, Ms. James exploited her role as a state-level prosecutor in furtherance of a campaign to harass and influence Mr. Trump, then a sitting President. This is precisely the scenario the Supreme Court warned against in *Trump v. Vance*.

Given these facts, Mr. Trump is "not relegated only to the challenges available to private citizens" but has the additional option of "rais[ing] subpoena-specific constitutional challenges, in a . . . *federal forum*." *Vance*, 140 S.Ct. at 2430 (emphasis added). In other words, he is "entitled to the protection of the federal courts," *id.* at 2428, since "federal law allows a President to challenge any such allegedly unconstitutional influence in a federal forum," *id.* at 2416. Federal courts, in particular, "have the tools to deter and dismiss" such suits; namely, the proper remedy is for a federal court to "enjoin state officials to conform their conduct to federal law." *Id.* at 2429 (citing 42 U.S.C. § 1983; *Ex Parte Young*, 209 U.S. 123, 155-156 (1908)). Plaintiffs seek to employ this remedy.

Further, although Mr. Trump is no longer a sitting President, the State Proceeding was commenced at a time when he was[3] and Mr. Trump has alleged that the OAG's investigation is in "retaliation" for his "official acts" as President. *See* Compl. ¶¶ 108, 125, 128 (alleging that the OAG's investigation is an unconstitutional attempt to retaliate against Mr. Trump for his official acts as President). This scenario—contemplated by the Supreme Court in *Trump v.* Vance—warrants application of the remedies identified therein. The conduct at issue—namely, the OAG's commencement of its improper investigation—relates back to the time that he was a sitting President

---

[3] Although Mr. Trump was not initially a party to the State Proceeding, the OAG has repeatedly stated its belief that Mr. Trump and the Trump Organization are "alter egos" and "essentially one and the same." *See, e.g.* Def. Mem. at 13 (ECF Doc. No. 17); Def. Mem. at 30 (ECF Doc. No. 15). Thus, at least in the OAG's mind, the investigation has been directed at both the Trump Organization and Mr. Trump since its commencement.

and continues to be carried out to this day as "retaliation" for his "official acts" as President. *Vance*, *supra*. Further, application of the law in this way is consistent with the Supreme Court's prior holdings concerning separation of powers and the Supremacy Clause as it relates to the office of the presidency and, more specifically, former Presidents. See, e.g., *Clinton v. Jones*, 520 U.S. 681, 690 (1997) (noting that it was "not necessary to consider or decide whether a comparable claim might succeed in a state tribunal" for claims asserted against a President related to acts taken before entering office since the action was "asserted in federal court and relies heavily on the doctrine of separation of power."); *see Id.* at 691 n. 13 (pointing to "the interest in protecting federal officials from possible local prejudice that underlies the authority to remove certain cases brought against federal officers from a state to a federal court."); *see also Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (applying separation of powers and Supremacy Cause in equal force to former President Nixon since the conduct at issue occurred while he was in office); *see generally McCullough v. Maryland*, 17 U.S. 316, 427 (1819) ("the sovereignty of the state . . . is subordinate to and may be controlled by the constitution of the United States.").

Therefore, federal court is the appropriate venue to provide the relief requested herein.

## II.   <u>None of the Orders in the State Proceeding Have Preclusive Effect</u>

Pursuant to the Court's directive, one of the questions to be addressed is whether any of the prior decisions in the State Proceeding constitute a "final, appealable judgment" with preclusive effect. Def. Reply Mem. at 8. As explained below, it is clear that they are not.

The OAG has pointed to four prior decisions in the State Proceeding which it claims are "final orders that adjudicated on the merits the lawfulness of the OAG's investigation." Def. Mem. at 23 (ECF Doc No. 15).  In particular, these prior decisions include: (i) three orders arising from a motion to compel document production and testimony, *see People v. The Trump Organization*, No. 451685/2020, 2020 WL 5775887, at *1 (N.Y. Sup. Ct., Sept. 23, 2020) (the "September 2020 Order") (NYSCEF Doc. No. 254), *modified on reargument*, 2020 WL 5992323 (N.Y. Sup. Ct., Oct. 7, 2020) (the "October

2020 Order") (NYSCEF Doc. No. 277), *further modified on reargument*, 2020 WL 7360811 (N.Y. Sup. Ct., Dec. 15, 2020) (the "December 2020 Order") (NYSCEF Doc. No. 302) (collectively, the "2020 Orders"); and (ii) a Stipulation and Order dated September 2, 2021 which set forth the parties' agreement on various discovery-related issues (the "September 2021 Stipulation"), *see* Faherty Dec., Ex. D (ECF Doc. No. 16-4).  This Court has also asked Plaintiff to address whether the State Court's Order dated February 17, 2022 (the "February 2022 Order") (collectively, the "Prior Orders") qualifies as a 'final, appealable judgment.' *See generally* Faherty Reply Dec., Ex. B (ECF Doc. No. 25-2).

Whether a decision constitutes a "final, appealable judgment" falls within the purview of the doctrine of *res judicata*. "The doctrine of res judicata, or claim preclusion, holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Brown Media v. K&L Gates*, 854 F.3d 150, 157 (2d Cir. 2017). The *res judicata* doctrine applies if "1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same." *Id*. Because of the serious consequences stemming from the application of res judicata or collateral estoppel to a pending lawsuit, courts have exercised strict scrutiny whenever either one of these defenses are raised." *See McMahan & Co. v. Bass*, 680 N.Y.S.2d 238, 239 (1st Dep't 1998) ("[A]n overarching concern in applying the doctrine of res judicata is fairness."). Consequently, courts "remain mindful that if applied too rigidly, *res judicata* has the potential to work considerable injustice" and deprive litigants of their day in court. *Landau v. LaRossa,* 862 N.Y.S.2d 316, 320 (2008).

Before analyzing the operative issue—whether the Prior Orders should be considered 'final judgments'—Plaintiffs briefly note that none of the remaining three factors have been met in this case.

*First*, the parties are not the same, at least as it relates to the 2020 Orders. Mr. Trump was not a party to the State Proceeding when the 2020 Orders were decided, meaning that these decisions did not adjudicate any of his rights.

*Second,* the State Court does not have competent jurisdiction. As set forth above, the Supreme Court has explicitly held that an action of this type must be adjudicated in federal court. *See Vance*, 140 S.Ct. at 2416 ("[F]ederal law allows a President to challenge any such allegedly unconstitutional influence in a federal forum."); *see also Younger v. Harris*, 401 U.S. 377, 401 (1971) (holding that federal court is proper forum to review a state prosecution or proceeding upon a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief.").

*Third*, the causes of action in the instant action are not the same as those in the State Proceeding. As described above, the State Proceeding is an Article 4 special proceeding with a very narrow purpose and scope. Indeed, the State Court expressly stated that "the gravamen of this special proceeding is fact finding in nature – to gather evidence and compel discovery – it is not about proving the underlying alleged violations or schemes or fraud that respondents are alleged to have engaged in." *See People v. Trump Organization*, Index No. 451685/2020 at *2 (NYSCEF Doc. No. 190); *see also Ashley v. Curtis*, 96 Misc.2d 45, 48 (Sup Ct 1978) ("[I]n the instant case, treatment of petitioner's constitutional claim under 42 U.S.C. § 1983 as a plenary claim for injunctive relief rather than as a claim for relief under Article 78 is especially appropriate, since Article 78 proceedings are neither designed for nor suited to the disposition of constitutional claims for injunctive relief pursuant to 42 U.S.C. § 1983."); *Barrington*, 806 F. Supp.2d at 741-42 (S.D.N.Y. 2011) ("[A] plaintiff who makes use of a limited state proceeding does not sacrifice claims to broader relief available under Section 1983 in federal court . . . nothing in res judicata doctrine requires a plaintiff to choose between the limited right the State has given him and the more expansive right Congress has given him to vindicate violations of the Constitution[.]"); *Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 265 (2d Cir.1997) (noting that *res judicata* does not operate to bar a plaintiff's subsequent claim if "formal jurisdictional or statutory barriers prevented him from presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under law.").

### A. *None of the Prior Orders Constitute a Final Judgment*

Contrary to the OAG's contention, none of the Prior Orders are "final, appealable judgments." On their face, none of the orders are drafted in a way that could possibly be construed as a 'final' adjudication on the merits. Further, none of the orders address issues that are present in the instant action. Therefore, these orders do not have any preclusive effect in the instant action.

### i.   *The Prior Orders are Non-Final and Non-Dispositive*

Initially, upon examination of the contents of the Prior Orders, it is indisputable that they are non-final, non-dispositive decisions. Three of the orders—the October 2020 Order, the December 2020 Order, and the February 2022 Order—are explicitly designated to be a "non-final disposition." *See Trump Organization*, 2020 WL 5992323 at *2 (NYSCEF Doc. No. 277); *Trump Organization*, 2020 WL 7360811 at *3 (NYSCEF Doc. No. 302); Faherty Reply Dec., Ex. B at * 8 (ECF Doc. No. 25-2). As such, they cannot be considered a "final judgment" for the purposes of *res judicata* or claim preclusion. *See Hudson-Spring Partnership v P%8FM Design Con.*, 112 A.D.3d 419 (1st Dep't 2013) (finding that order marked as "non-final disposition" cannot constitute a "final judgment" for the purposes of *res judicata*.).

The remaining order, the September 2020 Order, also cannot be construed as a "final judgment" because it was never entered with notice of entry pursuant to CPLR § 2220. *See People v. Trump Organization*, Index No. 451685/2020 (N.Y. Sup. Ct.); *see also Mandracchia v. Russo*, 53 Misc.2d 1018, 1019 (App. Term 1967) ("A Decision or verdict upon which no formal judgment has been entered has no conclusive character and is ineffective as a bar to subsequent proceedings."); *Begelman v. Begelman*, 170 A.D.2d 562, 563 (2d Dep't 1991) ("[N]o order or judgment had been entered at the time that this appeal was perfected. The general rule is that "[a] decision or verdict upon which no formal judgment has been entered has no conclusive character and is ineffective as a bar to subsequent proceedings."); *see also Pinkus v. Pinkus*, 230 App.Div. 791, 244 N.Y.S. 652 (2d Dep't).

Finally, the September 2021 Stipulation is not an order but, rather, a so-ordered stipulation which merely sets forth the parties' briefing schedule for motions that were to be subsequently filed. *See generally* Faherty Dec., Ex. D (ECF Doc. No. 16-4). It is clear that the parties did not intend for the stipulation to adjudicate any of the parties' rights on substantive matters, but only to set filing deadlines. *See Pace v. Hazel Towers.*, 183 A.D.2d 588, 589 (1st Dep't 1992) (a stipulation should not be accorded "any greater scope" than what the parties intended.). Further, the court's determination of the subsequent motion—the February 2022 Order—was expressly denoted as a "non-final" disposition. It defies logic to suggest that the parties' *stipulation* setting forth a briefing schedule would be construed as a "final judgment" while the court's *decision* on that motion would not.

Therefore, without the need for further analysis, it is facially apparent that the Prior Orders do not constitute 'final' adjudications for the purposes of *res judicata*.

## B. *The State Court Has Never Addressed the Issues Raised Herein*

Assuming *arguendo* that the Prior Orders can be considered dispositive adjudications on the merits, they still do not have preclusive effect since they did not address the issues raised in this case.

A final judgment is a "final judicial determination which necessarily decided the very cause of action or issue that a party now seeks to litigate in a subsequent action or proceeding." *Ott v. Barash*, 109 A.D.2d 254, 262 (2d Dep't 1985). "New York employs a 'transactional approach' to *res judicata* whereby 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'" *Yoon v. Fordham,* 263 F.3d 196, 200 (2d Cir. 2001) (quotation omitted). However, "a later claim arising from the same nucleus of facts as a previously adjudicated claim is not barred if the initial forum lacked the power to grant the full measure of relief sought in the later litigation." *Pack v. Artuz,* 348 F.Supp.2d 63, 69 (S.D.N.Y.2004). Claims are "transactionally related" if the "transaction or connected series of transactions at issue in both suits is the same, that is where the same evidence

is needed to support both claims, and where the facts essential to the second were present in the first." *Comput. Assocs. v. Altai*, 126 F.3d 365, 369 (2d Cir. 1997).

None of the Prior Orders even remotely addressed any of the issues raised in the instant action. This much is not in dispute. Indeed, as recent as February 14, 2022, the OAG acknowledged that "[a]t no point during the numerous contested rounds of briefing, evidentiary submissions, and hearings here did anyone contend that OAG's investigation was unlawful, pretextual, or lacked a rational basis." *See People v. Trump Organization*, Index No. 451685/2020 at *12 (NYSCEF Doc. No. 644); *see also* Def. Mem. at 15 (ECF Doc. No. 15) ("[A]t no point during the contested hearings before Justice Engoron did the Trump Organization or Eric Trump contend that OAG's Investigation was unlawful, pretextual, an abuse of authority, or in violation of their constitutional rights"). These issues are now at the heart of this action.

Moreover, review of the contents of the Prior Orders further confirms that none of them touched upon the issues or claims put forth in the instant action. The September 2021 Stipulation is merely a briefing schedule which set forth filing dates for a forthcoming motion. It contains no adjudication on any legal issues. Simply put, the September 2021 Stipulation has no relevance to the issue of *res judicata* at all. Nor do the 2020 Orders, which deal strictly with narrow discovery issues, mostly pertaining to the application of attorney-client privilege. The constitutionality and/or lawfulness of the OAG's investigation was never raised, addressed or discussed in those orders. Indeed, the 2020 Orders do not contain even a cursory reference to those issues.

The February 2022 Order also did not address the subject matter of this action. In the February 2022 Order, the State Court ruled upon a motion to quash the subpoenas that had been filed by various respondents, as well as a motion to compel discovery that had been filed by the OAG. Mr. Trump was a party to those motions; the Trump Organization was not. While the respondents did raise quasi-constitutional concerns, they were offered as arguments in support of a motion to quash—

not as standalone claims seeking affirmative relief— and, even then, were rooted exclusively in the

Fifth Amendment and the Equal Protection Clause, respectively, neither of which are implicated in

this case.

Moreover, the scope of the State Court's analysis was very narrow, focusing only on the

viability of each subpoena as opposed to the constitutionality of the investigation as a whole. Tellingly,

at oral argument—which the OAG referred to as a "dry hearing about subpoena enforcement"—the

presiding justice, Judge Engoron, refused to entertain the argument that Ms. James' misconduct had

violated Mr. Trump's constitutional rights. *See* Habba Dec., Ex. A at tr. 75:15-16. Indeed, when

confronted with this issue, Judge Engoron explicitly withheld judgment:

> MS. HABBA: . . . she's put her words out there so much and taken every opportunity
> to voice her vendetta against Donald Trump and his family to take him down. My
> client is entitled to the protections afforded to him by the Constitution against
> prosecutorial misconduct.

> THE COURT: Let me just say, I'm not the disciplinary committee, so some of the
> ethical questions are not in front of me. I tend to say they're not part of this case that
> I have in front of me.

*Id.* at tr. 53:2-12. The OAG, for its part, noted that respondents hadn't "challenged the fitness of this

investigation." *Id.* at tr. 67:12-14. In addition, when pressed on the constitutionality of the OAG's

probes, the OAG stated "[t]his isn't a Fourth Amendment claim." *Id.* at tr. 67:4-5. In short, it is

overwhelmingly apparent that the February 2022 Order failed to meaningfully address any of the

constitutional issues put forth in this case, much less make a final and binding adjudication as to the

viability of these claims.

Moreover, while the State Court did broadly state that it considered the OAG's investigation

to be "lawful," this finding was based solely upon its review of the evidence obtained by the OAG –

a consideration that is wholly irrelevant to the instant action. In particular, the State Court noted that

its "in camera review of the thousands of documents responsive to OAG's prior subpoenas

demonstrates that OAG has a sufficient basis for continuing its investigation." *See* Faherty Reply Dec.,

Ex. B at *5 (ECF Doc. No. 25-2). Critically, in this context, the State Court's finding of lawfulness has no bearing on the validity of the constitutional claims asserted by Plaintiffs in the instant action.

Indeed, should this Court find that the OAG's investigation was initiated and/or carried on for an improper purpose, the investigation in its entirety is *per se* unconstitutional. In other words, whether the investigation has an otherwise legitimate bases "is beside the point." *Lamb's Chapel v. Ctr. Moriches Union*, 508 U.S. 384, 396–97 (1993). This is true whether the investigation infringed upon Plaintiffs' rights under the First Amendment, *see Peck v. Baldwinsville*, 426 F.3d 617, 633 (2d Cir. 2005) (holding that viewpoint discrimination is "prima facie unconstitutional" even if the government action is "reasonably related to legitimate . . . interests."); *Cornelius* v. *NAACP*, 473 U.S. 788, 812 (1985) (noting that even "valid[] and reasonable[] . . . justifications . . . cannot save" government action that is "based on the desire to suppress a particular point of view"), the Fourth Amendment, *see United States v. Constr. Prods. Research*, 73 F.3d 464, 471 (2d Cir. 1996) (stating that, in the context of the Fourth Amendment, a civil investigation must serve "a legitimate purpose," and the service of subpoenas must be "relevant to the purpose."), or the Fourteenth Amendment, *see Young v U.S. ex rel. Vuitton et Fils S.A.*, 481 US 787, 810 (1987) (noting that the presence of an interested prosecutor, or one who is "influenced by improper motives," is a "fundamental and pervasive error" warranting even reversal of a conviction). Therefore, the State Court's finding that the OAG's investigation has purportedly uncovered material evidence *after* its commencement is wholly unrelated to this Court's assessment of whether the investigation was commenced and carried out for an improper purpose.

Therefore, Plaintiffs' claims in the instant action are not precluded by the Prior Orders.

Dated: April 15, 2022                    Respectfully submitted,
       New York, New York

                                         By: _____
                                         Alina Habba, Esq.
                                         For HABBA MADAIO & ASSOCIATES LLP

15