# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
───────────────────────────────

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York,<br><br>                       Petitioner,<br><br>                       v.<br><br>THE TRUMP ORGANIZATION, INC., DJT HOLDINGS LLC, DJT HOLDINGS MANAGING MEMBER LLC, SEVEN SPRINGS LLC, ERIC TRUMP, CHARLES MARTABANO, MORGAN, LEWIS & BOCKIUS, LLP, SHERI DILLON, DONALD J. TRUMP, IVANKA TRUMP, DONALD TRUMP, JR., and CUSHMAN AND WAKEFIELD, INC.,<br><br>                       Respondents. | Index No.: 451685/2020<br><br><br><br><br><br>**AFFIDAVIT OF COMPLIANCE<br>WITH SUBPOENA** |

I, Alina Habba, Esq., being duly sworn, state as follows:

1. My office represents the respondent, Donald J. Trump ("Respondent"), in connection with the above-referenced action and is responsible for preparing and assembling Respondent's production and response to the *Subpoena Duces Tecum* dated December 1, 2021 (the "Subpoena"). My office also represents the respondent, The Trump Organization, Inc. (the "Trump Organization") in this action.

2. I submit this affirmation in compliance with Instruction C14 of the Subpoena.

3. Respondent previously submitted a Response and Objections to the Subpoena dated March 31, 2022 (the "Response"). Consistent with the Court's Order dated April 26, 2022, Respondent hereby withdraws all objections raised in the Response.

4. Respondent's productions and responses to the Subpoena are complete and correct

1

to the best of my knowledge and belief.

5. No documents or information responsive to the Subpoena have been withheld from Respondent's production and response.

6. Attached as Schedule A is a true and accurate record of all persons who prepared and assembled any productions and responses to the Subpoena, all persons under whose personal supervision the preparation and assembly of productions and responses to the Subpoena occurred, and all persons able competently to testify: (a) that such productions and responses are complete and correct to the best of such person's knowledge and belief; and (b) that any Documents produced are authentic, genuine and what they purport to be.

7. As described herein, I made or caused to be made a diligent, complete and comprehensive search for all documents and information requested by the Subpoena, in full accordance with the instructions and definitions set forth in the Subpoena.

8. A detailed description of my search efforts is set forth below.

### Overview of Search Efforts

9. Commencing in January 2022, I personally reviewed portions of Respondent's chron files as to whether they contained any documents responsive to the Subpoena. Collectively, my firm performed a full, complete, and diligent search of the chron files. After the search, it was determined that any documents in the chron files that are responsive to the Subpoena had already been produced to the OAG.

10. I had numerous in-person meetings, phone calls, and communications with co-counsel for the Trump Organization, LaRocca Hornik Rosen & Greenberg LLP ("TTO Co-Counsel"), the Trump Organization legal team (the "TTO Legal Dept."), including its General Counsel, for the purpose of assessing and verifying the extent of the searches performed in relation

to the Trump Organization's prior document productions.

11.   I reviewed each individual demand contained in the Subpoena with TTO Co-Counsel as to whether any responsive documents pertaining to Respondent had been previously produced by the Trump Organization to the OAG.

12.   I personally reviewed the weekly status reports provided by TTO Co-Counsel to the OAG.

13.   I personally reviewed the prior subpoenas served upon the Trump Organization by the OAG.

14.   Based upon the foregoing, it is my understanding that the following searches were previously performed in response to prior Subpoenas issued by the OAG (collectively, the "Prior Searches:

   a. <u>Physical Files Located in Trump Tower</u>:

      i. On or about January 24, 2020, a search was conducted of the physical files located in the file cabinets of the Trump Organization's corporate offices at Trump Tower located on the 25th and 26th floors. Any documents responsive to those searches were produced to the OAG by the Trump Organization. Any non-privileged materials identified were produced to the OAG.

      ii. On or about July 19, 2021, a search was conducted of Respondent's physical files located in Trump Tower, including his chron, hard-copy calendars (located in the storage room by his office), and the cabinets outside his office maintained by Rhona Graff and his other executive assistants. Any documents responsive to those searches were produced to the OAG by the Trump Organization.

    b. Hard Copy Files of Executive Assistants:

        i. On or about November 12, 2021, a search was conducted of the hard copy/paper files maintained by Respondent's executive assistants Jessica Macchia, Chelsea Frommer, Holly Lorenzo, Kelly Malley, Katie Murphy, Kelli Rose, Thuy Colayco, Cammie Artusa, and Meredith McIver located in file cabinets by executives' desks and the Executive Office Storage Closet. The files were thereafter reviewed by the Trump Organization's General Counsel for non-privileged responsive materials and, to the extent applicable, it was determined that there were no responsive documents to be produced to the OAG.

        ii. On or about November 23, 2021, a search was conducted of the hard copy/paper files maintained by the executive assistants Randi Gleason, Lauren Kelly (Pleszewicz), Casey Kennedy, and Jacquline Fini at Trump Tower. No responsive documents were found.

    c. Off-Site Documents

        i. On or about November 23, 2021, a search was conducted of the off-site storage log.

        ii. In mid-January, 2020, a search was conducted of the inventories of files stored off-site to locate any potentially responsive documents. The files that were identified as potentially responsive were shipped from the off-site storage facility to the Trump Organization's corporate offices at Trump Tower, where they were received on or about January 15, 2020. The files were thereafter reviewed by the Trump Organization's General Counsel and

4

all non-privileged documents that were located were produced to the OAG.

15. Throughout the course of my search efforts, I had many conversations with Respondent concerning the Subpoena and locations likely to hold responsive documents. The contents of those conversations are covered by attorney-client privilege but assisted in guiding my search for responsive documents.

16. Based on these privileged communications and review of relevant documents, I determined that there are no additional responsive documents at his personal residences or personal offices in Trump National Golf Club Bedminster or Mar-a-Lago that have not already been produced to the OAG.

17. Additionally, on March 17, 2022, I met with Respondent in-person at Mar-a-Lago and reviewed the Subpoena with him to verify whether he had any responsive documents in his possession, custody or control.

18. On April 8, 2022, Mr. Madaio and I conducted a telephone interview with Respondent, as per Haystack ID's request. After completion, the completed HaystackID interview forms were submitted to HaystackID.

**Demand No. 1**

19. With respect to Demand No. 1, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 1 and/or cross-checking whether any documents responsive to Demand No. 1 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served

5

upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

20. I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 1 and verifying whether potentially responsive documents had previously been produced to the OAG.

21. In addition, Demand No. 1 of the Subpoena calls for "all documents and communications concerning any Statement of Financial Condition." I cross-checked the search terms used by the Trump Organization in connection with its searches in response to the 2019 Subpoena, which included the term "Statement of Financial Condition"; therefore, the documents responsive to Demand No. 1 of the Subpoena would have been produced to the OAG in connection with the Prior Searches.

22. I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control responsive to Demand No. 1.

23. Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 1, other than those documents that had already been produced by the Trump Organization.

**Demand No. 2**

24. Demand No. 2 calls for "[a]ll documents and communications concerning any valuation of any asset whose value is identified or incorporated into any Statement of Financial Condition." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

6

25.     With respect to Demand No. 2, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 2 and/or cross-checking whether any documents responsive to Demand No. 2 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

26.     In addition, I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 2 and verifying whether potentially responsive documents had previously been produced to the OAG.

27.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 2.

28.     Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 2, other than those documents that had already been produced by the Trump Organization.

**Demand No. 3**

29.     Demand No. 3 calls for "[a]ll documents reviewed, used, or relied on in the preparation of the Statements of Financial Condition, and all communications relating to any of the foregoing." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches

7

encompassed the items responsive to this demand.

30. With respect to Demand No. 3, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 3 and/or cross-checking whether any documents responsive to Demand No. 3 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

31. In addition, I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 3 and verifying whether potentially responsive documents had previously been produced to the OAG.

32. I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 3.

33. Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 3, other than those documents that had already been produced by the Trump Organization.

**Demand No. 4**

34. Demand No. 4 calls for "[a]ll documents and communications concerning any financing or debt related to Trump International Hotel and Tower Chicago or Chicago Unit Acquisition LLC." This identical demand was set forth in a subpoena dated December 27, 2019

that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

35. With respect to Demand No. 4, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 4 and/or cross-checking whether any documents responsive to Demand No. 4 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

36. In addition, I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 4 and verifying whether potentially responsive documents had previously been produced to the OAG.

37. I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 4

38. Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 4, other than those documents that had already been produced by the Trump Organization.

**Demand No. 5**

39. Demand No. 5 calls for "[a]ll documents and communications concerning the donation or potential donation of a conservation or preservation easement by [Respondent]." This

identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

40. With respect to Demand No. 5, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 5 and/or cross-checking whether any documents responsive to Demand No. 5 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

41. In addition, I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 5 and verifying whether potentially responsive documents had previously been produced to the OAG.

42. I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 5.

43. Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 5, other than those documents that had already been produced by the Trump Organization.

### Demand No. 6

44. Demand No. 6 calls for "[a]ll documents and communications concerning any

planned or potential development or alteration of the Seven Springs Estate." This identical demand was set forth in a subpoena dated December 27, 2019 that was previously served upon the Trump Organization by the OAG; therefore, the Prior Searches encompassed the items responsive to this demand.

45. With respect to Demand No. 6, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 6 and/or cross-checking whether any documents responsive to Demand No. 6 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

46. In addition, I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 6 and verifying whether potentially responsive documents had previously been produced to the OAG.

47. I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 6.

48. Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 6, other than those documents that had already been produced by the Trump Organization.

**Demand No. 7**

49.     With respect to Demand No. 7, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 7 and/or cross-checking whether any documents responsive to Demand No. 7 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

50.     In addition, I had numerous discussions with TTO Co-Counsel and the TTO Legal Dept. for the purpose of reviewing the documents produced in connection with the Prior Searches, identifying documents potentially responsive to Demand No. 7 and verifying whether potentially responsive documents had previously been produced to the OAG.

51.     I personally interviewed Respondent as to whether he had any responsive documents in his possession, custody or control with respect to Demand No. 7.

52.     Further, with respect to item 7 of the Subpoena, which calls for "all documents and communications with Forbes Magazine…," I confirmed that all communications and documents with Forbes Magazine had been produced to the OAG through August 14, 2021.

53.     To supplement this search, on March 16, 2022, Mr. Madaio coordinated with the Trump Organization's IT team to commence a search for any responsive documents to Demand No. 7 (regarding Forbes Magazine) for the time period from January 1, 2021 through March 16, 2022. Search parameters included the term "forbes" and communications with "forbes.com" e-

mail addresses, and the e-mail addresses of ten Trump Organization individuals were searched, including Alan Garten, Eric Trump, Donald Trump, Jr., Allen Weisselberg, Amanda Miller, Kim Benza, Jeffrey McCooney, Patrick Birney, Ray Flores and Deborah Tarasoff.

54. The search returned 1,386 documents and/or communications. Three employees of my firm, in coordination with HaystackID, reviewed these items as to whether they were responsive to Subpoena demand no. 7. After a full, complete and diligent search, it was determined that none of the documents were responsive.

55. Additionally, I searched the chron files and did not find any documents responsive to the Subpoena which had not already been produced.

56. Based on the foregoing, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 7, other than those documents that had already been produced by the Trump Organization.

**Demand No. 8**

57. With respect to Demand No. 8, I personally reviewed and analyzed the following files, logs and/or documents for the purpose of searching for documents responsive to Demand No. 8 and/or cross-checking whether any documents responsive to Demand No. 8 had been previously produced by the Trump Organization to the OAG: (i) Respondent's chron files; (ii) attorney work product provided by TTO Co-Counsel and the TTO Legal Dept. which summarized, organized and identified with particularity the documents produced by the Trump Organization to the OAG; (iii) relevant search terms utilized in the Prior Searches; (iv) prior subpoenas served upon the Trump Organization by the OAG; and (v) weekly status reports provided by TTO Co-Counsel to the OAG.

58. I personally interviewed Respondent as to whether he had any responsive

documents in his possession, custody or control with respect to Demand No. 8.

59. Based on privileged communications with Respondent and communications with the Trump Legal Dept., I confirmed that insurance procurement, both personal and business-related were coordinated through the Trump Organization.

60. Based on relevant search terms and the parameters of the Trump Organization's prior searches, together with my firm's collective search efforts, I determined that Respondent was not in possession of any documents responsive to Demand No. 8, other than those documents that had already been produced by the Trump Organization.

## Stipulation

61. On behalf of Respondent, I hereby stipulate that the Trump Organization-produced documents can be used as if those documents were produced by Respondent because they were under Respondent's "control," in that they were documents in the possession of a company owned or controlled by a Respondent or a Trust owned by him, to the extent allowable by law. In so stipulating, Respondent does not waive any objections to such documents or the introduction of those documents in evidence that he would otherwise have if he had produced those documents solely because they were in the custody or control of a company owned or controlled by him or a Trust owned by him.

_____  
Alina Habba

__4/27/2022_____  
Date

## ACKNOWLEDGMENT

STATE OF NEW JERSEY )
COUNTY OF SOMERSET )

On this 27 day of April in the year 2022, before me, the undersigned, a notary public in and for said state, personally appeared Alina Habba personally known to be or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity, and that by his/her/their signature on the instrument, the individual, or the person or entity upon behalf of which the individual acted, executed the instrument.

_____  
Notary Public



PETER W GABRA
NOTARY PUBLIC
50098487
02/13/2024
NEW JERSEY