```
UNITED STATES  DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------x
DONALD J. TRUMP, TRUMP ORGANIZATION LLC,

                         Plaintiffs,

vs.                              1:21-CV-1352

LETITIA JAMES in her official capacity as
Attorney General for the State of New York,

                         Defendant.

-------------------------------------------x
```

        Transcript of a Video Motion Hearing held on

May 13, 2022, the HONORABLE BRENDA K. SANNES, United

States District Judge, Presiding.


                A P P E A R A N C E S

                    (By Video)

```
For Plaintiffs:      HABBA MADAIO & ASSOCIATES LLP
                     Attorneys at Law
                     1430 US Highway 206-Suite 240
                     Bedminster, New Jersey  07921
                       BY:  ALINA HABBA, ESQ.
                            MICHAEL MADAIO, ESQ.


For Defendant:       STATE OF NEW YORK
                     Office of Attorney General
                     28 Liberty Street
                     New York, New York  10005
                       BY:  ANDREW AMER, ESQ.
                            COLLEEN K. FAHERTY, ESQ.
```


*Jodi L. Hibbard, RPR, CSR, CRR*
*Official United States Court Reporter*
*100 South Clinton Street*
*Syracuse, New York  13261-7367*

*(315) 234-8547*

1          (The Court and all counsel present by video,

2          10:00 a.m.)

3          THE CLERK:  This is Trump, et al. versus James for

4     a motion hearing, Case 21-CV-1352, can I please have counsel

5     state your appearances for the record.

6          MS. HABBA:  Sure.  Good morning, your Honor, Alina

7     Habba and Michael Madaio on behalf of Donald Trump and the

8     Trump Organization plaintiffs in this matter.

9          THE COURT:  Good morning.

10          MR. AMER:  Good morning, your Honor, Andrew Amer

11     and Colleen Faherty with the Attorney General's office for

12     the Attorney General.

13          THE COURT:  Good morning to all counsel.  We're

14     here today for oral argument on the pending motions, that is

15     the plaintiff's motion for preliminary injunction and the

16     defendant's motion to dismiss.  I've identified some of my

17     questions in the text order setting this for a hearing, and

18     since many of the questions involve the motion to dismiss, I

19     will hear from the defendant first.

20          MR. AMER:  Thank you, your Honor, and again, for

21     the record, Andrew Amer on behalf of the Attorney General's

22     office.  I did want to make a few preliminary comments before

23     I dive right into the issues that the court's order asked us

24     to focus on.  The Office of the Attorney General is nearing

25     the end of its three-year investigation into allegations of

1    fraud and misrepresentation involving the Trump Organization

2    and individuals affiliated with the company, including Donald

3    Trump.  That investigation has repeatedly required

4    intervention and supervision by the New York Supreme Court

5    through a special proceeding which has been presided over by

6    Justice Arthur Engoron.  Since August of 2020, Justice

7    Engoron has heard and decided motions challenging aspects of

8    our office's subpoenas and that includes challenges brought

9    by both of the plaintiffs here, the Trump Organization and

10   Mr. Trump.  And Justice Engoron has issued a number of

11   orders, both reaffirming the lawfulness of the investigation

12   and, more recently, enforcing its own orders through contempt

13   proceedings.  It was only recently, your Honor, after our

14   office subpoenaed Mr. Trump for his evidence that the

15   plaintiffs brought this action in this court to enjoin our

16   nearly-concluded investigation.

17          We submit that in light of the procedural history

18   and the current state of the record, that it is really hard

19   to conceive of circumstances that present a more clear and

20   compelling argument than the one here for abstention by a

21   federal court in deference to an ongoing state court

22   proceeding.  And I'd like to first address the *Younger*

23   abstention argument which we raise on our motion which

24   focuses on the court's questions in the April 29th order.

25          So in the *Sprint* case, the Supreme Court identified

1     the three circumstances that qualify for abstention in

2     *Younger*.  We're here only concerned with the second and third

3     circumstance, I think it's clear the first circumstance does

4     not apply.  The second circumstance is when you have a civil

5     enforcement proceeding, and the third circumstance is when

6     you have a civil proceeding that implicates a state's

7     interest in enforcing the order of the judgments of its

8     courts.  We contend that the New York proceeding before

9     Justice Engoron meets both of these circumstances.  And

10    notably, in their opposition papers, plaintiffs actually

11    don't dispute that that is the case.  Instead, they rely

12    solely on the so-called bad faith exception to *Younger*.

13          THE COURT:  And let me ask you a question about

14    that.  Hasn't this special proceeding been used only for the

15    purpose of orders regarding discovery?

16          MR. AMER:  Well, they've been used in connection

17    with the enforcement of administrative subpoenas, so I think

18    it's broader than that, and that requires, as a necessary

19    finding, to compel in compliance with the subpoenas that the

20    investigation which gives rise to the subpoenas was a lawful

21    investigation and had a justifiable basis.  So --

22          THE COURT:  And let me ask another question.  Can

23    this special proceeding result in an order enjoining persons

24    for illegal or fraudulent acts under Executive -- New York

25    Executive Law 63(12), or would that be a different

1    proceeding?

2            MR. AMER:  That would require an enforcement

3    proceeding but it could certainly result in subpoenas that we

4    issue through 63(12) not being enforced; in other words, the

5    court could quash subpoenas, and that's part of the relief

6    that plaintiffs have sought in the New York proceeding.  So

7    we would certainly say, based on the papers, that the

8    plaintiffs have conceded by omission that the New York

9    proceeding falls within both the second and third

10   circumstance, but I understand the court has asked us to

11   address those circumstances specifically.

12           THE COURT:  And I don't think the fact that they

13   haven't argued that means that the court would just -- I

14   think the court independently has to determine whether it has

15   jurisdiction here and whether abstention is appropriate.  And

16   so my question was, to the extent this is really just a

17   subpoena enforcement action, at least one circuit, the Third

18   Circuit in the *Smith & Wesson* case, found that that was not a

19   civil enforcement proceeding akin to a criminal prosecution.

20           MR. AMER:  And I -- let me address that.  I will

21   say that of the two circumstances, the third circumstance

22   which involves the Second Circuit's decision in *Cavanaugh* is

23   clearly the easier one for the court to address and find is

24   met here, and I'm happy to take them in either order.  I was

25   going to address the *Cavanaugh* decision and the third

1  circumstance first but I'm happy to reverse that if your

2  Honor would prefer.

3          THE COURT:  No, that's fine.

4          MR. AMER:  Okay.  So the third circumstance, which

5  was discussed by the Second Circuit in the *Cavanaugh* case, in

6  that case, the Second Circuit reaffirmed its earlier holding

7  in the *Falco* decision and also quoted to the Supreme Court's

8  decision in the *Juidice v. Vail* case.  And the Second Circuit

9  in *Cavanaugh* made clear that where a state's contempt process

10 is involved, the state court proceeding fits neatly into the

11 third circumstance.  And the court expressly noted in

12 *Cavanaugh* that federal courts should not interfere with state

13 court proceedings involving the state's contempt process,

14 "because the contempt process stands in aid of the authority

15 of the judicial system so that its orders and judgments are

16 not rendered nugatory," and that's set forth 33 of the

17 *Cavanaugh* decision and that's also quoting the *Juidice*

18 decision.

19          Now we argued in our briefs which of course were

20 filed before the contempt motion and the contempt order that

21 the New York proceeding fits within the third circumstance

22 because it's a special proceeding to enforce an Attorney

23 General's administrative subpoenas based on the decisions in

24 two District Court cases outside the Second Circuit.  We

25 relied on the *Lupin* case from the District of Maryland and

1    the *Backpage* case from the Eastern District of Missouri, and

2    both of those cases did involve, to your Honor's point, a

3    special proceeding like we have in New York to enforce an

4    administrative proceeding -- I'm sorry, to enforce an

5    administrative subpoena, and in both those cases, the court

6    held that in fact, yes, the third circumstance was met, and

7    we certainly stand by that position and those authorities.

8    But now that there are contempt proceedings involved in the

9    New York proceeding, it seems to me that is really beyond

10   debate that we fit within the third circumstance.

11          THE COURT:  And let me ask you, what's the impact

12   of Justice Engoron's order conditionally purging the contempt

13   order if Mr. Trump meets the four conditions?

14          MR. AMER:  We don't think it has any impact in

15   terms of the fact that the contempt proceedings are still

16   ongoing before Justice Engoron.  Mr. Trump has appealed the

17   contempt proceeding so that actually continues in the First

18   Department, so the contempt proceedings certainly are

19   ongoing.  Whether Mr. Trump will conditionally satisfy those

20   acts that he must undertake by May 20th remains to be seen,

21   but I would say even if that is the case, it doesn't matter.

22   Clearly Justice Engoron has issued orders that he feels were

23   necessary to ensure the integrity of his own decisions and

24   the fact that those -- the contempt finding is up on appeal

25   and, quite frankly, won't be heard until the fall because the

1    Appellate Division doesn't hear argument over the summer, you

2    know, clearly that means contempt proceedings will continue

3    to go on, at least through the fall.  So here, the state

4    clearly has an interest in the ongoing contempt process in

5    the New York proceeding and it's through that process that

6    the court is vindicating its regular operation of the

7    judicial system, and that should be protected from

8    interference by a federal court, certainly under the

9    *Cavanaugh* decision.

10           So let me turn to the second circumstance and the

11   *Smith & Wesson* case.  So the Second Circuit under *Sprint*

12   covers civil enforcement proceedings that are akin to

13   criminal prosecution in important respects, that's the

14   standard.  *Sprint* identified three indicia of such

15   proceedings.  One, it needs to be initiated by a state actor,

16   I think we clearly meet that obviously, the special

17   proceeding in New York initiated by the Attorney General;

18   two, it needs to be a proceeding that is to sanction the

19   federal plaintiffs for some wrongful conduct.  Here, the

20   special proceeding to enforce the subpoena was initiated to

21   address a failure to comply with a lawful subpoena so we

22   think the second indicia is met.  And third, it needs to

23   involve an investigation of the type that commonly culminates

24   in the filing of a formal complaint or charges.  We think

25   that's met as well.  The type of investigation that we are

1    undergoing under Executive Law 63(12) is clearly the type

2    that leads to an enforcement proceeding and I think, as

3    evidenced by our voluminous 113-page supplemental verified

4    petition, there's clearly been a substantial amount of

5    evidence amassed that could support the filing of an

6    enforcement proceeding, although the final determination on

7    filing that proceeding has yet to be made.

8           In terms of *Smith & Wesson*, clearly the Third

9    Circuit's recent decision cuts against us.  It held that a

10   New Jersey subpoena enforcement action did not qualify as a

11   civil enforcement proceeding.  Firstly, of course, that

12   decision out of the Third Circuit would not be binding on

13   this court.  We would urge the court to instead follow the

14   reasoning of the Missouri District decision in *Backpage*.  And

15   in *Backpage*, the court held that a proceeding commenced by

16   the Missouri Attorney General to enforce an administrative

17   subpoena, just like the New York proceeding, did in fact

18   satisfy the indicia of the second circumstance under *Sprint*.

19          I would also add there is a factual distinction

20   here between our case and the *Smith & Wesson* case.  In *Smith

21   & Wesson*, it involved an investigation that the Third Circuit

22   noted was very limited in scope, and in fact the Third

23   Circuit noted that the limited nature of the investigation

24   distinguished the case from "those where more robust

25   preliminary investigations led to the filing of

1    administrative complaints," and that's at the *Smith & Wesson*

2    decision at 891 to 92.  I think here, as demonstrated again

3    by the supplemental verified petition that we filed, the

4    investigation is very broad and robust, pursuant to 63(12).

5    So in that respect, we think to the extent that the court

6    would look to the Third Circuit's reasoning, we do have a

7    factual distinction.

8            I did want to address the bad faith exception

9    because that is the basket into which the plaintiffs have put

10   all their eggs when it comes to the *Younger* abstention

11   doctrine.  It is an extremely narrow exception, it's hardly

12   ever been applied, and we submit it clearly does not apply

13   here.  Justice Engoron found that the Attorney General's

14   commencement of the investigation on the basis of Michael

15   Cohen's congressional testimony was totally appropriate, and

16   he has repeatedly found that the investigation is lawful.  If

17   I might quote from page 5 of Justice Engoron's February 17th,

18   2022 order, he said, "This court's in-camera review of the

19   thousands of documents responsive to OAG's prior subpoenas

20   demonstrates that OAG has a sufficient basis for continuing

21   its investigation, which undercuts the notion that this

22   ongoing investigation is based on personal animus, not facts

23   and law."  So we think that the evidence we've discussed in

24   the supplemental verified petition, as well as Justice

25   Engoron's findings to date, really shuts the door on any

1    argument that plaintiff has raised about this narrow bad

2    faith exception applying here.

3              THE COURT:  And let me ask you one final question

4    to make sure I understand.  If there was a proceeding to

5    enjoin illegal or fraudulent acts, that would be a separate

6    proceeding, it wouldn't be under this, it wouldn't be

7    under -- before Justice Engoron in this proceeding?

8              MR. AMER:  Well, whether it would be before Justice

9    Engoron or not I think is an open question, but it would need

10   to be, A, a new petition which would be filed as a -- as an

11   enforcement action under 63(12).

12             THE COURT:  I see.

13             MR. AMER:  And that's -- that's the typical course,

14   so there's an investigation under 63(12), subpoenas are

15   issued in that investigation, the investigation may give rise

16   to motions to quash or compel, and then when the

17   investigation is over, that could be followed by the filing

18   of an enforcement action.  And that is exactly what happened

19   with the *Exxon* case our office handled, it went from the

20   investigation and subpoena enforcement proceedings straight

21   into an enforcement action.

22             THE COURT:  And presumably it would get a new case

23   number?

24             MR. AMER:  It would get a new index number, yes.

25             THE COURT:  Okay.

1           MR. AMER:  Before turning to the third point in

2     your Honor's April 29th order, which asked us to address

3     issues raised by the supplemental letter brief that was filed

4     by plaintiffs, I did want to say a quick word about some of

5     our other arguments for abstention and specifically just with

6     *Colorado River*, I note this court a few weeks ago issued a

7     decision in *Hoffman v. American Institute of Indian Studies*

8     and in that case, the court analyzed the six *Colorado River*

9     factors and granted the defendant's motion to abstain.  We

10    would submit applying that same analysis from the *Hoffman*

11    case to the facts here should lead to the same result.  In

12    fact we think this case is actually stronger for *Colorado*

13    *River* abstention than the *Hoffman* case because here, the

14    inconvenience of the forum factor which was neutral in the

15    *Hoffman* case does weigh in favor of abstention here.  The

16    lawyers from the Attorney General's office on my team working

17    on -- with me on the investigation are all based in New York

18    City as are the lawyers representing the plaintiffs here, the

19    documents and witnesses that have been subpoenaed as part of

20    the investigation are mostly located here in New York City, I

21    would say, and a number of the properties that are the

22    subject of the valuations that are under investigation are

23    located in New York City.  In contrast, as far as we can

24    tell, there is zero connection to the Northern District of

25    New York, no witnesses, no documents, no properties, no

1    lawyers.  There's just absolutely zero connection to the

2    Northern District.  So on that basis --

3             THE COURT:  Let me ask you a question about

4    *Colorado River*.  The Second Circuit has said that the primary

5    context in which the Second Circuit has affirmed *Colorado*

6    *River* abstention is in order to avoid piecemeal litigation,

7    which means lawsuits that pose a risk of inconsistent

8    outcomes not preventible by principles of res judicata and

9    collateral estoppel; do we have that kind of piecemeal

10   litigation issue here?

11            MR. AMER:  I think we do.  In fact, I think this is

12   a classic example of claim splitting.  I mean, Mr. Trump has

13   invoked the jurisdiction affirmatively of the New York

14   Supreme Court by moving to quash subpoena in -- before

15   Justice Engoron.  One of the arguments he has raised there is

16   an equal protection selective enforcement argument which is a

17   constitutional issue.  They are asking before Justice

18   Engoron, they argued that based on all the same evidence of

19   the comments from the Attorney General that the court quash

20   the subpoena and find that the investigation is based on

21   animus, and all those arguments were heard and rejected.  Now

22   why they didn't assert the rest of their federal

23   constitutional claims before Justice Engoron, that was their

24   choice.  They had the opportunity to do so.  And here, the

25   court is being asked to enjoin the very investigation that

1     Justice Engoron has repeatedly upheld as lawful and has

2     issued any number of orders compelling compliance with the

3     subpoenas issued in that investigation, so it's hard to

4     imagine any more direct conflict that could arise, you know,

5     beyond, you know, where we have one court issuing orders

6     upholding an investigation as lawful and compelling

7     compliance with subpoenas where, on the other hand, another

8     court is being asked to enjoin the very investigation that

9     gave rise to the subpoenas.  So I think absolutely, the

10    concern about piecemeal litigation exists here, certainly.

11         In terms of the supplemental letter brief that

12    plaintiffs have submitted at the court's invitation, the

13    letter brief does not provide any persuasive authority for

14    either of the two legal points that the court invited the

15    plaintiffs to address.  One issue was whether Justice

16    Engoron's prior orders, including the February 17, '22 order

17    and the most recent contempt order, are final and appealable.

18    We cited to the New York Court of Appeals decision in *Matter*

19    *of Abrams*, that's at page 24 of our moving brief, and that

20    case holds that it's settled law in New York that a decision

21    denying a motion to quash an Attorney General administrative

22    subpoena is final and appealable, full stop.  So it deals

23    exactly with the circumstance that we have in the New York

24    proceeding, and it makes clear that it's settled law that

25    that type of order is final and appealable.

1          THE COURT:  And let me ask you a question about

2    that.  The plaintiff has cited to the fact that Justice

3    Engoron's orders, some of them are marked nonfinal

4    disposition.  What's the significance of that?

5          MR. AMER:  We don't think that that has any

6    significance because that's just an indication that Justice

7    Engoron appreciated that the investigation was still ongoing.

8    So that there may be additional subpoenas that would need to

9    be enforced.  The point of the *Matter of Abrams* case is to

10   acknowledge that within a special proceeding that is dealing

11   with individual subpoenas, you're going to have discrete

12   orders that either quash or compel the subpoena, sort of like

13   a one-act play within a larger production.  But they are

14   within themselves final and appealable.  And I think, you

15   know, it's important to note that plaintiffs by their own

16   conduct really belie any argument that the orders issued by

17   Justice Engoron in the special proceeding are not final and

18   appealable since they've now appealed both the February 17th,

19   '22 order and the more recent contempt order.  So it's hard

20   to see how they could on the one hand be pursuing these

21   appeals and on the other hand contend that in fact the orders

22   they are appealing are not final and appealable.  And there

23   is no authority that they've cited that would suggest that

24   this specific type of order, which is an order issued in a

25   special proceeding to enforce an administrative subpoena, is

1      not final and appealable.  I think they've cited to decisions

2      that deal with interlocutory orders in your standard plenary

3      cases but that's just not relevant.  And I would say here

4      that to the extent that any of Justice Engoron's orders were

5      marked as nondispositive, you know, certainly the

6      February 17th, '22 order was not so designated, nor was the

7      contempt order designated in that way.  So again, I think

8      that's just Justice Engoron keeping the proceeding open to

9      entertain any further administrative subpoena motions with

10     respect to that.

11              THE COURT:  And I'm looking at the February '22

12     order, it does appear to be marked nonfinal disposition.

13              MR. AMER:  Yeah, and I apologize if I misspoke.  I

14     do think that, again, it's because Justice Engoron envisions

15     that the proceeding remain open so that he can retain

16     jurisdiction over the case.

17              THE COURT:  I see.

18              MR. AMER:  But you know, clearly neither side has

19     interpreted that to mean that the order is not final and

20     appealable because plaintiffs have appealed, and again, I

21     think *Matter of Abrams* makes it quite clear that that's

22     correct.  These are appealable orders.

23              THE COURT:  And is the fact that it's appealable

24     enough to make it a final order under New York law for

25     *res judicata*?

1          MR. AMER:  It does.  Because it gives the other

2     side the opportunity to appeal it, and it is considered

3     final.  There's nothing more that needs to happen with

4     respect to the subpoena enforcement.  Once the -- for

5     example, on the February 17th, '22 order now up on appeal, if

6     that decision is affirmed, nothing more needs to happen

7     before Justice Engoron before we can compel Mr. Trump to sit

8     for a deposition to give testimony under oath.

9          THE COURT:  Yes.

10          MR. AMER:  So we think, you know, the standard

11     under *res judicata* for finality is met with respect to the

12     character and nature of these orders.

13          THE COURT:  Let me ask you a question with respect

14     to the orders before the February 2022 order, there were no

15     motions to quash, one in fact was a stipulation and order, is

16     it your position that *res judicata* applies to those orders as

17     well, even though there was never a motion to quash?

18          MR. AMER:  Yes, because there were motions to

19     compel, which is the flip side, and certainly gave them the

20     opportunity, the subpoena recipients the opportunity to raise

21     any issues, and we disagree that the September '21 order is

22     something less than an order just because it was a stipulated

23     order.  The parties agreed to it but the court so ordered it,

24     and that gives it the force of a court order just like any

25     other stipulated order and the fact that the parties were

1    able to resolve the issues through a stipulated court order

2    doesn't mean that it's any less of a court directive and

3    order that can be enforced as any other court order.  And in

4    fact, we have gone back and enforced the terms of the

5    September 2021 order by having the court, you know, allow us

6    to appoint a monitor which is HaystackID as the third-party

7    monitor.

8              THE COURT:  Your position is that the

9    February 17th, 2022 order, that order alone is a final

10   judgment on the merits that bars the plaintiff's claims under

11   *res judicata*, is that right?

12             MR. AMER:  Yes, yes, that's correct, your Honor.

13   And certainly there was the opportunity on the motion to

14   quash to raise any and all of the federal claims raised here,

15   and in fact, one of the claims that was raised, as I

16   mentioned, was an equal protection argument.  So the notion

17   that somehow the New York Supreme Court can't entertain

18   federal constitutional claims is incorrect.

19             And that leads me, actually a good segue to the

20   second legal point that your Honor invited plaintiffs to

21   argue in the supplemental brief which was the issue of

22   whether plaintiffs could have raised the constitutional

23   claims asserted here in the New York proceeding.  We cited on

24   pages 14 and 15 of our moving brief cases that establish that

25   because the New York Supreme Court is a court of plenary

1    jurisdiction, that court certainly has the jurisdiction to
2    hear all of the constitutional arguments that plaintiffs have
3    raised in this action.  And we've demonstrated through the
4    cases we've cited that in fact the New York Supreme Court
5    routinely does hear such arguments and does so in the
6    specific context of a special proceeding to compel compliance
7    with an Attorney General administrative subpoena.  Plaintiffs
8    have cited no case in their supplemental letter that suggests
9    otherwise.  Plaintiff's argument seems to be that as a
10   factual matter, it chose not to raise any of the federal
11   claims in the New York proceeding but that's, again, you
12   know, a matter of choice, it's not that they couldn't have
13   done it, it's that they chose not to do it, and that again
14   points to the concern about claim splitting and piecemeal
15   litigation.  And again, you know, plaintiff's own conduct
16   belies any argument that they're unable to raise their
17   constitutional claims before Justice Engoron.  They did raise
18   a constitutional argument, and in fact they relied on all of
19   the same comments that form the basis for the allegations in
20   the complaint here.  I'll just mention to you, quote to you
21   from Justice Engoron's February 17th order on the bottom of
22   page 4, he notes, "The new Trump respondents further assert
23   that public statements made by Attorney General Letitia James
24   demonstrate the impropriety of her investigation.  In support
25   of this argument, they cite to dozens of public statements

1    that James made during her election campaign and afterward,

2    indicating that she intended to investigate any illegal

3    conduct of respondent Donald J. Trump."  So I point that out

4    because the evidentiary record was placed before Justice

5    Engoron, that would have certainly permitted them to raise

6    all of the same constitutional arguments they raised here,

7    and they just chose not to.  Instead, they cherrypicked an

8    equal protection argument which they raised and was rejected.

9            Finally, I did want to mention about the letter

10   brief that it raises one new argument that I would like to

11   address.  The plaintiffs cite to the Second Circuit decision

12   in *Vance v. Trump*, and they cite to that for the proposition

13   that they are entitled to a federal forum as opposed -- as a

14   matter of federalism and comity.

15           As a threshold matter, we don't think this argument

16   is actually properly before the court since it was not in

17   plaintiff's opposition to our motion and is actually being

18   raised for the first time in a supplemental brief that was

19   solely for the purpose of responding to the two issues the

20   court invited comment on.  So we think the court should not

21   entertain this new argument based on the *Vance* case.  But to

22   the extent that the court does decide to consider this new

23   argument, we think it's very clear that *Vance* has no

24   application here because the case turned on the very highly

25   specific and unique fact that the subpoena enforcement action

1    involved a sitting president.  Here, Mr. Trump was no longer

2    in office when the Attorney General served him with the

3    subpoena in December of last year, he was no longer in office

4    when he filed this action a few weeks later, he was not in

5    office when he invoked affirmatively the jurisdiction of the

6    New York Supreme Court to quash the subpoena in January, and

7    he was not in office when Justice Engoron denied the motion

8    in February or when Justice Engoron concluded that Mr. Trump

9    was in contempt of his February order, which Justice Engoron

10   determined in April.  So we think *Vance* just has no

11   application to this case whatsoever.  This case involves

12   abstention in deference to a subpoena enforcement action,

13   brought in the state court against an ordinary citizen and

14   nothing more.

15          As this court is aware, we also rely on *Wilton*

16   abstention, and part of that analysis asks whether the

17   federal action is being used to forum shop.  We think the

18   answer to that question is clearly yes.  Again, we see zero

19   connection to the Northern District with respect to any

20   aspect of this case or the New York proceeding.

21          We also raise a *Rooker-Feldman* doctrine argument.

22   We think it's clear that the court is being asked to review

23   decisions that were rendered against the plaintiffs here like

24   Justice Engoron and to take, you know, a collateral attack on

25   those decisions and to reject those decisions because by

1    definition, the court here would be asked to find that the

2    investigation which Justice Engoron repeatedly held was

3    lawful was in fact unlawful and exclusively motivated by

4    animus.

5         You know, the rest of the arguments on those

6    doctrines are laid out in the briefs and, you know, I won't

7    go into them any more unless the court has any specific

8    questions.

9         The *res judicata* point I think I've covered in

10   connection with your Honor's questions, and we also obviously

11   raise the argument that even in the absence of *res judicata*,

12   there's a failure to allege sufficient facts to support the

13   claims here because as a necessary element to each of

14   plaintiff's claims, the court must find that the

15   investigations read out any legitimate basis and for the same

16   reason that Justice Engoron concluded that there was a

17   legitimate basis, I think this court should make that same

18   conclusion.  There's no dispute that the investigation was

19   commenced based on congressional testimony given by Michael

20   Cohen, and, you know, I think Justice Engoron even commented

21   that for the Attorney General not to have investigated based

22   on that congressional testimony would have been problematic.

23        And certainly once you get past the commencement of

24   the investigation, then you have our 113-page verified

25   supplemental petition which lays out in Technicolor detail

1    all of the evidence that we've amassed to date and based on,

2    you know, and there's no dispute about the evidence that

3    we've uncovered.  We just don't see how plaintiff's

4    allegations are sufficient because they don't plausibly

5    allege that there's no legitimate basis for the

6    investigation.

7            So unless the court has any questions, we certainly

8    obviously ask that the court grant our motion to dismiss and

9    deny the PI application as moot.

10           THE COURT:  Okay, thank you very much, Mr. Amer.

11   And I'll hear from Ms. Habba.  And let me ask you first, in

12   the briefing the plaintiffs did not dispute that the *Younger*

13   abstention doctrine applied; do you agree that here, in light

14   of the contempt proceedings, the *Younger* abstention doctrine

15   does apply?  I know you've argued bad faith but do you agree

16   that as an initial matter, because of the pending contempt

17   proceedings, the *Younger* abstention doctrine does apply?

18           MS. HABBA:  No, your Honor, and if that wasn't

19   clear, let me make that clear for the record.  We do not

20   believe the *Younger* abstention applies, and our pointing out

21   the abstention was solely in our basis of knowing that that

22   was going to be a defense of Ms. James.  And clearly we don't

23   even think it applies here, we actually don't think any of

24   the numerous doctrines which they mention apply but we have

25   hit them head on intentionally with exceptions, and I'm happy

1    to go through them.  I actually prepared a statement for your

2    Honor, which I think will address most of your questions

3    based on the questions you asked Mr. Amer.  If you'd like me

4    to read it into the record, I would love to and then I will

5    address some things that were inaccurate, I believe, put on

6    the record by Mr. Amer.

7              THE COURT:  Okay.

8              MS. HABBA:  If that's okay, yes?

9              THE COURT:  Sure.

10             MS. HABBA:  Thank you, your Honor.  United States

11   Supreme Court Justice Robert Jackson once said, while the

12   prosecutor, at his best, is one of the most beneficent forces

13   in our society, when he acts for malice or other base

14   motives, he is one of the worst.

15             Sadly, Letitia James serves as the embodiment of

16   this quote and has proven just how destructive malice can be.

17   Letitia James' egregious and wildly inappropriate comments

18   are unprecedented in New York's history and that's why we

19   brought this cause of action.  Never before has the state's

20   chief law enforcement official made her hatred toward the

21   subject of an investigation so obvious.  Our complaint

22   contains over 50 statements made by Ms. James specifically

23   targeting the former President.

24             On the campaign trail, just to give the court some

25   color, I'm not going to go into all of them, she proclaimed

1    to members of the Bronx Democratic Party that she "looks

2    forward to going into the office of the Attorney General

3    every day, suing him, defending your rights, and then going

4    home."  She made her agenda overwhelmingly clear stating that

5    we "need to find out where he's laundered money, all of those

6    transactions have happened here in New York City," despite

7    the fact, your Honor, that at that point she did not possess

8    or even have the authority to possess a ...

9                    (Attorney Habba's audio cut out.)

10                   (A discussion was held off the record.)

11            MS. HABBA:  I'm sorry, I'll repeat what I said.  At

12   that point that she was making those statements, that was

13   before she was in office and that's really relevant here for

14   our papers because she didn't have any evidence and she was

15   already putting out accusations that are incredibly damaging,

16   incredibly frightening, and she ran on the premise to her

17   constituents that that was what she was going to do, without

18   any grounds to do it.  I think that speaks volumes here and

19   that's why I wanted to reiterate that.  She made it

20   absolutely clear that she was obsessed with, as she said,

21   taking on Trump and that her eyes would be on Trump Tower.

22            If all these statements are not enough to shock the

23   conscience, she further assured her supporters, "Oh, we're

24   definitely going to sue him, we're going to be a real pain in

25   the ass, he's going to know my name personally."  This is --

1        THE COURT:  Let me just ask you, Ms. Habba, I've

2   read the complaint so I'm familiar with all of those

3   statements.

4        MS. HABBA:  Right.  So I'll skip ahead to basically

5   the grounds which we feel show and are unrelated to the

6   action that is pending in front of Justice -- Judge Engoron.

7   So basically, yes, shortly after, she held true to her

8   campaign promises, she relied on the testimony of Michael

9   Cohen, as Mr. Amer obviously does not contest, who was a

10   convicted felon and liar and she initiated this

11   investigation.  As --

12        THE COURT:  And let me just ask you, do you agree

13   that that was a factual predicate for the investigation?

14        MS. HABBA:  The basis of Michael Cohen's testimony?

15        THE COURT:  Yes.

16        MS. HABBA:  Yes.

17        THE COURT:  For the investigation that ensued, that

18   that was a factual predicate for the investigation.

19        MS. HABBA:  I don't know how to answer that

20   question, your Honor, solely because I believe Michael Cohen

21   was the impetus to her having an excuse.  I don't believe

22   that --

23        THE COURT:  And I understand that argument but do

24   you agree that based upon his testimony, the investigation --

25   and the investigation that followed up, his testimony was a

1   factual predicate for that investigation?

2           MS. HABBA:  It may have been a factual predicate

3   but an indication of their ill intent at the same time.

4           THE COURT:  I see.

5           MS. HABBA:  As we will discuss at length, the bad

6   faith exception, even if your Honor did think the *Younger*

7   doctrine should apply --

8           THE COURT:  Let's start with the doctrine itself.

9           MS. HABBA:  Sure.

10          THE COURT:  Do you agree that in light of the civil

11  contempt proceedings, this action does fall under, first the

12  court would have to determine whether it falls under the

13  *Younger* abstention doctrine so do you agree in light of the

14  civil contempt proceedings, it does fall under the *Younger*

15  abstention doctrine?

16          MS. HABBA:  No, your Honor, I don't and I'm happy

17  to walk through that from the top if that's what you're

18  asking.

19          THE COURT:  Sure.

20          MS. HABBA:  Generally speaking, a federal court, as

21  you know, has virtually unflagging jurisdiction to hear a

22  matter.  A federal court can abstain from exercising

23  jurisdiction in rare exceptional circumstances; that is when

24  this abstention is supposed to be applied.  It's the

25  exception, not the rule.  Here the test is, as your Honor has

1   implicated, that abstention is only appropriate when there
2   are one of three types of ongoing proceedings.  Mr. Amer and
3   your Honor I believe stated that the first clearly does not
4   fall within this case.  The second, which is what it appears
5   the OAG is relying on, is that there are certain civil
6   enforcement proceedings.  That would be akin to a criminal
7   prosecution case, that's what case law has said, punishing
8   wrongdoing that has been proven.  Here we're only in a
9   fact-finding investigation stage, this is not applicable
10  here.  Frankly, your Honor, Judge Engoron himself, I can read
11  into the record, stated, when I stated -- I'll just read this
12  quote.  I said on the record, "She's put her words out there
13  so much and taken every opportunity to voice her vendetta
14  against Donald Trump and his family to take him down, my
15  client is entitled to the protections afforded to him by the
16  Constitution against prosecutorial misconduct."  The judge
17  said, "Let me say, I'm not the disciplinary committee or --
18  so some of the ethical questions are not in front of me, I
19  tend to say they're not part of the case, this case that I
20  have in front of me."  That is the judge's words himself.
21          Those, here we have -- so that's the second prong,
22  it has to be one of these.  The second in my opinion does not
23  qualify here.
24          The third prong would be that it would be a civil
25  proceeding involving certain orders uniquely in furtherance

1    of the state court's ability to perform their judicial

2    function.  State proceedings is only ruling on discovery

3    motions here.  If this were to be considered to qualify, then

4    every single state action would qualify because all judges

5    rule on discovery motions.  This is not uniquely in

6    furtherance of the state court's ability --

7              THE COURT:  Isn't the civil contempt proceeding in

8    furtherance of the state court's --

9              MS. HABBA:  We --

10             THE COURT:  -- process for compelling compliance

11   with judgments?

12             MS. HABBA:  Your Honor, the contempt issue which

13   has been conditionally purged is not the purpose of this

14   case, it's not why we brought this case, and that is a

15   separate discovery issue again, and it is being handled by

16   the lower court.  That is not on the table and nor do we ask

17   that you handle the contempt motion, your Honor.  Frankly, it

18   goes to the basis and the motivation of the entire

19   investigation.  That is what this case is, so we do not

20   believe the *Younger* abstention applies at all.  If --

21             THE COURT:  And let me ask you a question, that the

22   defendant has cited to the plaintiff's failure to raise these

23   challenges to the investigation until the investigation was

24   over two years -- had already been proceeding for over two

25   years.  Isn't a motion to quash the proper vehicle to

1    challenge, you know, in response to these motions to compel
2    that were filed by the Attorney General's office?
3              MS. HABBA:  Your Honor, thank you for bringing that
4    up, that's a good point.  The motion to quash is, and this is
5    the best way to put it in plain English without me going into
6    a diatribe of case law, but as your Honor's aware,
7    *res judicata* and *Rooker-Feldman*, that's not an issue here
8    because all we're doing is dealing with subpoenas, individual
9    subpoenas before Judge Engoron, we're not dealing with the
10   investigation's purpose, the reason that she brought the
11   investigation, the constitutional violations that happened
12   prior.  And the Trump Organization, when they were brought,
13   just to give -- and I'd be happy to briefly recite the
14   procedural posture of this action, but soon after being
15   elected Attorney General and while Donald Trump was sitting
16   as President, Letitia James initiated this investigation
17   against the Trump Organization, that was March 2019, and that
18   led to the Article 4 proceeding.  This proceeding was and is
19   very limited in scope.  Indeed, the state court specifically
20   stated it is only fact finding in nature and only for the
21   purpose of gathering evidence and compelling discovery.
22   Those are quotes from the court.  The court --
23             THE COURT:  And why didn't the plaintiffs raise
24   these constitutional challenges earlier?
25             MS. HABBA:  Because --

1          THE COURT:  I'm sorry, the complaint says that the

2     plaintiffs have produced over 8 million pages of documents in

3     response to the defendant's subpoenas.

4          MS. HABBA:  Correct, your Honor, we complied in

5     good faith with the subpoenas of the Attorney General, but

6     it's important to note that Donald Trump was only brought

7     into this action recently, a couple months ago.  And the

8     court said -- made it very clear that they were not going to

9     address the underlying merits as there is no case, that would

10    be issued in another docket with a different judge.  We even

11    filed motions to bifurcate the action when we started this

12    action to have these issues addressed.

13         Your Honor, to put it in simple terms, we are

14    sitting with our hands tied, we are simply dodging subpoenas

15    at this point.  We have no right to discovery, we have no

16    right to look into why this was brought and the

17    constitutional cases.  And the only vehicle that we tried to

18    bring, Mr. Amer's right, we tried to bring it in a motion to

19    quash but that wasn't relevant, the judge isn't hearing the

20    merits of the case which is exactly about why the federal

21    court needs to intervene, that's why we have this action.

22    And *Trump v. Vance* frankly is spot on in saying this.  We

23    can't ignore it, it is frankly very spot on.

24         THE COURT:  And one of the cases the defendant has

25    cited to is the Second Circuit case *Temple of the Lost Sheep,*

1    *Incorporated v. Abrams*, it's 930 F.2d 178 where the Second

2    Circuit said that plaintiffs can adequately raise their

3    constitutional challenges to the Attorney General's conduct

4    in pending state proceedings.  Why doesn't that apply here?

5              MS. HABBA:  Because this is limited in scope, it is

6    not a proceeding yet, it is solely an investigation discovery

7    stage so there's no full and fair opportunity to litigate the

8    constitutional claims.  The orders were nondispositive and

9    nonfinal.  That is exactly the purpose that judges have that

10   option, and it is -- thank you for correcting the record,

11   that the September 2021 stipulation, stipulation, it was not

12   an order, it was a so-ordered stipulation which merely sets

13   forth the parties' briefing schedule for motions that were to

14   be subsequently filed.  And it was clear that the parties did

15   not intend for the stipulation to adjudicate any of our

16   rights on substantive matters but only to set filing

17   deadlines.  That is all he is -- he's made it very clear on

18   the record many times that that is his only purview.

19             THE COURT:  Mr. Trump did file a motion to quash

20   the subpoena for his deposition, raising among other things

21   an equal protection selective prosecution claim.  As I

22   understand it, he cited to comments, the same comments you've

23   cited to this court, in connection with that claim.  Don't

24   all of the claims in this action arise out of the same

25   transaction as the equal protection selective prosecution

1    claim that Mr. Trump made in the state court proceedings?

2            MS. HABBA:  No, your Honor, it doesn't, none of the

3    prior orders even remotely addressed, and our motions even

4    remotely addressed the issues raised in the instant action.

5    This much is really not in dispute.  Even as recent as

6    February 14th, 2022, the Office of the Attorney General

7    acknowledged themselves, and this is a quote, "At no point

8    during the numerous contested rounds of briefing, evidentiary

9    submissions, and hearings here did anyone contend that the

10   OAG's investigation was unlawful, pretextual, or lacked a

11   rational basis."  That is the claim before this court and

12   it's appropriate and can only be heard before this court.  I

13   have no other vehicle to protect my client other than filing

14   motions to quash for every subpoena that I'm on the defense

15   of.  I have no, no way to get discovery, no way to be on the

16   offensive and that is precisely what is unconstitutional.  No

17   one can use an Article 4 proceeding to tie somebody else's

18   hands behind their back and say we're going to attack you and

19   as we choose to attack you, you can defend yourself but you

20   cannot attack back, I can't file a motion to dismiss, I can't

21   file a motion for summary judgment, I can't ask for

22   interrogatories.  I'm asking the court to dismiss -- to deny

23   their motion to dismiss so that we have a fair chance to look

24   at these issues that I really do not have a venue for at this

25   point.

1          THE COURT:  And let me ask you a question.  The

2     complaint that you filed in this case appears to treat the

3     interests of Mr. Trump and the Trump Organization as aligned,

4     the complaint repeatedly says that the defendant's actions

5     were motivated by improper purpose against Mr. Trump and his

6     business, the Trump Organization.  You represent both,

7     Mr. Trump and the Trump Organization, do you agree that their

8     interests are aligned with respect to this investigation, the

9     Attorney General's investigation?

10          MS. HABBA:  Yes, your Honor, but named separately.

11     I think the office of the Attorney General, actually I'm

12     trying to just find my supplemental papers but I'd like to

13     quote it for the record.  But off the top of my head, your

14     Honor, in the supplemental papers we have a footnote that

15     actually directly discusses this issue which says that there

16     was --

17          THE COURT:  Ms. Habba, we can't hear you, you're

18     frozen.  I believe we have someone from our IT department on

19     the call, maybe they can help.

20               (Pause in proceedings.)

21          MS. HABBA:  My apologies, your Honor, we had --

22     technical difficulty, I have a great team that just got me

23     back up.

24          THE COURT:  Great.

25          MS. HABBA:  All right, I think I answered your

1     question but if not, please let me know.

2          THE COURT:  Yes.  And let me move to your motion

3     for preliminary injunction and the likelihood of success.  I

4     know that the complaint alleges that this investigation was

5     conducted in bad faith, is a fishing expedition, was overly

6     broad.  Have you provided any evidence in this action of an

7     overly broad investigation or a fishing expedition?

8          MS. HABBA:  I think we have, your Honor.  I think

9     that when, as you stated, we've produced millions, millions,

10    and millions of pages, we keep getting subpoenaed, they keep

11    looking for things, they don't find it, they look again.

12    Haystack, I should also correct for the record, has actually

13    been involved in this case for longer than just the contempt.

14    Haystack was an agreement that was made last year and we

15    actually gave them a tolling agreement to act again in good

16    faith and they just keep wanting to extend it.  Truth be told

17    I believe the Office of Attorney General has asked for

18    another extension a couple weeks ago which we again granted,

19    we are still cooperating.  But again, that just shows you,

20    it's been years and years and years, and without getting into

21    those merits which frankly are about valuations of property

22    which is the most subjective context ever.  You pick

23    something that is -- you can have one person come in, it's

24    going to be an expert game, that's what this is going to be.

25    I'm going to get my expert, Cushman's going to get their

1    expert, that they're all going to tell you when these

2    independent parties, when Trump Organization looked at

3    valuations, they did them appropriately at the time, looking

4    at all the market values, there were things that were done,

5    there was no collusion, there was no mass -- that's the

6    merits of that which they have not even brought.  They

7    just --

8            THE COURT:  And let me just stop you, I didn't see

9    any evidence in this that you've provided to this court of an

10   overly broad investigation or a fishing expedition.  As I

11   understand the record, Haystack is a third-party discovery

12   firm that you stipulated to, that the, that the plaintiff

13   stipulated to.

14           MS. HABBA:  Well, yes, absolutely, and my point is

15   in bringing up Haystack is just to show your Honor how far

16   it's gone in terms of the fishing expedition.  We have

17   been -- we're being, we're still being subpoenaed and

18   affidavits, additional affidavits all going to the same root

19   thing, an entire organization was searched and then they

20   subpoenaed Donald Trump again, that's a fishing expedition

21   because they didn't have enough to hook, line, and sink him

22   so then they have to try to get a special subpoena directly

23   for him to connect the dots when that doesn't exist.  So

24   that's a perfect example, and apologies if I didn't, but I

25   think it speaks for itself the fact that there's been so many

1    documents turned over, continuous subpoenas, they just keep

2    going and fishing and now they're actually bringing in

3    Cushman & Wakefield and trying to threaten Cushman and going

4    after people that were third-party independent companies and

5    searching their documents and even going as far as to reach,

6    there's actually a pending motion right now with Cushman

7    going as far as to reach some of their other clients.

8            THE COURT:  And let me ask you a question.  What is

9    this court supposed to make of the fact that Justice Engoron,

10   who actually has reviewed thousands of documents in this

11   case, wrote a decision specifically finding that this

12   investigation is hardly unsubstantiated, and his review of

13   thousands of documents responded -- responsive to the AG's

14   subpoenas demonstrates that the AG has a sufficient basis for

15   continuing its investigation?  What is the court to make of

16   that?

17           MS. HABBA:  The investigation as to valuations have

18   nothing to do with what this action is.  This action is about

19   constitutional violations of the Fourteenth Amendment due

20   process clause, the First Amendment freedom of speech, and

21   unreasonable search and seizures, abuse of process.  We're

22   asking the court to do something very different here.  This

23   isn't about valuations and I don't believe Judge Engoron's

24   actually been privy to any of the investigation documents or

25   the production so he actually doesn't -- hasn't seen what the

1    AG has seen is what my understanding is at this point.  All

2    he's been doing is fielding discovery and subpoenas and he

3    actually hasn't gone into the merits because that's not his

4    job.  So this is not about the merits of the underlying

5    investigation.  Our case isn't about it and Judge Engoron has

6    said that he's not going to rule on that because that's not

7    his job.  That court is solely for discovery which is why we

8    are needing your intervention, your Honor, exactly for that

9    reason.

10          THE COURT:  I see.  And Ms. Habba, I'll let you

11   make a final conclusive argument.

12          MS. HABBA:  Okay, thank you, your Honor.  I don't

13   want to waste your time.  I think we addressed the *Younger*

14   doctrine and my feelings on that and that it doesn't apply.

15   *Cullen v. Fliegner* is particularly instructive here.  In that

16   matter the bad faith exception applied on the basis that the

17   defendant's conduct displayed a sufficient level of animus

18   based on the past history of personal conflict between the

19   parties and the strictly ad hominem nature of the

20   investigation which is exactly what is occurring here.

21   Similarly, there is a well-documented history of ill will, as

22   we've mentioned, between Letitia James that she harbors for

23   Donald Trump and vicariously through the Trump Organization.

24          You know, I really rely on my papers, your Honor, I

25   don't want to waste your time, you've heard a lot of back and

1      forth and I think we did, you know, thank you for the

2      supplemental request, I feel that we really have put forth

3      all of our arguments and made very clear why Judge Engoron's,

4      and Judge Engoron's made very clear why his purview is very

5      limited in scope.  He is not going to the investigation, he's

6      not looking at the merits of the investigation, and further,

7      that this case is being brought for different violations

8      against Ms. James that is exactly what no Attorney General

9      should ever do.  It is an example of it and if we do not --

10     if we can't be heard by the federal court, I have no other

11     venue to be heard on this.

12          Thank you, your Honor, we ask that you obviously

13     dismiss their motion -- deny their motion to dismiss and

14     grant our motion for an injunction, preliminary injunction.

15          THE COURT:  Thank you, Ms. Habba.  Any brief

16     followup, Mr. Amer?

17          MR. AMER:  Very brief, your Honor.  I just want to

18     mention that we do think that the relief they're seeking

19     here, which is to enjoin the investigation at its very final

20     stages, would in fact interfere with the orders that have

21     clearly been issued by Justice Engoron.  I did want to

22     mention, because Ms. Habba said there's no right to discovery

23     or to make a motion to dismiss in a special proceeding,

24     that's actually incorrect.  While it's certainly the case

25     that discovery is not usual or customary in a special

1   proceeding, it is something that a respondent can ask for,

2   and they didn't ask for it so I think since they never asked

3   for discovery, they can't claim that they wouldn't have been

4   able to take discovery because we don't know what the court

5   would have permitted or not permitted.  And I would suggest

6   your Honor look at CPLR 404 that does allow a respondent in a

7   special proceeding to move to dismiss if they so choose.  I

8   think, you know, in terms of the affidavits that Ms. Habba

9   was saying they've been having to submit, those were all

10  ordered by Justice Engoron so it's clear.  So again, we think

11  this court is being asked to interfere with what Justice

12  Engoron has ordered.

13         And my only final point is, it's incorrect to say

14  that Mr. Trump has been involved in the special proceeding in

15  New York only recently.  I think it's clear that he owns and

16  controls and sits on top of the Trump Organization and as

17  recently as within the past week or two, we have stipulation

18  from Ms. Habba acknowledging that Mr. Trump controls the

19  documents that are in the possession of the Trump

20  Organization and the Trump Organization has been involved in

21  the special proceeding since August of 2020.  So we certainly

22  think that both plaintiffs here have had ample opportunity to

23  raise all of the issues that they're raising here, and at

24  least one of the arguments, the equal protection argument,

25  relies on all the same allegations and comments that Justice

1    Engoron looked at and found unavailing.  Instead, he was

2    convinced by what he characterized as copious evidence

3    submitted in our supplemental verified petition that the

4    investigation was clearly justified.

5            So I know we haven't had separate argument on the

6    PI application.  The only thing I would mention here is that

7    we don't see any evidentiary support for irreparable harm.

8    There's no affidavit from Mr. Trump or anybody else from the

9    Trump Organization that his speech has in any way been

10   chilled.  I think actually the court could even take judicial

11   notice of the various press releases that Mr. Trump has

12   issued over the past few months that actually comment

13   directly on what's happening in the New York proceeding.  I

14   think it's fair to say that rather than his speech being

15   chilled, the New York proceeding has actually amplified his

16   speech in that regard.  And absent an evidentiary basis for

17   irreparable harm, we think procedurally it's insufficient,

18   the court doesn't have the record that would permit issuing a

19   preliminary injunction.

20            THE COURT:  Okay.

21            MR. AMER:  Thank you, your Honor.

22            THE COURT:  Thank you to both counsel, I will take

23   the motions under submission and issue a written decision.

24            MS. HABBA:  Thank you, your Honor.

25            THE COURT:  Thank you.  Have a great day.

1          MS. HABBA:  You, too.

2               (Proceedings Adjourned, 11:00 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL REPORTER

2

3

4          I, JODI L. HIBBARD, RPR, CRR, CSR, Federal

5     Official Realtime Court Reporter, in and for the

6     United States District Court for the Northern

7     District of New York, DO HEREBY CERTIFY that

8     pursuant to Section 753, Title 28, United States

9     Code, that the foregoing is a true and correct

10    transcript of the stenographically reported

11    proceedings held in the above-entitled matter and

12    that the transcript page format is in conformance

13    with the regulations of the Judicial Conference of

14    the United States.

15

16                      Dated this 20th day of July, 2022.

17

18

19                      /S/ JODI L. HIBBARD

20                      JODI L. HIBBARD, RPR, CRR, CSR
                        Official U.S. Court Reporter
21

22

23

24

25